NICOLA T. HANNA
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
JUDITH A. HEINZ (Cal. Bar No. 176264)
Assistant United States Attorney
Senior Litigation Counsel, National Security Division
JAMES C. HUGHES (Cal. Bar No. 263878)
Assistant United States Attorney
Tax Division
MELANIE SARTORIS (Cal. Bar No. 217560)
WILLIAM M. ROLLINS (Cal. Bar No. 287007)
Assistant United States Attorneys
Terrorism and Export Crimes Section
KHALDOUN SHOBAKI (Cal. Bar No. 232864)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:   (213) 894-7280/5615/7407/0759
     Facsimile:   (213) 894-2927
     E-mail:   judith.heinz@usdoj.gov
               james.hughes2@usdoj.gov
               melanie.sartoris@usdoj.gov
               william.rollins@usdoj.gov
               khaldoun.shobaki@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>YI-CHI SHIH,<br>  aka "Yichi Shih,"<br>  aka "Yuqi Shi," et al,<br><br>          Defendants. | No. CR 18-50(B)-JAK<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT YI-CHI SHIH'S MOTION IN LIMINE NO. 5 TO PRECLUDE EVIDENCE RE PLACEMENT OF COMPANIES ON ENTITY LIST AND FOR DISCOVERY OF EVIDENCE RE ENTITY LIST PLACEMENT<br><br>Hearing Date: April 4, 2019<br>Hearing Time: 8:30 a.m.<br>Location:     Courtroom of the<br>              Hon. John A.<br>              Kronstadt |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Judith A. Heinz, James C. Hughes, Melanie Sartoris, William M. Rollins, and Khaldoun Shobaki, hereby files its opposition to defendant Yi-Chi Shih's motion in limine no. 5 to preclude evidence re placement of companies on Entity List and for discovery of evidence re Entity List placement.

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 14, 2019                Respectfully submitted,

                                     NICOLA T. HANNA
                                     United States Attorney

                                     PATRICK R. FITZGERALD
                                     Assistant United States Attorney
                                     Chief, National Security Division

                                     */s/ Judith A. Heinz*
                                     _____
                                     JUDITH A. HEINZ
                                     JAMES C. HUGHES
                                     MELANIE SARTORIS
                                     WILLIAM M. ROLLINS
                                     KHALDOUN SHOBAKI

                                     Assistant United States Attorneys

                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

1       **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.    INTRODUCTION**

3           On August 1, 2014, the Department of Commerce ("DOC")'s Bureau

4   of Industry and Security ("BIS") placed Chengdu Gastone Technology

5   Co. Ltd. ("CGTC"), Qing'an International Trading Co., Ltd. ("QTC"),

6   China Electronics Technology Group Corporation 29 Research Institute

7   ("CETC 29"), and Tian Hang Yang Pu Technology Investment Limited

8   Company ("Tian Hang") on its Entity List due to their involvement in

9   activities contrary to the national security and foreign policy

10  interest of the United States -- specifically, that they had been

11  involved in the illicit procurement of commodities and technologies

12  for unauthorized military end use in China.  See Gov't Exh. A, at

13  1575376-77, 1575380-81.[1]  CGTC, QTC, CETC 29, and Tian Hang have

14  remained on the Entity List continuously ever since; aliases and

15  additional addresses were added for CGTC on March 21, 2016 and August

16  1, 2018.  Id. at 1575425, 1575427, 1575413-14.  As a result of their

17  placement on the Entity List, a license from BIS was required to

18  export, reexport, or transfer (in-country) any item (that is,

19  commodities, software, and technology) subject to the Export

20  Administration Regulations ("EAR")[2] to CGTC, QTC, or Tian Hang, and

21  denial of such a license was presumed.  Id. at 1575380-81.

22

23          [1] Attached hereto as government exhibit A are true copies of the
    relevant Federal Register publications.  The page numbers provided
24  for all exhibits are the discovery Bates numbers located in the lower
    right-hand corner of the exhibit.
25
            [2] Items that are "subject to the EAR" include all items in the
26  United States and all U.S.-origin items wherever located,
    irrespective of whether a license was required for the export of that
27  item (with certain exceptions not relevant here).  Activities of U.S.
    or foreign persons prohibited by any order issued under the EAR were
28  also "subject to the EAR."

At trial, the government must prove beyond a reasonable doubt that defendant knowingly and willfully conspired with others to violate the International Emergency Economic Powers Act ("IEEPA"). (Dkt. 223, at 11.)    The Second Superseding Indictment ("SSI") charges defendant with knowingly and willfully conspiring to violate IEEPA in four ways.[3]    Of relevance here, the SSI charges defendant with knowingly and willfully conspiring with others to export items from the United States to CGTC without having first obtained the required licenses from the DOC.    (Dkt. 223, at 11:16-20.)    Thus, the government must prove beyond a reasonable doubt that, at some time during the conspiracy, a license from the DOC was required to export an item from the United States to CGTC.    And, the government must prove beyond a reasonable doubt that defendant acted knowingly and willfully.

To prove that a license from the DOC was required to export any item subject to the EAR from the United States to CGTC, and the presumption of license denial, the government intends to introduce at trial (1) copies of the Federal Register publications by which CGTC, QTC, CETC 29, and Tian Hang (including aliases) were placed on the Entity List,[4] and (2) the testimony of a DOC licensing officer

---

[3] The SSI charges that defendant and others violated IEEPA by knowingly and willfully conspiring to: (1) export items from the United States to the People's Republic of China ("PRC") without having first obtained the required licenses from the DOC, (2) export items from the United States to CGTC without having first obtained the required licenses from the DOC, (3) export items from the United States to the PRC without filing Electronic Export Information ("EEI") through the Automated Export System ("AES"), and (4) export items from the United States to CGTC without filing EEI through the AES.    (Dkt. 223, at 11:16-22.)

[4] 44 U.S.C. § 1507 provides, "The publication in the Federal Register of a document creates a rebuttable presumption -- (1) that it was duly issued, prescribed, or promulgated; (2) that it was filed

2

(Carlos Monroy) regarding the placement of CGTC, QTC, CETC 29, and Tian Hang on the Entity List and the resulting licensing consequences.   The copies of the Federal Register and the licensing officer's licensing determinations have been produced in discovery. See Gov't Exhs. A & B.[5]   To prove defendant's knowledge and willfulness, the government intends to introduce at trial, among other evidence, copies of the Entity List, related sections of the EAR, and other documents discussing the Entity List that were seized pursuant to warrants from defendant's e-mail accounts, digital

---

with the Office of the Federal Register and made available for public inspection at the day and hour stated in the printed notation; (3) that the copy contained in the Federal Register is a true copy of the original; and (4) that all requirements of . . . the regulations prescribed under it relative to the documents have been complied with."   Section 1507 provides further, "The contents of the Federal Register shall be judicially noticed."   See also United States v. Woods, 335 F.3d 993, 1001 (9th Cir. 2003).   While the Court should take judicial notice that the contents of the Federal Register publications here were duly issued, made available for public inspection as stated, are true copies of the originals, and comply with all regulatory requirements, this does not relieve the government from admitting the Federal Register publications into evidence to prove the Entity List placements of CGTC, QTC, CETC 29, and Tian Hung.

[5] Attached hereto as government exhibit B are true copies of the relevant licensing determinations.

1    devices, and residence.  These materials have also been produced in

2    discovery.  See Gov't Exhs. C[6], D[7], E, at 855239,[8] and F.[9]

3       Defendant, in his motion in limine no. 5, seeks an order that

4    (1) requires the government to "produce immediately the discovery

5    underlying its allegations that [CGTC, QTC, CETC 29, and Tian Hung]

6    were placed on the Entity List due to their involvement in 'the

7    illicit procurement of commodities and technologies for unauthorized

8    military end use in China,'" and (2) precludes the government from

9    making any argument or introducing any testimony or evidence

10   concerning the reasons for BIS's placement of entities on the Entity

11   List, including the specific reasons underlying BIS's placement of

12   CGTC, QTC, CETC 29, and Tian Hang on the Entity List."  (Def. Mot.

13   No. 5, at 7.)

14       Defendant's motion should be denied.  First, the government has

15   already produced in discovery copies of the Federal Register

16   publications, which state that CGTC, QTC, CETC 29, and Tian Hung were

17   placed on the Entity List due to their involvement in the illicit

---

[6] Attached hereto as government exhibit C is a true copy of a
document seized pursuant to warrant from defendant's residence.  The
document is a February 2008 "Major Cases List" circulated by BIS
Export Enforcement.  Some of the cases discussed involve Entity List
entities.

[7] Attached hereto as government exhibit D is a true copy of an
e-mail sent to defendant on January 27, 2010 by co-conspirator and
co-defendant Ishiang Shih to which was attached the Entity List as it
existed on January 13, 2010.

[8] Attached hereto as government exhibit E is a true copy of a
document seized pursuant to warrant from defendant's residence.  The
document describes a step-by-step process to process an export and
includes a description of the Entity List.  See Gov't Exh. E, at
00855239.

[9] Attached hereto as government exhibit F is a true copy of the
relevant pages of a document seized pursuant to warrant from one of
defendant's digital devices.  The pages contained section 744.11 of
the EAR, dated July 13, 2015, which set out the criteria for, and
consequences of, placement of an entity on the Entity List.

1  procurement of commodities and technologies for unauthorized military
2  end use in China.  See Gov't Exh. A, at 1575377.  Second, defendant
3  has conceded that he does not intend to attack the validity of BIS's
4  placement of CGTC, QTC, CETC 29, and Tian Hung on the Entity List,
5  and Ninth Circuit precedent overrules his assertion that he is
6  entitled, nonetheless, to "all of the evidence related to that
7  placement."  Def. Mot. No. 5, at 1; see e.g., United States v,
8  Mandel, 914 F.2d 1215, 1222 (9th Cir. 1990).  Third, the government
9  is entitled to introduce evidence to prove beyond a reasonable doubt
10 that (1) CGTC, QTC, CETC 29, and Tian Hung have been on the Entity
11 List continuously since August 1, 2014, and (2) defendant and his
12 coconspirators acted knowingly and willfully in violating IEEPA.
13 Introduction of the Federal Register publications is necessary for
14 the government to prove the fact of the placements, and evidence of
15 the consequences of the Entity List placements and defendant's
16 possession of multiple documents discussing the Entity List is
17 necessary for the government to prove defendant's knowledge and
18 willfulness.

19 **II.   ARGUMENT**

20     **A.   The Government Has Complied With Its Discovery Obligations.**

21     Contrary to defendant's complaints, the government has complied
22 with its discovery obligations to produce all information to which
23 defendant is legally entitled.  The government has produced the
24 Federal Register publications that contain the exact language in the
25 SSI about which defendant complains.  Gov't Exh. A.  The government
26 has produced the licensing determinations that discuss the
27 consequences of the Entity List placements.  Gov't Exh. B.  The
28 government has produced all of defendant's e-mails and materials from

his digital devices and residence that are in the government's
possession, which contain, *inter alia*, materials relating to the
Entity List and the four companies (CGTC, QTC, CETC 29, and Tian
Hung), as well as materials showing that these companies were
involved in activities contrary to the national security and foreign
policy interest of the United States -- specifically, the illicit
procurement of commodities and technologies for unauthorized military
end use in the PRC.   Contrary to defendant's assertions, the
government has complied fully with its discovery obligations under
Brady, Giglio, and the Federal Rules of Criminal Procedure.

The government has not, however, produced "All documents" in its
possession relating to the placement of CGTC, QTC, CETC 29, and Tian
Hung on the Entity List.   The government informed defendant of this
in a six-page letter sent to the defense nine months ago -- giving
defendant ample opportunity to litigate this issue well before trial.
Yet only now does defendant raise this issue with the Court.   Thus,
defendant's complaints about "unreasonable delay" by the government
are baseless.

Contrary to defendant's contentions, the documents withheld by
the government are not items the government intends to use in its
case-in-chief at trial; indeed, the Federal Register publications
appear on the preliminary exhibit list provided to him.   Nor are the
items withheld material to preparing the defense, which according to
defendant's motion, does not include attacking BIS's placement of the
relevant entities on the list.   Nor would the withheld materials
"shed light on what, if anything, defendants understood concerning
the export licensing requirements for Entity List companies."   See
Def. Mot. No. 5, at 5.   Rather, the government has produced in

1  discovery defendant's e-mails, the contents of his digital devices,

2  and materials seized from his residence that do contain materials

3  relevant to defendant's understanding concerning the consequences,

4  including licensing requirements, of Entity List placement.  And

5  defendant is simply wrong when he states that the government is not

6  entitled to withhold from discovery materials that relate to the

7  validity of the Entity List placements because these are material to

8  preparing the defense.  Discovery related to a non-justiciable matter

9  -- here, the validity of the Entity List placements -- is not

10  material to preparing the defense.  See Mandel, 914 F.2d at 1222

11  (error to allow discovery of the basis for the decision to include

12  particular items on the CCL); United States v. Helmy, 712 F. Supp.

13  1423, 1426, 1428-34 (E.D. Cal. 1989) (affirming denial of discovery

14  request for documents relating to placement of items on munitions

15  list and CCL because placement decision was unreviewable).

16      Therefore, defendant is not entitled to the additional discovery

17  he seeks.

18      **B.    The Government Is Entitled to Present the Evidence Proving
        the Elements of the Crimes Charged.**
19

20      Defendant argues that because the government has failed to

21  comply with Rule 16, the Court is well within its discretion to

22  preclude the government from introducing evidence concerning the

23  reasons why BIS places entities on the Entity List and did so here.

24  Def. Mot. No. 5, at 6-7.  Defendant is wrong.  The government has

25  complied fully with its discovery obligations.  Even if the Court

26  were to find that the additional discovery defendant seeks must be

27  produced, the delay in producing that discovery is wholly

28  attributable to defendant, who has waited nine months to litigate the

issue.  Federal Rule of Criminal Procedure 16(d)(2) affords the Court multiple remedies, including simply ordering discovery production and/or granting a continuance.  Fed. R. Crim. Proc. 16(d)(2)(A) & (B).  Wholesale preclusion of relevant evidence the government has produced in discovery regarding the placement of the four companies on the Entity List would be an abuse of the Court's discretion.

Under these circumstances, judicial exclusion of the relevant evidence the government has produced would improperly interfere with the executive branch's duty to enforce the law.  See United States v. Gatto, 763 F.2d 1040, 1046 (9th Cir. 1985) ("Proper regard for judicial integrity does not justify a 'chancellor's foot veto' over activities of coequal branches of government." (citing United States v. Russell, 411 U.S. 423, 435 (1973)).  Defendant's simple plea of not guilty "puts the prosecution to its proof as to all elements of the crime charged . . . ." Matthews v. United States, 485 U.S. 58, 64-65 (1988).  The government, which bears the burden in a criminal case of proving every element of every charge beyond a reasonable doubt, is entitled to present its evidence to prove those elements, and it has a duty to do so.  See United States v. Gaudin, 515 U.S. 506, 510 (1995) ("The Constitution requires a criminal conviction to rest upon a jury determination that the defendant is guilty of every element of the crime of which he is charged beyond a reasonable doubt."); Old Chief v. United States, 519 U.S. 172, 188 (1997) ("the prosecution is entitled to prove its case by evidence of its own choice" and "to satisfy the jurors' expectations about what proper proof should be").  The preclusion defendant seeks would improperly interfere with the government's right and duty to introduce evidence material to charged offenses for which it bears the burden of proof,

1 | improperly withhold from the jurors relevant evidence, and improperly
2 | impede the jury's truth-finding function.
3 | **III. CONCLUSION**
4 |     For the foregoing reasons, defendant's motion in limine no. 5
5 | must be denied.

# EXHIBIT A



**44680**    Federal Register / Vol. 79, No. 148 / Friday, August 1, 2014 / Rules and Regulations

within a 4.6-mile radius of Hartford-Brainard Airport from the Hartford-Brainard Airport 158° bearing clockwise to the Hartford-Brainard Airport 052° bearing, and within a 6-mile radius of the Hartford-Brainard Airport 052° bearing clockwise to the 158° bearing. This Class D airspace area is effective during specific dates and times established in advance by a Notice to Airmen. The effective date and time will thereafter be continuously published in the Airport/Facility Directory

*Paragraph 6005    Class E Airspace Areas Extending Upward From 700 Feet or More Above the Surface of the Earth.*

\*    \*    \*    \*    \*

ANE CT E5    Hartford, CT [Amended]

Hartford-Brainard Airport, CT
(Lat. 41°44′12″ N., long. 72°38′58″ W.)

That airspace extending upward from 700 feet above the surface within an 11.5-mile radius of Hartford-Brainard Airport.

Issued in College Park, Georgia, on July 24, 2014.

**Myron A. Jenkins,**

*Manager, Operations Support Group, Eastern Service Center, Air Traffic Organization.*

[FR Doc. 2014–18067 Filed 7–31–14; 8:45 am]

**BILLING CODE 4910–13–P**

---

**DEPARTMENT OF COMMERCE**

**Bureau of Industry and Security**

**15 CFR Part 744**

**[Docket No. 140627545–4617–01]**

**RIN 0694–AG22**

**Addition of Certain Persons to the Entity List**

**AGENCY:** Bureau of Industry and Security, Commerce.

**ACTION:** Final rule.

**SUMMARY:** This rule amends the Export Administration Regulations (EAR) by adding sixteen persons under nineteen entries to the Entity List. The persons who are added to the Entity List have been determined by the U.S. Government to be acting contrary to the national security or foreign policy interests of the United States. These persons will be listed on the Entity List under the destinations of Afghanistan, China, Hong Kong, Iran, and the United Arab Emirates (U.A.E.). There are nineteen entries for sixteen persons because three persons are listed under multiple destinations, resulting in three additional entries: one person in the U.A.E. has an address in Iran and two persons in China each have one address in Hong Kong.

**DATES:** This rule is effective August 1, 2014.

**FOR FURTHER INFORMATION CONTACT:** Chair, End-User Review Committee, Office of the Assistant Secretary, Export Administration, Bureau of Industry and Security, Department of Commerce, Phone: (202) 482–5991, Fax: (202) 482–3911, Email: *ERC@bis.doc.gov.*

**SUPPLEMENTARY INFORMATION:**

**Background**

The Entity List (Supplement No. 4 to Part 744) notifies the public about entities that have engaged in activities that could result in increased risk of diversion of exported, reexported or transferred (in-country) items to weapons of mass destruction (WMD) programs. Since its initial publication, grounds for inclusion on the Entity List have expanded to include activities sanctioned by the State Department and activities contrary to U.S. national security or foreign policy interests. Certain exports, reexports, and transfers (in-country) to entities on the Entity List require licenses from BIS. License applications are reviewed with a presumption of denial. The availability of license exceptions for exports, reexports on transfers (in-country) is very limited. The license review policy for each entity is identified in the license review policy column on the Entity List. The availability of license exceptions is noted in the **Federal Register** notices adding persons to the Entity List. BIS places entities on the Entity List based on certain sections of part 744 (Control Policy: End-User and End-Use Based) of the EAR.

The End-user Review Committee (ERC), composed of representatives of the Departments of Commerce (Chair), State, Defense, Energy and, where appropriate, the Treasury, makes all decisions regarding additions to, removals from, or other modifications to the Entity List. The ERC makes all decisions to add an entry to the Entity List by majority vote and all decisions to remove or modify an entry by unanimous vote.

**ERC Entity List Decisions**

*Additions to the Entity List*

This rule implements the decision of the ERC to add sixteen persons under nineteen entries to the Entity List on the basis of § 744.11 (License requirements that apply to entities acting contrary to the national security or foreign policy interests of the United States) of the EAR. The nineteen entries added to the Entity List consist of five entries in Afghanistan, seven entries in China, two entries in Hong Kong, one entry in Iran, and four entries in the U.A.E.

The ERC reviewed § 744.11(b) (Criteria for revising the Entity List) in making the determination to add these sixteen persons to the Entity List. Under that paragraph, entities for whom there is reasonable cause to believe, based on specific and articulable facts, have been involved, are involved, or pose a significant risk of being or becoming involved, in activities that are contrary to the national security or foreign policy interests of the United States, and those acting on behalf of such persons may be added to the Entity List. Paragraphs (b)(1) through (b)(5) of § 744.11 include an illustrative list of activities that could be contrary to the national security or foreign policy interests of the United States.

The ERC determined to add four persons—FIMCO FZE, Crescent International Trade and Services FZE, Khosrow Kasraei, and Mujhid Ali– to the Entity List under five entries under the destinations of Iran and the U.A.E. on the basis of their involvement in activities contrary to the national security and foreign policy of the United States, under § 744.11(b)(2). These companies and their affiliates have been engaging in conduct that poses a risk of violating the EAR, specifically with regard to the attempted illicit reexport of U.S.-origin items to Iran, under § 744.11(b)(2). These four persons were involved in the attempted export of a lathe machine subject to the EAR to Iran in violation of Department of the Treasury, Office of Foreign Assets Control regulations and the EAR. Lathe machines are used in the production of high grade steel or "bright steel", which in turn may be used, among other things, in the manufacture of automobile and aircraft parts.

The ERC determined to add five persons—Emal Bilal Construction Company, Wahab Karwan Construction Company, Mohammad Jan Khan Mangal, Shan Mahmoud Khan Mangal, and Emal Bilal Mangal—to the Entity List under the destination of Afghanistan for involvement in activities contrary to the national security and foreign policy interests of the United States, specifically the activities described under paragraph (b)(1) (Supporting persons engaged in acts of terror) of § 744.11 of the EAR. These persons have engaged in activities in support of persons designated by the Secretary of State as a Foreign Terrorist Organization (FTO). The persons designated as FTOs were so designated as a result of their activities against U.S. and coalition forces in Afghanistan contrary to the national security and foreign policy of the United States.

USAO_SHIH_01575376

Federal Register/Vol. 79, No. 148/Friday, August 1, 2014/Rules and Regulations    44681

The ERC determined to add four persons—Beijing Aeronautics Yangpu Technology Investment Company (BAYTIC), Chengdu GaStone Technology Co. Ltd. (CGTC), China Electronics Technology Group Corporation 29 (CETC 29) Research Institute, and Jiangsu Leidian Technology Company (JLTC)—to the Entity List under the destination of China on the basis of their involvement in activities contrary to the national security and foreign policy interests of the United States. Specifically, the ERC determined that these persons have been involved in the activities described under paragraph § 744.11(b)(5) of the EAR. Paragraph (b)(5) specifies that the types of activities that could be contrary to the national security or foreign policy interests of the United States include engaging in conduct that poses a risk of violating the EAR when such conduct raises sufficient concern that the ERC believes that prior review of exports, reexports, or transfers (in-country) involving the party and the possible imposition of license conditions or license denial enhances BIS's ability prevent violations of the EAR. The ERC has reasonable cause to believe that BAYTIC, CGTC, CETC 29 Research Institute and JLTC, have been involved in the illicit procurement of commodities and technologies for unauthorized military end use in China.

The ERC also determined to add one person located in China—Qing'an International Trading Group (QTC)—to the Entity List on the basis of its involvement in activities contrary to the national security and foreign policy interests of the United States. Specifically, the ERC determined that this person has been involved in the activities described under paragraph § 744.11(b)(5) of the EAR. The ERC has reasonable cause to believe that Qing'an International Trading Group has been involved in the illicit procurement of commodities and technologies for unauthorized military end use in China.

Finally, the ERC determined that PRC Lode Technology Company and Su Bin, both located in both China and Hong Kong, should be added to the Entity List on the basis of their involvement in activities contrary to the national security and foreign policy interests of the United States. Specifically, the ERC determined that these two persons have been involved in the activities described under paragraph § 744.11(b)(5) of the EAR. The ERC has reasonable cause to believe that PRC Lode Technology Company and Su Bin have been involved in the unauthorized exploitation of computer systems of U.S. companies and Department of Defense

contractors to illicitly obtain and export information, including controlled technology related to military projects, contrary to U.S. law.

For the sixteen persons recommended for addition, the ERC specified a license requirement for all items subject to the EAR and a license review policy of presumption of denial. The license requirements apply to any transaction in which items are to be exported, reexported, or transferred (in-country) to any of the persons or in which such persons act as purchaser, intermediate consignee, ultimate consignee, or end-user. In addition, no license exceptions are available for exports, reexports, or transfers (in-country) to the persons being added to the Entity List in this rule.

This final rule adds the following sixteen persons under nineteen entries to the Entity List:

## Afghanistan

(1) *Emal Bilal Construction Company (EBCC)*, a.k.a., the following two aliases:
—Imal Bilal Road Construction Company; *and*
—Aimal and Balal Company.
Kolola Pushta, Charahi Gul-e-Surkh, Kabul, Afghanistan; *and*
Maidan Sahr, Hetefaq Market, Paktiya, Afghanistan;

(2) *Emal Bilal Mangal*, a.k.a., the following three aliases:
—Imal Bilal; *and*
—Aimal Balal; *and*
—Belial Mangal.
Kolola Pushta, Charahi Gul-e-Surkh, Kabul, Afghanistan; *and*
Maidan Sahr, Hetefaq Market, Paktiya, Afghanistan;

(3) *Mohammad Jan Khan Mangal*
Kolola Pushta, Charahi Gul-e-Surkh, Kabul, Afghanistan; *and*
Maidan Sahr, Hetefaq Market, Paktiya, Afghanistan;

(4) *Shan Mahmoud Khan Mangal*
Kolola Pushta, Charahi Gul-e-Surkh, Kabul, Afghanistan; *and*
Maidan Sahr, Hetefaq Market, Paktiya, Afghanistan;

(5) *Wahab Karwan Construction Company (WKCC)*
Qabel Boy, Jalalabad Road, District 9, Kabul, Afghanistan.

## China

(1) *Beijing Aeronautics Yangpu Technology Investment Company (BAYTIC)*, a.k.a., the following three aliases:
—Beijing Aerospace Yangpu Technology Investment Company; *and*

—Tian Hang Yang Pu Technology Investment Limited Company; *and*
—Bei Jing Tian Hang Yang Pu Technology Investment Limited Company.
No. 27 Xiaoyun Road, Chaoyang District, Beijing 100027, China; *and*
Room 3120, Building 1, 16 Zhufang Road, Haidian District, Beijing, China;

(2) *Chengdu GaStone Technology Co., Ltd. (CGTC)*,
31F, A Tower, Yanlord Square, No. 1, Section 2, Renmind South Road, Chengdu, China;

(3) *China Electronics Technology Group Corporation 29 (CETC 29) Research Institute*, a.k.a., the following two aliases:
—CETC 29th Research Institute; *and*
—China Southwest Electronic Equipment Research Institute (SWIEE).
No. 496 West Yingkang Road, Chengdu, Sichuan Province 610036, China; *and*
Box #429, #1 Waixichadianziheng Street, Chengdu, Sichuan Province 610036, China;

(4) *Jiangsu Leidian Technology Company (JLTC)*,
88 Luyuan Road, Yixing Environmental Sciences Park, Jiangsu Province, China;

(5) *PRC Lode Technology Company*,
Room 8306 Kelun Building, 12A Guanghua Road, Chaoyang, Beijing 100020, China; *and*
Room 801, Unit 1, Building 8 Caiman Street, Chaoyang Road, Beijing 100025, China; *and*
Building 1–1, No. 67 Caiman Str., Chaoyang Road, Beijing 100123 China; *and*
Room A407 Kelun Building, 12A Guanghua Road, Chaoyang, Beijing 100020, China; *and*
Rm 602, 5/F, No. 106 NanHu Road, ChaoYang District, Beijing, China (See alternate addresses under Hong Kong);

(6) *Qing'an International Trading Group*, a.k.a., the following three aliases:
—Qing'an International Trading Group Company; *and*
—Qing'an Company Shenzhen Station; *and*
—China Qing'an International Trading Group.
No. 27 Xiaoyun Road, Chaoyang District, Beijing 100027 China; *and*
Room 901, Qing An Building, No. 27, Xiaoyun Road, Chaoyang District, Beijing 100027, China;

(7) *Su Bin*, a.k.a., the following two aliases:
—Stephen Subin; *and*

USAO_SHIH_01575377

—Steve Su.
Room 8306 Kelun Building, 12A Guanghua Road, Chaoyang, Beijing 100020, China; and
Room 801, Unit 1, Building 8 Caiman Street, Chaoyang Road, Beijing 100025, China; and
Building 1–1, No. 67 Caiman Str., Chaoyang Road, Beijing 100123, China; and
Room A407 Kelun Building, 12A Guanghua Road, Chaoyang, Beijing 100020, China; and
Rm 602, 5/F, No. 106 NanHu Road, ChaoYang District, Beijing, China (See alternate addresses under Hong Kong).

**Hong Kong**

(1) *PRC Lode Technology Company,*
Rm 1019–1020 Nan Fung Centre, 264–298 Castle Peak Road, Tsuen Wan New Territories, Hong Kong; and
Room 1522 Nan Fung Centre, 264–298 Castle Peak Road, Tsuen Wan New Territories, Hong Kong (See alternate addresses under China);

(2) *Su Bin,* a.k.a., the following two aliases:
—Stephen Subin; and
—Steve Su.
Rm 1019–1020 Nan Fung Centre, 264–298 Castle Peak Road, Tsuen Wan New Territories, Hong Kong; and
Room 1522 Nan Fung Centre, 264–298 Castle Peak Road, Tsuen Wan New Territories, Hong Kong (See alternate addresses under China).

**Iran**

(1) *FIMCO FZE,*
No. 3, Rahim Salehi Alley, Akbari St., Roomi Bridge, Dr. Shariati Ave, P.O. Box 3379, Tehran, Iran 3379/19395 (See alternate address under U.A.E.).

**United Arab Emirates**

(1) *Crescent International Trade and Services FZE,*
Office No. B34BS33O111, Jebel Ali, U.A.E.;

(2) *FIMCO FZE,*
LOB 16, F16401, P.O. Box 61342, JAFZ, U.A.E. (See alternate address under Iran).

(3) *Khosrow Kasraei,*
P.O. Box 61342, Jebel Ali, U.A.E.;

(4) *Mujahid Ali,* a.k.a. the following one alias:
—Mujahid Ali Mahmood Ali
Office No. B34BS33O111, Jebel Ali, U.A.E.

*Savings Clause*

Shipments of items removed from eligibility for a License Exception or export or reexport without a license (NLR) as a result of this regulatory action that were en route aboard a carrier to a port of export or reexport, on August 1, 2014, pursuant to actual orders for export or reexport to a foreign destination, may proceed to that destination under the previous eligibility for a License Exception or export or reexport without a license (NLR).

**Export Administration Act**

Although the Export Administration Act expired on August 20, 2001, the President, through Executive Order 13222 of August 17, 2001, 3 CFR, 2001 Comp., p. 783 (2002), as amended by Executive Order 13637 of March 8, 2013, 78 FR 16129 (March 13, 2013) and as extended by the Notice of August 8, 2013, 78 FR 49107 (August 12, 2013), has continued the Export Administration Regulations in effect under the International Emergency Economic Powers Act. BIS continues to carry out the provisions of the Export Administration Act, as appropriate and to the extent permitted by law, pursuant to Executive Order 13222 as amended by Executive Order 13637.

**Rulemaking Requirements**

1. Executive Orders 13563 and 12866 direct agencies to assess all costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health and safety effects, distributive impacts, and equity). Executive Order 13563 emphasizes the importance of quantifying both costs and benefits, reducing costs, harmonizing rules, and promoting flexibility. This rule has been determined to be not significant for purposes of Executive Order 12866.

2. Notwithstanding any other provision of law, no person is required to respond to nor be subject to a penalty for failure to comply with a collection of information, subject to the requirements of the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*) (PRA) unless that collection of information displays a currently valid Office of Management and Budget (OMB) Control Number. This regulation involves collections previously approved by OMB under control number 0694–0088, Simplified Network Application Processing System, which includes, among other things, license applications and carries a burden estimate of 43.8 minutes for a manual or electronic submission.

Total burden hours associated with the PRA and OMB control number 0694–0088 are not expected to increase as a result of this rule. You may send comments regarding the collection of information associated with this rule, including suggestions for reducing the burden, to Jasmeet K. Seehra, Office of Management and Budget (OMB), by email to *Jasmeet_K._Seehra@ omb.eop.gov,* or by fax to (202) 395–7285.

3. This rule does not contain policies with Federalism implications as that term is defined in Executive Order 13132.

4. For the sixteen persons added under nineteen entries in this final rule, the provisions of the Administrative Procedure Act (5 U.S.C. 553) requiring notice of proposed rulemaking, the opportunity for public comment and a delay in effective date are inapplicable because this regulation involves a military or foreign affairs function of the United States. (*See* 5 U.S.C. 553(a)(1)). BIS implements this rule to protect U.S. national security or foreign policy interests by preventing items from being exported, reexported, or transferred (in country) to the persons being added to the Entity List. If this rule were delayed to allow for notice and comment and a delay in effective date, then entities being added to the Entity List by this action would continue to be able to receive items without a license and to conduct activities contrary to the national security or foreign policy interests of the United States. In addition, because these parties may receive notice of the U.S. Government's intention to place these entities on the Entity List if a proposed rule is published, doing so would create an incentive for these persons to either accelerate receiving items subject to the EAR to conduct activities that are contrary to the national security or foreign policy interests of the United States, or to take steps to set up additional aliases, change addresses, and other measures to try to limit the impact of the listing on the Entity List once a final rule was published. Further, no other law requires that a notice of proposed rulemaking and an opportunity for public comment be given for this rule. Because a notice of proposed rulemaking and an opportunity for public comment are not required to be given for this rule by 5 U.S.C. 553, or by any other law, the analytical requirements of the Regulatory Flexibility Act, 5 U.S.C. 601 *et seq.,* are not applicable. Accordingly, no regulatory flexibility analysis is required and none has been prepared.

USAO_SHIH_01575378

**List of Subject in 15 CFR Part 744**

Exports, Reporting and recordkeeping requirements, Terrorism.

Accordingly, part 744 of the Export Administration Regulations (15 CFR parts 730–774) is amended as follows:

**PART 744—[AMENDED]**

■ 1. The authority citation for 15 CFR part 744 continues to read as follows:

Authority: 50 U.S.C. app. 2401 *et seq.;* 50 U.S.C. 1701 *et seq.;* 22 U.S.C. 3201 *et seq.;* 42 U.S.C. 2139a; 22 U.S.C. 7201 *et seq.;* 22 U.S.C. 7210; E.O. 12058, 43 FR 20947, 3 CFR, 1978 Comp., p. 179; E.O. 12851, 58 FR 33181,

3 CFR, 1993 Comp., p. 608; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 12947, 60 FR 5079, 3 CFR, 1995 Comp., p. 356; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13099, 63 FR 45167, 3 CFR, 1998 Comp., p. 208; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13224, 66 FR 49079, 3 CFR, 2001 Comp., p. 786; Notice of August 8, 2013, 78 FR 49107 (August 12, 2013); Notice of September 18, 2013, 78 FR 58151 (September 20, 2013); Notice of November 7, 2013, 78 FR 67289 (November 12, 2013); Notice of January 21, 2014, 79 FR 3721 (January 22, 2014).

■ 2. Supplement No. 4 to part 744 is amended:

■ a. By adding under Afghanistan, in alphabetical order, five Afghani entities;
■ b. By adding under China, in alphabetical order, seven Chinese entities;
■ c. By adding under Hong Kong, in alphabetical order, two Hong Kong entities;
■ d. By adding under Iran, one Iranian entity; and
■ e. By adding under United Arab Emirates, in alphabetical order, four Emirati entities.

The additions read as follows:

**Supplement No. 4 to Part 744—Entity List**

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---------|--------|---------------------|----------------------|---------------------------|
| * | * | * | * | * |
| AFGHANISTAN | | | | |
| | * | * | * | * | * |
| | Emal Bilal Construction Company (EBCC), a.k.a., the following two aliases: —Imal Bilal Road Construction Company; *and* —Almal and Balal Company. Kolola Pushta, Charahi Gul-e-Surkh, Kabul, Afghanistan; *and* Maidan Sahr, Hetefaq Market, Paktiya, Afghanistan. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER] 8/1/2014. |
| | * | * | * | * | * |
| | Emal Bilal Mangal, a.k.a., the following three aliases: —Imal Bilal; *and* —Almal Balal; *and* —Bellal Mangal. Kolola Pushta, Charahi Gul-e-Surkh, Kabul, Afghanistan; *and* Maidan Sahr, Hetefaq Market, Paktiya, Afghanistan. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER] 8/1/2014. |
| | * | * | * | * | * |
| | Mohammad Jan Khan Mangal, Kolola Pushta, Charahi Gul-e-Surkh, Kabul, Afghanistan; *and* Maidan Sahr, Hetefaq Market, Paktiya, Afghanistan. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER] 8/1/2014. |
| | * | * | * | * | * |
| | Shan Mahmoud Khan Mangal, Kolola Pushta, Charahi Gul-e-Surkh, Kabul, Afghanistan; *and* Maidan Sahr, Hetefaq Market, Paktiya, Afghanistan. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER] 8/1/2014. |

USAO_SHIH_01575379

**44684**    Federal Register/Vol. 79, No. 148/Friday, August 1, 2014/Rules and Regulations

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| * | * | * | * | * |
| | Wahab Karwan Construction Company (WKCC), Qabel Boy, Jalalabad Road, District 9, Kabul, Afghanistan. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER] 8/1/2014. |
| | * | * | * | * |
| | * | * | * | * |
| CHINA | | | | |
| | * | * | * | * |
| | Beijing Aeronautics Yangpu Technology Investment Company (BAYTIC), a.k.a., the following three aliases: —Beijing Aerospace Yangpu Technology Investment Company; and —Tian Hang Yang Pu Technology Investment Limited Company; and —Bei Jing Tian Hang Yang Pu Technology Investment Limited Company. No. 27 Xiaoyun Road, Chaoyang District, Beijing 100027, China; and Room 3120, Building 1, 16 Zhufang Road, Haidian District, Beijing, China. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER] 8/1/2014. |
| | * | * | * | * |
| | Chengdu GaStone Technology Co., Ltd. (CGTC), 31F, A Tower, Yanlord Square, No. 1, Section 2, Renmind South Road, Chengdu, China. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER] 8/1/2014. |
| | * | * | * | * |
| | China Electronics Technology Group Corporation 29 (CETC 29) Research Institute, a.k.a., the following two aliases: —CETC 29th Research Institute; and —China Southwest Electronic Equipment Research Institute (SWIEE) No. 496 West Yingkang Road, Chengdu, Sichuan Province 610036, China; and Box #429, #1 Waixichadianziheng Street, Chengdu, Sichuan Province 610036, China. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER] 8/1/2014. |
| | * | * | * | * |
| | Jiangsu Leidian Technology Company (JLTC), 88 Luyuan Road, Yixing Environmental Sciences Park, Jiangsu Province, China. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER] 8/1/2014. |

USAO_SHIH_01575380

Federal Register / Vol. 79, No. 148 / Friday, August 1, 2014 / Rules and Regulations          44685

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| * | * | * | * | * |
| | PRC Lode Technology Company, Room 8306 Kelun Building, 12A Guanghua Road, Chaoyang, Beijing 100020, China; and Room 801, Unit 1, Building 8 Caiman Street, Chaoyang Road, Beijing 100025, China; and Building 1–1, No. 67 Caiman Str., Chaoyang Road, Beijing 100123, China; and Room A407 Kelun Building, 12A Guanghua Road, Chaoyang, Beijing 100020, China; and Rm 602, 5/F, No. 106 NanHu Road, ChaoYang District, Beijing, China (See alternate addresses under Hong Kong). | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER] 8/1/2014. |
| * | * | * | * | * |
| | Qing'an International Trading Group, a.k.a., the following three aliases: —Qing'an International Trading Group Company; and —Qing'an Company Shenzhen Station; and —China Qing'an International Trading Group. No. 27 Xiaoyun Road, Chaoyang District, Beijing 100027, China; and Room 901, Qing An Building, No. 27, Xiaoyun Road, Chaoyang District, Beijing, China 100027, China. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER] 8/1/2014. |
| * | * | * | * | * |
| | Su Bin, a.k.a., the following two aliases: —Stephen Subin; and —Steve Su. Room 8306 Kelun Building, 12A Guanghua Road, Chaoyang, Beijing 100020, China; and Room 801, Unit 1, Building 8 Caiman Street, Chaoyang Road, Beijing 100025, China; and Building 1–1, No. 67 Caiman Str., Chaoyang Road, Beijing 100123, China; and Room A407 Kelun Building, 12A Guanghua Road, Chaoyang, Beijing 100020, China; and Rm 602, 5/F, No. 106 NanHu road, ChaoYang District, Beijing, China (See alternate addresses under Hong Kong). | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER] 8/1/2014. |
| * | * | * | * | * |

USAO_SHIH_01575381

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| * | * | * | * | * |
| **HONG KONG** | | | | |
| * | * | * | * | * |
| | PRC Lode Technology Company, Rm 1019–1020 Nan Fung Centre, 264–298 Castle Peak Road, Tsuen Wan New Territories, Hong Kong; and Room 1522 Nan Fung Centre, 264–298 Castle Peak Road, Tsuen Wan New Territories, Hong Kong (See alternate addresses under China). | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER] 8/1/2014. |
| * | * | * | * | * |
| | Su Bin, a.k.a., the following two aliases: —Stephen Subin; and —Steve Su. Rm 1019–1020 Nan Fung Centre, 264–298 Castle Peak Road, Tsuen Wan New Territories, Hong Kong; and Room 1522 Nan Fung Centre, 264–298 Castle Peak Road, Tsuen Wan New Territories, Hong Kong (See alternate addresses under China). | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER ] 8/1/2014. |
| * | * | * | * | * |
| **IRAN** | | | | |
| * | * | * | * | * |
| | FIMCO FZE, No. 3, Rahim Salehi Alley, Akbari St., Roomi Bridge, Dr. Shariati Ave, P.O. Box 3379, Tehran, Iran 3379/19395 (See alternate address under U.A.E.). | For all items subject to the EAR (See § 744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE ] 8/1/2014. |
| * | * | * | * | * |
| **UNITED ARAB EMIRATES** | | | | |
| * | * | * | * | * |
| | Crescent International Trade and Services FZE, Office No. B34BS33O111, Jebel Ali, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER ] 8/1/2014. |
| | FIMCO FZE, LOB 16, F16401, P.O. Box 61342, JAFZ, U.A.E. (See alternate addresses under Iran). | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER ] 8/1/2014. |
| | Khosrow Kasraei, P.O. Box 61342, Jebel Ali, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR. PAGE NUMBER ] 8/1/2014. |

USAO_SHIH_01575382

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| * | * | * | * | * |
| | Mujahid Ali, a.k.a. the following one alias:<br>—Mujahid Ali Mahmood Ali<br>Office No. B34BS33O111, Jebel Ali, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 79 FR [INSERT FR PAGE NUMBER ] 8/1/2014. |
| * | * | * | * | * |
| * | * | * | * | * |

Dated: July 25, 2014.

Kevin J. Wolf,

*Assistant Secretary for Export Administration.*

[FR Doc. 2014–17980 Filed 7–31–14; 8:45 am]

BILLING CODE 3510–33–P

# DEPARTMENT OF THE TREASURY

**Alcohol and Tobacco Tax and Trade Bureau**

**27 CFR Part 9**

**[Docket No. TTB–2014–0001; T.D. TTB–122; Ref: Notice No. 141]**

**RIN 1513–AC03**

**Establishment of the Manton Valley Viticultural Area**

**AGENCY:** Alcohol and Tobacco Tax and Trade Bureau, Treasury.

**ACTION:** Final rule; Treasury decision.

**SUMMARY:** The Alcohol and Tobacco Tax and Trade Bureau (TTB) establishes the 11,178-acre "Manton Valley" viticultural area in Shasta and Tehama Counties in northern California. The viticultural area does not lie within or contain any other established viticultural area. TTB designates viticultural areas to allow vintners to better describe the origin of their wines and to allow consumers to better identify wines they may purchase.

**DATES:** This final rule is effective September 2, 2014.

**FOR FURTHER INFORMATION CONTACT:** Karen A. Thornton, Regulations and Rulings Division, Alcohol and Tobacco Tax and Trade Bureau, 1310 G Street NW., Box 12, Washington, DC 20005; phone 202–453–1039, ext. 175.

**SUPPLEMENTARY INFORMATION:**

## Background on Viticultural Areas

### TTB Authority

Section 105(e) of the Federal Alcohol Administration Act (FAA Act), 27 U.S.C. 205(e), authorizes the Secretary of the Treasury to prescribe regulations for the labeling of wine, distilled spirits, and malt beverages. The FAA Act provides that these regulations should, among other things, prohibit consumer deception and the use of misleading statements on labels and ensure that labels provide the consumer with adequate information as to the identity and quality of the product. The Alcohol and Tobacco Tax and Trade Bureau (TTB) administers the FAA Act pursuant to section 1111(d) of the Homeland Security Act of 2002, codified at 6 U.S.C. 531(d). The Secretary has delegated various authorities through Treasury Department Order 120–01 (Revised), dated December 10, 2013, to the TTB Administrator to perform the functions and duties in the administration and enforcement of this law.

Part 4 of the TTB regulations (27 CFR 4) authorizes the establishment of definitive viticultural areas and the use of their names as appellations of origin on wine labels and in wine advertisements. Part 9 of the TTB regulations (27 CFR 9) sets forth the standards for the preparation and submission of petitions for the establishment or modification of American viticultural areas (AVAs) and lists the approved AVAs.

### Definition

Section 4.25(e)(1)(i) of the TTB regulations (27 CFR 4.25(e)(1)(i)) defines a viticultural area for American wine as a delimited grape-growing region having distinguishing features, as described in part 9 of the regulations, and a name and a delineated boundary, as established in part 9 of the regulations. These designations allow vintners and consumers to attribute a given quality, reputation, or other characteristic of a wine made from grapes grown in an area to the wine's geographic origin. The establishment of AVAs allows vintners to describe more accurately the origin of their wines to consumers and helps consumers to identify wines they may purchase. Establishment of an AVA is neither an approval nor an endorsement by TTB of the wine produced in that area.

### Requirements

Section 4.25(e)(2) of the TTB regulations (27 CFR 4.25(e)(2)) outlines the procedure for proposing an AVA and provides that any interested party may petition TTB to establish a grape-growing region as an AVA. Section 9.12 of the TTB regulations (27 CFR 9.12) prescribes standards for petitions for the establishment of AVAs. Petitions to establish an AVA must include the following:

• Evidence that the area within the proposed AVA boundary is nationally or locally known by the AVA name specified in the petition;

• An explanation of the basis for defining the boundary of the proposed AVA;

• A narrative description of the features of the proposed AVA that affect viticulture, such as climate, geology, soils, physical features, and elevation, that make the proposed AVA distinctive and distinguish it from adjacent areas outside the proposed AVA boundary;

• The appropriate United States Geological Survey (USGS) map(s) showing the location of the proposed AVA, with the boundary of the proposed AVA clearly drawn thereon; and

• A detailed narrative description of the proposed AVA boundary based on USGS map markings.

USAO_SHIH_01575383



List of Subjects

*8 CFR Part 234*

Air carriers, Aircraft, Airports, Aliens, Cuba.

*19 CFR Part 122*

Administrative practice and procedure, Air carriers, Aircraft, Airports, Alcohol and alcoholic beverages, Cigars and cigarettes, Cuba, Customs duties and inspection, Drug traffic control, Freight, Penalties, Reporting and recordkeeping requirements, Security measures.

**Amendments to the Regulations**

For the reason stated in the preamble, 8 CFR part 234 and 19 CFR part 122 are amended as set forth below.

**8 CFR Chapter 1**

**PART 234—DESIGNATION OF PORTS OF ENTRY FOR ALIENS ARRIVING BY CIVIL AIRCRAFT**

■ 1. The general authority for part 234 continues to read as follows:

Authority: 8 U.S.C. 1103, 1221, 1229; 8 CFR part 2.

**§ 234.2  [Amended]**

■ 2. Amend § 234.2 by removing the last sentence of paragraph (a).

**19 CFR Chapter 1**

**PART 122—AIR COMMERCE REGULATIONS**

■ 3. The authority citation for part 122 continues to read in part as follows:

Authority: 5 U.S.C. 301; 19 U.S.C. 58b, 66, 1431, 1433, 1436, 1448, 1459, 1590, 1594, 1623, 1624, 1644, 1644a, 2071 note.
*    *    *    *    *

**§ 122.31  [Amended]**

■ 4. Amend § 122.31 as follows:
■ a. Remove and reserve paragraph (c)(1)(ii);
■ b. In paragraph (c)(1)(iii), remove the text "(other than Cuba)"; and
■ c. In paragraph (c)(1)(iv), remove the text ", (c)(1)(iii)".
■ 5. Amend § 122.42 by revising the introductory sentence of paragraph (d) to read as follows:

**§ 122.42  Aircraft entry.**
*    *    *    *    *

(d) *Exception to entry requirement.* An aircraft of a scheduled airline which stops only for refueling at the first place of arrival in the United States will not be required to enter provided:
*    *    *    *    *

**Subpart O [Removed and Reserved]**

■ 6. Remove and reserve subpart O, consisting of §§ 122.151 through 122.158.

Jeh Johnson,
*Secretary.*
[FR Doc. 2016–06371 Filed 3–18–16; 8:45 am]
**BILLING CODE 9111–14–P**

**DEPARTMENT OF COMMERCE**

**Bureau of Industry and Security**

**15 CFR Part 744**

**[Docket No. 160229152–6152–01]**

**RIN 0694–AG87**

**Addition of Certain Persons and Modification to Entries on the Entity List; and Removal of Certain Persons From the Entity List**

**AGENCY:** Bureau of Industry and Security, Commerce.

**ACTION:** Final rule.

**SUMMARY:** This rule amends the Export Administration Regulations (EAR) by adding forty-four persons under forty-nine entries to the Entity List. The forty-four persons who are added to the Entity List have been determined by the U.S. Government to be acting contrary to the national security or foreign policy interests of the United States. These forty-four persons will be listed on the Entity List under the destinations of China, Germany, Hong Kong, India, Iran, Malaysia, the Netherlands, Singapore, Switzerland, and the United Arab Emirates (U.A.E.).

This final rule also removes five entities from the Entity List under the destinations of Ukraine and the U.A.E., as the result of requests for removal received by BIS, a review of information provided in the removal requests in accordance with the procedure for requesting removal or modification of an Entity List entity and further review conducted by the End-User Review Committee (ERC).

Finally, this final rule modifies two existing entries in the Entity List, both under the destination of China. These entries are being modified to reflect additional aliases and addresses for these persons. BIS implements this rule to protect U.S. national security or foreign policy interests and to ensure entries on the Entity List are accurate and up-to-date.

**DATES:** This rule is effective March 21, 2016.

**FOR FURTHER INFORMATION CONTACT:** Chair, End-User Review Committee,

Office of the Assistant Secretary, Export Administration, Bureau of Industry and Security, Department of Commerce, Phone: (202) 482–5991, Fax: (202) 482–3911, Email: *ERC@bis.doc.gov.*

**SUPPLEMENTARY INFORMATION:**

**Background**

The Entity List (Supplement No. 4 to part 744) identifies entities and other persons reasonably believed to be involved, or to pose a significant risk of being or becoming involved, in activities contrary to the national security or foreign policy interests of the United States. The EAR imposes additional license requirements on, and limits the availability of most license exceptions for, exports, reexports, and transfers (in-country) to those listed. The "license review policy" for each listed entity or other person is identified in the License Review Policy column on the Entity List and the impact on the availability of license exceptions is described in the **Federal Register** notice adding entities or other persons to the Entity List. BIS places entities and other persons on the Entity List pursuant to sections of part 744 (Control Policy: End-User and End-Use Based) and part 746 (Embargoes and Other Special Controls) of the EAR.

The ERC, composed of representatives of the Departments of Commerce (Chair), State, Defense, Energy and, where appropriate, the Treasury, makes all decisions regarding additions to, removals from, or other modifications to the Entity List. The ERC makes all decisions to add an entry to the Entity List by majority vote and all decisions to remove or modify an entry by unanimous vote.

**ERC Entity List Decisions**

*Additions to the Entity List*

This rule implements the decision of the ERC to add forty-four persons under forty-nine entries to the Entity List. These forty-four persons are being added on the basis of § 744.11 (License requirements that apply to entities acting contrary to the national security or foreign policy interests of the United States) of the EAR. The forty-nine entries added to the entity list consist of eight entries in China, four entries in Germany, three entries in Hong Kong, one entry in India, two entries in Iran, five entries in Malaysia, two entries in the Netherlands, one entry in Singapore, one entry in Switzerland and twenty-two entries in the U.A.E. There are forty-nine entries for the forty-four persons because four persons are listed in multiple locations, resulting in five additional entries.

USAO_SHIH_01575421

**14954** Federal Register / Vol. 81, No. 54 / Monday, March 21, 2016 / Rules and Regulations

The ERC reviewed § 744.11(b) (Criteria for revising the Entity List) in making the determination to add these forty-four persons under forty-nine entries to the Entity List. Under that paragraph, persons for whom there is reasonable cause to believe, based on specific and articulable facts, that they have been involved, are involved, or pose a significant risk of being or becoming involved in, activities that are contrary to the national security or foreign policy interests of the United States and those acting on behalf of such persons may be added to the Entity List. Paragraphs (b)(1) through (5) of § 744.11 include an illustrative list of activities that could be contrary to the national security or foreign policy interests of the United States. Pursuant to § 744.11 of the EAR, the ERC determined that forty-four persons, located in the destinations of China, Germany, Hong Kong, India, Iran, Malaysia, Netherlands, Singapore, Switzerland, and the U.A.E., be added to the Entity List for actions contrary to the national security or foreign policy interests of the United States.

Specifically, the ERC determined that Frank Genin, Skylinks FZC, All Industrial International, Beaumont Trading AG, Behover General Trading/Information Technologies, Complete Freight Solutions, Cybernet MEA, Innovative Technology Solutions, Joinus Freight Systems HK Ltd, Syarikat Penghantaran TWW Sdn Bhd, Teofila Logistics, Amanda Sng, Beverly Apigo, Rose Ann Apigo, Hamideh Ghayour, Kapil Raj Arora, Mehdi Jafariyeh, T.V. Joe Ouseppachan, and Donna Lynn Ocampo be added to the Entity List on the basis of their attempts to procure items, including U.S.-origin items, for activities contrary to the national security and foreign policy interests of the United States. Specifically, Frank Genin used the aforementioned companies and employees thereof to supply U.S.-origin items to an Iranian party associated with the Iranian defense industry. Additionally, two Skylinks managing directors, Seyed Amin Ghorashi Sarvestani and Peyman Manoucher Azimi were convicted in the United States in 2013 for International Emergency Economic Powers Act (IEEPA) violations carried out through Skylinks and its parent company, Innovative Technology Systems (ITS). Three of these entities (Beaumont Trading AG, Frank Genin, and Skylinks FZC) are located in the destinations of Hong Kong, India, Malaysia, the Netherlands, Singapore, Switzerland, and the U.A.E.

The ERC determined that Industrio GmbH, Peter Duenker, Martin Hess and Wilhelm "Bill" Holler attempted to procure items, including U.S.-origin items, for activities contrary to the national security and foreign policy interests of the United States. Specifically, Industrio GmbH and its associates have been involved in supplying U.S.-origin items to an Iranian party associated with the Iranian defense industry. The Iranian party's customers include companies designated by the Department of the Treasury as Specially Designated Nationals (SDNs).

Pursuant to § 744.11(b) of the EAR, the ERC determined that the conduct of these twenty-three entities raises sufficient concern that prior review of exports, reexports or transfers (in-country) of items subject to the EAR involving these persons, and the possible imposition of license conditions or license denials on shipments to the persons, will enhance BIS's ability to prevent violations of the EAR.

In addition, the ERC determined that that there is reasonable cause to believe, based on specific and articulable facts, that Mahmood Akbari; Reza Hajigholamali; Patco Group Ltd.; Managed Systems and Services (MSAS)(FZC); and TGO General Trading LLC were involved in the illegal diversion of U.S.-origin items to Iran via the U.A.E. One of these persons (Reza Hajigholamali) is located in both Iran and the U.A.E., resulting in six entries added under the locations of Iran and the U.A.E. The ERC also determined that for eight entities located in China—Jereh International; Jinan Tongbaolai Oilfield Equipment Co. Ltd.; Yantai Jereh Oilfield Services Group Co., Ltd.; Chen Qu; Edward Fan; Gala Wang; Sharon Yang; and Tan Wei—there is reasonable cause to believe, based on specific and articulable facts, that they unlawfully diverted U.S.-origin oilfield equipment to Iran without the required Department of the Treasury, Office of Foreign Assets Control (OFAC) licenses, actions that violate the EAR.

Pursuant to § 744.11(b)(2) of the EAR, the ERC determined that the conduct of these thirteen entities raises sufficient concern that prior review of exports, reexports or transfers (in-country) of items subject to the EAR involving these persons, and the possible imposition of license conditions or license denials on shipments to the persons, will enhance BIS's ability to prevent violations of the EAR. Therefore, these thirteen entities are being added to the Entity List.

The ERC determined that four entities, EEZ SDN, Mohamad Sadeghi,

Mohsen Torabi, and Muhamad Fazil bin Khalid, be added to the Entity List under Malaysia. These persons are involved, or have previously been involved, in an illicit procurement scheme to divert items subject to the EAR to prohibited end uses and end users in Iran. The actions of these persons have supported persons engaged in acts of terror and enhanced the military capability of Iran, which has been designated by the Secretary of State as a State Sponsor of Terrorism.

Pursuant to § 744.11(b)(1), (2) and (5) of the EAR, the ERC determined that the conduct of these four entities raises sufficient concern that prior review of exports, reexports or transfers (in-country) of items subject to the EAR involving these persons, and the possible imposition of license conditions or license denials on shipments to the persons, will enhance BIS's ability to prevent violations of the EAR.

Finally, the ERC determined that four entities located in the U.A.E., AdCom Systems, Advanced Targeting Systems Company, LLC (ATS), Gulf Eagle Contracting (GEC), and Gulf Eagle Industrial and Metal Profiles (GEIMP), be added to the Entity List. AdCom Systems and its three affiliated companies are seeking to export Missile Technology Control Regime (MTCR) Category I unmanned aerial vehicles (UAVs) to non-MTCR member countries. All Category I systems are inherently capable of delivering weapons of mass destruction, and the proliferation of such systems by AdCom and its affiliates undermines the international missile nonproliferation objectives that the United States relies on to promote its national security and foreign policy interests.

Pursuant to § 744.11(b) of the EAR, the ERC determined that the conduct of these four entities raises sufficient concern that prior review of exports, reexports or transfers (in-country) of items subject to the EAR involving these persons, and the possible imposition of license conditions or license denials on shipments to the persons, will enhance BIS's ability to prevent violations of the EAR.

For the forty-four persons under forty-nine entries added to the Entity List, BIS imposes a license requirement for all items subject to the EAR and a license review policy of presumption of denial. The license requirements apply to any transaction in which items are to be exported, reexported, or transferred (in-country) to any of the persons or in which such persons act as purchaser, intermediate consignee, ultimate consignee, or end-user. In addition, no

USAO_SHIH_01575422

license exceptions are available for exports, reexports, or transfers (in-country) to the persons being added to the Entity List in this rule. The acronym "a.k.a." (also known as) is used in entries on the Entity List to help exporters, reexporters and transferors to better identify listed persons on the Entity List.

This final rule adds the following forty-four entries under forty-nine entries to the Entity List:

## China

(1) *Chen Qu,* a.k.a., the following one alias: Chen Choo, No. 5, Jereh Road, Laishan District, Yantai Shandong Province, China;

(2) *Edward Fan,* No. 5, Jereh Road, Laishan District, Yantai Shandong Province, China;

(3) *Gala Wang,* Room 2506, Hengchang Building, No. 288, Hing Si Road, Jinan City, Shandong, China;

(4) *Jereh International,* No. 5, Jereh Road, Laishan District, Yantai Shandong Province, China;

(5) *Jinan Tongbaolai Oilfield Equipment Co. Ltd.,* Room 2506, Hengchang Building, No. 288, Hing Si Road, Jinan City, Shandong, China;

(6) *Sharon Yang,* No. 5, Jereh Road, Laishan District, Yantai Shandong Province, China;

(7) *Tan Wei,* a.k.a., the following one alias: Terry Tan. No. 5, Jereh Road, Laishan District, Yantai Shandong Province, China; *and*

(8) *Yantai Jereh Oilfield Services Group Co., Ltd.,* No. 5, Jereh Road, Laishan District, Yantai Shandong Province, China.

## Germany

(1) *Industrio GmbH,* Dreichlinger Street 79, Neumarkt, 92318 Germany;

(2) *Martin Hess,* Dreichlinger Street 79, Neumarkt, 92318 Germany;

(3) *Peter Duenker,* a.k.a., the following one alias: Peter Dunker, Dreichlinger Street 79, Neumarkt, 92318 Germany; *and*

(4) *Wilhelm "Bill" Holler,* Dreichlinger Street 79, Neumarkt, 92318 Germany.

## Hong Kong

(1) *Frank Genin,* a.k.a., the following one alias: Franck Genin, RM 1905, 19/F, Nam Wo Hong Bldg., 148 Wing Lok Street, Sheung Wang, Hong Kong (See alternate addresses under U.A.E.);

(2) *Joinus Freight Systems HK Ltd,* a.k.a., the following one alias: JFS Global Logistics, Unit 07–07, 25F, Tower B, Regent Centre, 63 Wo Yi Hop Road, Kwai Chung, N.T. Hong Kong; *and* Suite 801–803, Park Sun Bldg, 97–107 Wo Yi Hop Road, Kwai Chung, Hong Kong; *and*

(3) *Skylinks FZC,* a.k.a., the following two aliases: Skylinks; *and* Skylinks Satellite Comm., RM 1905, 19/F, Nam Wo Hong Bldg., 148 Wing Lok Street, Sheung Wang, Hong Kong (See alternate addresses under U.A.E.).

## India

(1) *Beaumont Trading AG,* a.k.a., the following one alias: Beaumont Tradex India, 412 World Trade Center, Conaught Place, New Delhi—110001, India; *and* 4th Floor Statesman House Building, Barakhamba Road, New Delhi 11001, India; *and* Express Towers, 1st Floor, Express Building, 9–10 Bahadurshah Zafar Marg, New Delhi-12, India (See alternate addresses under Switzerland and U.A.E.).

## Iran

(1) *Mahmood Akbari,* a.k.a., the following alias: John Wassermann, No.34, Arash Blvd., Farid Afshar St., Zafar Ave., Tehran, Iran; *and*

(2) *Reza Hajigholamali,* No.34, Arash Blvd., Farid Afshar St., Zafar Ave., Tehran, Iran (See alternate addresses under U.A.E.).

## Malaysia

(1) *EEZ SDN,* a.k.a., the following one alias: Elecronic Engineering Zone SDN BHD, 33–88 Menara Keck Seng, 203 Jalan Bukit Bintang, Kuala Lumpur, Malaysia; *and* A–17–8 Tower A, Menara Atlas, Plaza Pantai 5, Jalan 4/83A, off Jalan Pantai Baru, Kuala Lumpur, Malaysia; *and* B–3A–7 Empire Subang, Jalan SS16/1, Subang Jaya, Malaysia);

(2) *Mohamad Sadeghi,* 33–88 Menara Keck Seng, 203 Jalan Bukit Bintang, Kuala Lumpur, Malaysia; *and* A–17–8 Tower A, Menara Atlas, Plaza Pantai 5, Jalan 4/83A, off Jalan Pantai Baru, Kuala Lumpur, Malaysia;

(3) *Mohsen Torabi,* a.k.a., the following one alias: Moha Torab, 2nd Floor, Jalan 9A, Berangan, Kuala Lumpur, Malaysia; *and* 33–88 Menara Keck Seng, 203 Jalan Bukit Bintang, Kuala Lumpur, Malaysia; *and* A–17–8 Tower A, Menara Atlas, Plaza Pantai 5, Jalan 4/83A, off Jalan Pantai Baru, Kuala Lumpur, Malaysia;

(4) *Muhamad Fazil bin Khalid,* 33–88 Menara Keck Seng, 203 Jalan Bukit Bintang, Kuala Lumpur, Malaysia; *and* A–17–8 Tower A, Menara Atlas, Plaza Pantai 5, Jalan 4/83A, off Jalan Pantai Baru, Kuala Lumpur, Malaysia; *and* No. 2 Jalan 29C, Selayang Baru, Batu Caves, Selangor, Malaysia; *and*

(5) *Syarikat Penghantaran TWW Sdn Bhd,* Lot C–7, Block C Mas Advance Cargo Centre KLIA Cargo Village Southern Support Zone 64000, Sepang Selangor Darul Ehsan, Malaysia.

## Netherlands

(1) *All Industrial International,* Knobbelswaansingel 19, 2496 LN, The Hague, Netherlands; *and* Breukelensestraat 44, 2574 RC, The Hague, Netherlands; *and*

(2) *Kapil Raj Arora,* Breukelensestraat 44, 2574 RC, The Hague, Netherlands; *and* Knobbelswaansingel 19, 2496 LN, The Hague, Netherlands.

## Singapore

(1) *Amanda Sng,* 211 Henderson Road, #13–02 Henderson Industrial Park, Singapore 159552.

## Switzerland

(1) *Beaumont Trading AG,* a.k.a., the following one alias: Beaumont Tradex India, Haldenstrasse 5, Baar (Zug Canton), CH 6342 Switzerland (See alternate addresses in India and the U.A.E.).

## United Arab Emirates

(1) *AdCom Systems,* Industrial City of Abu Dhabi—ICAD, Abu Dhabi, U.A.E.;

(2) *Advanced Targeting Systems Company, LLC (ATS),* P.O. Box 34237, High Specialized Economical Zone M41, 103A13, Al Mussafah, Abu Dhabi, U.A.E.;

(3) *Beaumont Trading AG,* a.k.a., the following one alias: Beaumont Tradex India, DMCC Business Center, 49 Almas Tower—JLT Dubai, U.A.E. (See alternate addresses in India and Switzerland);

(4) *Behover General Trading/ Information Technologies,* a.k.a., the following one alias: DBA Behover Information Technologies, P.O. Box 25756, Atrium Center Building, Burdubai, Dubai, U.A.E.; *and* Unit M3&4, Atrium Centre, Bank Street Dubai, U.A.E.; *and* P.O. Box 19741, Dubai, U.A.E.; *and* Unit 2009, Prism Tower, Business Bay, Dubai, U.A.E.; *and* P.O. Box 115904, Dubai, U.A.E.;

(5) *Beverly Apigo,* P.O. Box 28515, Dubai, U.A.E.; *and* 202 B Sama Tower Sheikh Tayed Road #3 Dubai, U.A.E. P.O. Box 16048; *and* BC2–414, RAK Free Trade Zone, P.O. Box 16048, Ras Al Khaimah, U.A.E.; *and* G1/RAK Free Trade Zone RAK—U.A.E.; *and* G–17 Sheikh Tayed Road #3, Ras Al Khaimah Free Trade Zone, Dubai, U.A.E.; *and* P.O. Box 10559 Ras Al Khaimah, U.A.E.; *and* P.O. Box 25344 Bur Dubai, Dubai, U.A.E.; *and* Suite 608 Atrium Center, Bank St., Bur Dubai, Dubai, U.A.E., P.O. Box 16048; *and* Suite 706 Atrium Center Bank Street, Bur Dubai, Dubai U.A.E.;

(6) *Complete Freight Solutions,* 704 The Atrium Ctr, Khalid Bin, Dubai, U.A.E.; *and* 1st Floor, Office No. 114, Yousef Al Otaiba Bldg, Above Emirates Islamic Bank Office, 2nd December

USAO_SHIH_01575423

**14956**    Federal Register / Vol. 81, No. 54 / Monday, March 21, 2016 / Rules and Regulations

Street (Old Al Dyafah Street), P.O. Box No. 29687, Satwa, Dubai, U.A.E.;

(7) *Cybernet MEA*, 202 B Sama Tower Sheikh Tayed Road #3, Dubai, U.A.E., P.O. Box 16048; *and* BC2–414, RAK Free Trade Zone, P.O. Box 16048 Ras Al Khaimah, U.A.E.; *and* G1/RAK Free Trade Zone RAK—U.A.E.; *and* G–17 Sheikh Tayed Road #3, Ras Al Khaimah Free Trade Zone, Dubai, U.A.E.; *and No.* 608 Atrium Center Bank Street, Dubai, U.A.E.; *and* P.O. Box 10559 Ras Al Khaimah, U.A.E.; *and* P.O. Box 116911 Dubai, U.A.E.; *and* P.O. Box 25344 Bur Dubai, Dubai, U.A.E.; *and* Suite 608 Atrium Center Bank Street, Bur Dubai, Dubai, U.A.E.; *and* Suite 706 Atrium Center Bank Street, Bur Dubai, Dubai U.A.E.;

(8) *Donna Lynn Ocampo*, P.O. Box 28515, Dubai, U.A.E.; *and* 202 B Sama Tower Sheikh Tayed Road #3 Dubai, U.A.E., P.O. Box 16048; *and* BC2–414, RAK Free Trade Zone P.O. Box 16048 Ras Al Khaimah, U.A.E.; *and* G1/RAK Free Trade Zone RAK—U.A.E.; *and* G–17 Sheikh Tayed Road #3 Ras Al Khaimah Free Trade Zone Dubai, U.A.E.; *and* P.O. Box 10559 Ras Al Khaimah, U.A.E.; *and* P.O. Box 25344 Bur Dubai, Dubai, U.A.E.; *and* Suite 608 Atrium Center, Bank St., Bur Dubai, Dubai, U.A.E. P.O. Box 16048; *and* Suite 706 Atrium Center Bank Street Bur Dubai, Dubai, U.A.E.;

(9) *Frank Genin*, a.k.a., the following one alias: Franck Genin, Villa No. 6 AL WASL RD, 332/45b Jumeira 1, Dubai, Dubai 25344, U.A.E.; *and* Suite 608 Atrium Center, Bank St., Bur Dubai, U.A.E., P.O. Box 16048; *and* Suite 706 Atrium Center Bank Street Bur Dubai, Dubai U.A.E.; *and* P.O. Box 10559 Ras Al Khaimah, U.A.E.; *and* P.O. Box 25344 Bur Dubai, Dubai, U.A.E.; *and* 2nd Floor, #202 Sheik Zayed Road Dubai POB 25344 U.A.E.; *and* P.O. Box 28515, Dubai, U.A.E.; *and* 202 B Sama Tower Sheikh Tayed Road #3 Dubai, U.A.E. P.O.Box 16048; *and* BC2–414, RAK Free Trade Zone P.O. Box 16048 Ras Al Khaimah, U.A.E.; *and* G1/RAK Free Trade Zone RAK—U.A.E.; *and* G–17 Sheikh Tayed Road #3 Ras Al Khaimah Free Trade Zone, Dubai, U.A.E. (See alternate address under Hong Kong);

(10) *Gulf Eagle Contracting (GEC)*, P.O. Box 31814, Al Dhafra Road, Abu Dhabi, U.A.E.;

(11) *Gulf Eagle Industrial and Metal Profiles (GEIMP)*, P.O. Box 31814, Al Mussafah Industrial City, New Airport Road, Abu Dhabi, U.A.E.;

(12) *Hamideh Ghayour*, P.O. Box 155904, Dubai, U.A.E.; *and* Unit M3&4, Atrium Centre, Bank Street Dubai, U.A.E.;

(13) *Innovative Technology Systems (ITS)*, 2nd Floor, #202 Sheik Zayed Road Dubai, POB 25344, U.A.E.; *and* Suite 608 Atrium Center, Bank Street, Bur Dubai, Dubai, U.A.E.; *and* Suite 706 Atrium Center Bank Street, Bur Dubai, Dubai, U.A.E.;

(14) *Managed Systems and Services (MSAS)(FZC)*, No. A3089 Seif Sharjah U.A.E.; *and* SAIF Zone 250 M2 Warehouse P60–109, PO Box 122550, Sharjah, U.A.E.;

(15) *Mehdi Jafariyeh*, a.k.a., the following one alias: Mehdi Jeffery, P.O. Box 28515, Dubai, U.A.E.; *and* 202 B Sama Tower Sheikh Tayed Road #3 Dubai, U.A.E., P.O. Box 16048; *and* BC2–414, RAK Free Trade Zone P.O. Box 16048 Ras Al Khaimah, U.A.E.; *and* G 1/RAK Free Trade Zone RAK—U.A.E.; *and* G–17 Sheikh Tayed Road #3 Ras Al Khaimah Free Trade Zone, Dubai, U.A.E. *and* P.O. Box 10559 Ras Al Khaimah, U.A.E.; *and* P.O. Box 25344 Bur Dubai, Dubai, U.A.E.; *and* Suite 608 Atrium Center, Bank St., Bur Dubai, Dubai, U.A.E., P.O. Box 16048; *and* Suite 706 Atrium Center Bank Street Bur Dubai, Dubai, U.A.E.;

(16) *Patco Group Ltd.*, P.O. Box 20470, Ajman, U.A.E.; *and* Ajman Free Zone Bldg., 48-Block-C Meena Road near Ajman Sea Port, Ajman, U.A.E.;

(17) *Reza Hajigholamali*, PO Box 20470, Ajman, U.A.E.; *and* Ajman Free Zone Bldg., 48-Block-C Meena Road near Ajman Sea Port, Ajman, U.A.E. (See alternate address under Iran);

(18) *Rose Ann Apigo*, P.O. Box 28515, Dubai, U.A.E.; *and* 202 B Sama Tower Sheikh Tayed Road #3 Dubai, U.A.E., P.O. Box 16048; *and* BC2–414, RAK Free Trade Zone P.O. Box 16048 Ras Al Khaimah, U.A.E.; *and* G1/RAK Free Trade Zone RAK—U.A.E.; *and* G–17 Sheikh Tayed Road #3 Ras Al Khaimah Free Trade Zone, Dubai, U.A.E.; *and* P.O. Box 10559 Ras Al Khaimah, U.A.E.; *and* P.O. Box 25344 Bur Dubai, Dubai, U.A.E.; *and* Suite 608 Atrium Center, Bank St., Bur Dubai, Dubai, U.A.E., P.O. Box 16048; *and* Suite 706 Atrium Center Bank Street, Bur Dubai, Dubai U.A.E.;

(19) *Skylinks FZC*, a.k.a., the following two aliases: Skylinks; *and* Skylinks Satellite Comm., P.O. Box 28515, Dubai, U.A.E.; *and* 202 B Sama Tower Sheikh Tayed Road #3 Dubai, U.A.E., P.O. Box 16048; *and* BC2–414, RAK Free Trade Zone P.O. Box 16048 Ras Al Khaimah, U.A.E.; *and* G1/RAK Free Trade Zone RAK—U.A.E.; *and* G–17 Sheikh Tayed Road #3 Ras Al Khaimah Free Trade Zone, Dubai, U.A.E.; *and* P.O. Box 10559 Ras Al Khaimah, U.A.E.; *and* P.O. Box 25344 Bur Dubai, Dubai, U.A.E.; *and* Suite 608 Atrium Center, Bank St., Bur Dubai, Dubai, U.A.E., P.O. Box 16048; *and*

Suite 706 Atrium Center Bank Street, Bur Dubai, Dubai U.A.E. 3 (See alternate address under Hong Kong);

(20) *T.V. Joe Ouseppachan*, Office 228, Al Aatar Shopping Mall, P.O. Box 115824, Karama, Dubai, U.A.E.; *and*

(21) *Teofila Logistics*, Office 228, Al Aatar Shopping Mall, P.O. Box 115824, Karama, Dubai, U.A.E.; *and*

(22) *TGO General Trading LLC*, a.k.a., the following one alias: Three Green Orbit, 19th Floor Festival Tower, Festival City, PO Box 36605, Dubai, U.A.E.

*Removals From the Entity List*

This rule implements decisions of the ERC to remove the following five entries from the entity list based on removal requests received by the BIS: Ukrspetsexport, located in the Ukraine; and Zener One Net, Zener Marine, Ivan Desouza, and Girish Purushothama, all located in the U.A.E.

Pursuant to § 744.11(b)(5) of the EAR, Ukrspetsexport was found to have exported military equipment to a country on the State Department's State Sponsors of Terrorism List and was subsequently added to the Entity List on March 28, 2013 (78 FR 18811). The ERC's decision to remove this entry from the Entity List was based on information received by the BIS and further review conducted by the ERC.

Zener One Net, Zener Marine, Ivan Desouza, and Girish Purushotham were added to the Entity List on June 5, 2014 (79 FR 32441), pursuant to § 744.11(b)(1) of the EAR. The removal of Zener One Net, Zener Marine, Ivan Desouza, and Girish Purushotham is based on the information provided in their appeal request, information provided by the companies and persons in cooperative exchanges, and further reviews conducted by the ERC.

In accordance with § 744.16(c), the Deputy Assistant Secretary for Export Administration has sent written notifications informing these persons of the ERC's decisions to remove them from the Entity List.

This final rule implements the decision to remove the following five entities located in the Ukraine and the U.A.E. from the Entity List.

**Ukraine**

(1) *Ukrspetsexport*, 36 Degtiarivska Blvd., Ukraine 04119 Kyiv.

**United Arab Emirates**

(1) *Girish Purushothama*, P.O. Box 389, Dubai, U.A.E.; *and* P.O. Box 3905, Abu Dhabi, U.A.E.; *and* Plot S20206, Dubai, U.A.E.;

(2) *Ivan Desouza*, a.k.a., the following one alias: Ivan D'Souza, P.O. Box 389,

USAO_SHIH_01575424

Dubai, U.A.E.; *and* P.O. Box 3905, Abu Dhabi, U.A.E.; *and* Plot S20206, Dubai, U.A.E.;

(3) *Zener Marine,* P.O. Box 389, Dubai, U.A.E.; *and* Al Quoz Warehouse, Dubai, U.A.E.; *and*

(4) *Zener One Net,* P.O. Box 389, Dubai, U.A.E.

The removal of the five persons referenced above, which was approved by the ERC, eliminates the existing license requirements in Supplement No. 4 to part 744 for exports, reexports and transfers (in-country) to these entities. However, the removal of these five persons from the Entity List does not relieve persons of other obligations under part 744 of the EAR or under other parts of the EAR. Neither the removal of an entity from the Entity List nor the removal of Entity List-based license requirements relieves persons of their obligations under General Prohibition 5 in § 736.2(b)(5) of the EAR which provides that, "you may not, without a license, knowingly export or reexport any item subject to the EAR to an end-user or end-use that is prohibited by part 744 of the EAR." Additionally, these removals do not relieve persons of their obligation to apply for export, reexport or in-country transfer licenses required by other provisions of the EAR. BIS strongly urges the use of Supplement No. 3 to part 732 of the EAR, "BIS's 'Know Your Customer' Guidance and Red Flags," when persons are involved in transactions that are subject to the EAR.

*Modifications to the Entity List*

This final rule implements the decision of the ERC to modify two existing entries on the Entity List, under the destination of China. The ERC made determinations to make the following modifications: Add one alias and three additional addresses to the entry of Chengdu GaStone Technology Co., Ltd. (CGTC) and add four aliases and nine additional addresses to the entry of PRC Lode Technology Company.

This final rule makes the following modifications to two entries on the Entity list:

**China**

(1) *Chengdu GaStone Technology Co., Ltd. (CGTC),* a.k.a., the following one alias: Chengdu Jiashi Technology Co., 31F, A Tower, Yanlord Square, No. 1, Section 2, Renmind South Road, Chengdu China; *and* Internet of Things Industrial Park Economic Development District Xinan Hangkonggang (Southwest Airport), Shuangliu County, Chengdu; *and* 29th Floor, Yanlord Landmark, No. 1 Renmin South Road Section 2, Chengdu; *and* 29/F Yanlord Landmark Tower A, Chengdu, China; *and*

(2) *PRC Lode Technology Company,* a.k.a., the following following four aliases: Lode Technology Company; Beijing Lode Technology Company, Ltd.; Beijing Nuodian Keji Youxian Gongsi; *and* Beijing Nuodian Technology. Room 8306 Kelun Building, 12A Guanghua Road, Chaoyang, Beijing 100020, China; *and* Room 801, Unit 1, Building 8 Caiman Street, Chaoyang Road, Beijing 100025, China; *and* Building 1–1, No. 67 Caiman Str., Chaoyang Road, Beijing 100123, China; *and* Room A407 Kelun Building, 12A Guanghua Road, Chaoyang, Beijing 100020, China; *and* Rm 602, 5/F, No. 106 NanHu Road, ChaoYang District, Beijing, China; *and* Suite 801, Unit 1, Building 8 Caiman Street Finance & Economics Center, Chaoyang Road, Chaoyang Disrict, Beijing; *and* Suite 306, Lianhua Building No. 159 Tianzhou Road, Xuhui District, Shanghai 200233; *and* Suite 6B3, Building 15, No. 300 Tianlin Road, Xuhui District, Shanghai 200233; *and* Suite 1901, Unit 1, Block 8, District E, Ziwei Garden City, Chang'an Technological Garden, Xi'an, 710119; *and* Suite 2002, Unit 4, Building 1 Zhongda Junyue Jinsha Phase 3 No. 15 Jinxiang Road, Qingyang District, Chengdu, 610031; and Suite 1506, Building 4, Dachengxiaoshi, No. 10 Qingjiang Zhong Road, Qingyang District, Chengdu, 610072; *and* Suite 904, Building A6, Shunfeng Emerald Garden, No. 168 Zhaofeng Road, Shijing, Baiyun District, Guangzhou, 510410; *and* No. 1263 Airport Road, Baiyun District, Guangzhou; *and* Suite 201, Tower A, Building 14, Qianxihe Garden Center, Nanchang, 330002 (See alternate addresses under Hong Kong).

*Savings Clause*

Shipments of items removed from eligibility for a License Exception or export or reexport without a license (NLR) as a result of this regulatory action that were en route aboard a carrier to a port of export or reexport, on March 21, 2016, pursuant to actual orders for export or reexport to a foreign destination, may proceed to that destination under the previous eligibility for a License Exception or export or reexport without a license (NLR).

**Export Administration Act**

Although the Export Administration Act expired on August 20, 2001, the President, through Executive Order 13222 of August 17, 2001, 3 CFR, 2001 Comp., p. 783 (2002), as amended by Executive Order 13637 of March 8, 2013, 78 FR 16129 (March 13, 2013) and as extended by the Notice of August 7, 2015, 80 FR 48233 (August 11, 2015), has continued the Export Administration Regulations in effect under the International Emergency Economic Powers Act. BIS continues to carry out the provisions of the Export Administration Act, as appropriate and to the extent permitted by law, pursuant to Executive Order 13222, as amended by Executive Order 13637.

**Rulemaking Requirements**

1. Executive Orders 13563 and 12866 direct agencies to assess all costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health and safety effects, distributive impacts, and equity). Executive Order 13563 emphasizes the importance of quantifying both costs and benefits, of reducing costs, of harmonizing rules, and of promoting flexibility. This rule has been determined to be not significant for purposes of Executive Order 12866.

2. Notwithstanding any other provision of law, no person is required to respond to nor be subject to a penalty for failure to comply with a collection of information, subject to the requirements of the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*) (PRA), unless that collection of information displays a currently valid Office of Management and Budget (OMB) Control Number. This regulation involves collections previously approved by OMB under control number 0694–0088, Simplified Network Application Processing System, which includes, among other things, license applications and carries a burden estimate of 43.8 minutes for a manual or electronic submission.

Total burden hours associated with the PRA and OMB control number 0694–0088 are not expected to increase as a result of this rule. You may send comments regarding the collection of information associated with this rule, including suggestions for reducing the burden, to Jasmeet K. Seehra, Office of Management and Budget (OMB), by email to *Jasmeet_K._Seehra@ omb.eop.gov,* or by fax to (202) 395–7285.

3. This rule does not contain policies with Federalism implications as that term is defined in Executive Order 13132.

4. For the forty-four persons under forty-nine entries added to the Entity List in this final rule, the provisions of

the Administrative Procedure Act (5 U.S.C. 553) requiring notice of proposed rulemaking, the opportunity for public comment and a delay in effective date are inapplicable because this regulation involves a military or foreign affairs function of the United States. (See 5 U.S.C. 553(a)(1)). BIS implements this rule to protect U.S. national security or foreign policy interests by preventing items from being exported, reexported, or transferred (in country) to the persons being added to the Entity List. If this rule were delayed to allow for notice and comment and a delay in effective date, the entities being added to the Entity List by this action would continue to be able to receive items without a license and to conduct activities contrary to the national security or foreign policy interests of the United States. In addition, publishing a proposed rule would give these parties notice of the U.S. Government's intention to place them on the Entity List and would create an incentive for these persons to either accelerate receiving items subject to the EAR to conduct activities that are contrary to the national security or foreign policy interests of the United States, and/or to take steps to set up additional aliases, change addresses, and other measures to try to limit the impact of the listing on the Entity List once a final rule was published. Further, no other law requires that a notice of proposed rulemaking and an opportunity for public comment be given for this rule. Because a notice of proposed rulemaking and an opportunity for public comment are not required to be given for this rule by 5 U.S.C. 553, or by any other law, the analytical requirements of the Regulatory Flexibility Act, 5 U.S.C. 601 *et seq.*, are not applicable. Accordingly, no regulatory flexibility analysis is required and none has been prepared.

5. For the five entries removed from the Entity List in this final rule, pursuant to the Administrative Procedure Act (APA), 5 U.S.C. 553(b)(B), BIS finds good cause to waive requirements that this rule be subject to notice and the opportunity for public comment because it would be contrary to the public interest.

In determining whether to grant removal requests from the Entity List, a committee of U.S. Government agencies (the End-User Review Committee (ERC)) evaluates information about and commitments made by listed persons requesting removal from the Entity List, the nature and terms of which are set forth in 15 CFR part 744, Supplement No. 5, as noted in 15 CFR 744.16(b). The information, commitments, and criteria

for this extensive review were all established through the notice of proposed rulemaking and public comment process (72 FR 31005 (June 5, 2007) (proposed rule), and 73 FR 49311 (August 21, 2008) (final rule)). These five removals have been made within the established regulatory framework of the Entity List. If the rule were to be delayed to allow for public comment, U.S. exporters may face unnecessary economic losses as they turn away potential sales to the other entity removed by this rule because the customer remained a listed person on the Entity List even after the ERC approved the removal pursuant to the rule published at 73 FR 49311 on August 21, 2008. By publishing without prior notice and comment, BIS allows the applicant to receive U.S. exports immediately since the applicant already has received approval by the ERC pursuant to 15 CFR part 744, Supplement No. 5, as noted in 15 CFR 744.16(b).

The removals from the Entity List granted by the ERC involve interagency deliberation and result from review of public and non-public sources, including sensitive law enforcement information and classified information, and the measurement of such information against the Entity List removal criteria. This information is extensively reviewed according to the criteria for evaluating removal requests from the Entity List, as set out in 15 CFR part 744, Supplement No. 5 and 15 CFR 744.16(b). For reasons of national security, BIS is not at liberty to provide to the public detailed information on which the ERC relied to make the decisions to remove these five entities. In addition, the information included in the removal request is information exchanged between the applicant and the ERC, which by law (section 12(c) of the Export Administration Act), BIS is restricted from sharing with the public. Moreover, removal requests from the Entity List contain confidential business information, which is necessary for the extensive review conducted by the U.S. Government in assessing such removal requests.

Section 553(d) of the APA generally provides that rules may not take effect earlier than thirty (30) days after they are published in the **Federal Register**. BIS finds good cause to waive the 30-day delay in effectiveness under 5 U.S.C. 553(d)(1) because this rule is a substantive rule which relieves a restriction. This rule's removal of five persons under five entries from the Entity List removes a requirement (the Entity-List-based license requirement and limitation on use of license

exceptions) on these five persons being removed from the Entity List. The rule does not impose a requirement on any other person for these five removals from the Entity List.

No other law requires that a notice of proposed rulemaking and an opportunity for public comment be given for this final rule. Because a notice of proposed rulemaking and an opportunity for public comment are not required under the APA or by any other law, the analytical requirements of the Regulatory Flexibility Act (5 U.S.C. 601 *et seq.*) are not applicable. As a result, no final regulatory flexibility analysis is required and none has been prepared.

**List of Subjects in 15 CFR Part 744**

Exports, Reporting and recordkeeping requirements, Terrorism.

Accordingly, part 744 of the Export Administration Regulations (15 CFR parts 730 through 774) is amended as follows:

## PART 744—[AMENDED]

■ 1. The authority citation for 15 CFR part 744 continues to read as follows:

**Authority:** 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22 U.S.C. 3201 *et seq.*; 42 U.S.C. 2139a; 22 U.S.C. 7201 *et seq.*; 22 U.S.C. 7210; E.O. 12058, 43 FR 20947, 3 CFR, 1978 Comp., p. 179; E.O. 12851, 58 FR 33181, 3 CFR, 1993 Comp., p. 608; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 12947, 60 FR 5079, 3 CFR, 1995 Comp., p. 356; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13099, 63 FR 45167, 3 CFR, 1998 Comp., p. 208; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13224, 66 FR 49079, 3 CFR, 2001 Comp., p. 786; Notice of August 7, 2015, 80 FR 48233 (August 11, 2015); Notice of September 18, 2015, 80 FR 57281 (September 22, 2015); Notice of November 12, 2015, 80 FR 70667 (November 13, 2015); Notice of January 20, 2016, 81 FR 3937 (January 22, 2016).

■ 2. Supplement No. 4 to part 744 is amended:
■ a. By adding under China, People's Republic of, in alphabetical order, eight Chinese entities;
■ b. By revising under China, People's Republic of, two Chinese entities, "Chengdu GaStone Technology Co., Ltd. (CGTC)" and "PRC Lorde Technology Company";
■ c. By adding under Germany, in alphabetical order, four German entities;
■ d. By adding under Hong Kong, in alphabetical order, three Hong Kong entities;
■ e. By adding under India, in alphabetical order, one Indian entity;
■ f. By adding under Iran, in alphabetical order, two Iranian entities;
■ g. By adding under Malaysia, in alphabetical order, five Malaysian entities;

USAO_SHIH_01575426

Federal Register / Vol. 81, No. 54 / Monday, March 21, 2016 / Rules and Regulations    **14959**

■ h. By adding in alphabetical order, an entry for the Netherlands and two Dutch entities;
■ i. By adding under Singapore, in alphabetical order, one Singaporean entity;
■ j. By adding under Switzerland, in alphabetical order, one Swiss entity;

■ k. By removing under the Ukraine, one Ukrainian entity, "Ukrspetexport";
■ l. By adding under United Arab Emirates, in alphabetical order, twenty-two Emirati entities; and
■ m. By removing under United Arab Emirates, four Emirati entities, "Girish

Purushothama"; "Ivan Desouza"; "Zener Marine"; and "Zener One Net".

The additions and revisions read as follows:

**Supplement No. 4 to Part 744—Entity List**

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---------|--------|---------------------|----------------------|---------------------------|
| * | * * | * | * | * |
| China, People's Republic of. | * * | * | * | * |
| | Chengdu GaStone Technology Co., Ltd. (CGTC), a.k.a., the following one alias: <br> —Chengdu Jiashi Technology Co. <br> 31F, A Tower, Yanlord Square, No. 1, Section 2, Renmind South Road, Chengdu China; and Internet of Things Industrial Park Economic Development District Xinan Hangkonggang (Southwest Airport), Shuangliu County, Chengdu; and 29th Floor, Yanlord Landmark, No. 1 Renmin South Road Section 2, Chengdu; and 29/F Yanlord Land-mark Tower A, Chengdu, China. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 79 FR 44683, 8/1/14. 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Chen Qu, a.k.a., the following one alias: <br> —Chen Choo. <br> No. 5, Jereh Road, Laishan District, Yantai Shandong Province, China. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Edward Fan, No. 5, Jereh Road, Laishan District, Yantai Shandong Province, China. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Gala Wang, Room 2506, Hengchang Building, No. 288, Hing Si Road, Jinan City, Shandong, China. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Jereh International, No. 5, Jereh Road, Laishan District, Yantai Shandong Province, China. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Jinan Tongbaolai Oilfield Equipment Co. Ltd, Room 2506, Hengchang Building, No. 288, Hing Si Road, Jinan City, Shandong, China. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | PRC Lode Technology Company, a.k.a., the following four aliases: <br> —Lode Technology Company; <br> —Beijing Lode Technology Company, Ltd.; <br> —Beijing Nuodian Keji Youxian Gongsi; and <br> —Beijing Nuodian Technology. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 79 FR 44683, 8/1/14. 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |

USAO_SHIH_01575427

**14960**    **Federal Register** / Vol. 81, No. 54 / Monday, March 21, 2016 / Rules and Regulations

| Country | Entity | License requirement | License review policy | **Federal Register** citation |
|---|---|---|---|---|
| | Room 8306 Kelun Building, 12A Guanghua Road, Chaoyang, Beijing 100020, China; *and* Room 801, Unit 1, Building 8 Caiman Street, Chaoyang Road, Beijing 100025, China; *and* Building 1–1, No. 67 Caiman Str., Chaoyang Road, Beijing 100123, China; *and* Room A407 Kelun Building, 12A Guanghua Road, Chaoyang, Beijing 100020, China; *and* Rm 602, 5/F, No. 106 NanHu Road, ChaoYang District, Beijing, China; *and* Suite 801, Unit 1, Building 8 Caiman Street Finance & Economics Center, Chaoyang Road, Chaoyang District, Beijing; *and* Suite 306, Lianhua Building No. 159 Tianzhou Road, Xuhui District, Shanghai 200233; *and* Suite 6B3, Building 15, No. 300 Tianlin Road, Xuhui District, Shanghai 200233; *and* Suite 1901, Unit 1, Block 8, District E, Ziwei Garden City, Chang'an Technological Garden, Xi'an, 710119; *and* Suite 2002, Unit 4, Building 1 Zhongda Junyue Jinsha Phase 3 No. 15 Jinxiang Road, Qingyang District, Chengdu, 610031; Suite 1506, Building 4, Dachengxiaoshi, No. 10 Qingjiang Zhong Road, Qingyang District, Chengdu 610072; *and* Suite 904, Building A6, Shunfeng Emerald Garden, No. 168 Zhaofeng Road, Shijing, Baiyun District, Guangzhou, 510410; *and* No. 1263 Airport Road, Baiyun District, Guangzhou; *and* Suite 201, Tower A, Building 14, Qianxihe Garden Center, Nanchang, 330002 (See alternate addresses under Hong Kong). | | | |
| | * | * | * | * |
| | Sharon Yang, No. 5, Jereh Road, Laishan District, Yantai Shandong Province, China. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | TanWei, a.k.a., the following one alias:<br>—Terry Tan.<br>No. 5, Jereh Road, Laishan District, Yantai Shandong Province, China. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Yantai Jereh Oilfield Services Group Co., Ltd., No. 5, Jereh Road, Laishan District, Yantai Shandong Province, China. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | | | | |
| * | * | * | * | * |
| Germany ........... | | | | |
| | Industrio GmbH, Dreichlinger Street 79, Neumarkt, 92318 Germany. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Martin Hess, Dreichlinger Street 79, Neumarkt, 92318 Germany. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Peter Duenker a.k.a. the following alias:<br>—Peter Dunker. Dreichlinger Street 79, Neumarkt, 92318 Germany. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | | * | * | * |

USAO_SHIH_01575428

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| | Wilhelm "Bill" Holler, Dreichlinger Street 79, Neumarkt, 92318 Germany. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| * | * | * | * | * |
| Hong Kong ....... | Frank Genin, a.k.a, the following one alias:<br>—Franck Genin.<br>RM 1905, 19/F, Nam Wo Hong Bldg., 148 Wing Lok Street, Sheung Wang, Hong Kong (See alternate addresses under U.A.E.). | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | Joinus Freight Systems HK Ltd, a.k.a., the following one alias:<br>—JFS Global Logistics.<br>Unit 07–07, 25F, Tower B, Regent Centre, 63 Wo Yi Hop Road, Kwai Chung, N.T. Hong Kong; and Suite 801–803, Park Sun Bldg, 97–107 Wo Yi Hop Road, Kwai Chung, Hong Kong. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | Skylinks FZC, a.k.a., the following two aliases:<br>—Skylinks; and<br>—Skylinks Satellite Comm.<br>RM 1905, 19/F, Nam Wo Hong Bldg., 148 Wing Lok Street, Sheung Wang, Hong Kong (See alternate addresses under U.A.E.). | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| * | * | * | * | * |
| India | Beaumont Trading AG, a.k.a., the following one alias:<br>—Beaumont Tradex India.<br>412 World Trade Center, Conaught Place, New Delhi—110001, India; and 4th Floor Statesman House Building, Barakhamba Road, New Delhi 11001, India; and Express Towers, 1st Floor, Express Building, 9–10 Bahadurshah Zafar Marg, New Delhi-12, India (See alternate addresses under Switzerland and U.A.E.). | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| * | * | * | * | * |
| Iran ................... | Mahmood Akbari, a.k.a., the following alias:<br>—John Wassermann.<br>No. 34, Arash Blvd., Farid Afshar St., Zafar Ave., Tehran, Iran. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | Reza Hajigholamali, No. 34, Arash Blvd., Farid Afshar St., Zafar Ave., Tehran, Iran (See alternate addresses under U.A.E.). | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| * | * | * | * | * |
| * | * | * | * | * |
| Malaysia ........... | * | * | * | * |

**14962**    Federal Register / Vol. 81, No. 54 / Monday, March 21, 2016 / Rules and Regulations

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| | EEZ SDN, a.k.a., the following one alias:<br>—Electronic Engineering Zone SDN BHD.<br>33–88 Menara Keck Seng, 203 Jalan Bukit Bintang, Kuala Lumpur, Malaysia; and A–17–8 Tower A, Menara Atlas, Plaza Pantai 5, Jalan 4/83A, off Jalan Pantai Baru, Kuala Lumpur, Malaysia; and B–3A–7 Empire Subang, Jalan SS16/1, Subang Jaya, Malaysia. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * * * * * | | | |
| | Mohamad Sadeghi, 33–88 Menara Keck Seng, 203 Jalan Bukit Bintang, Kuala Lumpur, Malaysia; and A–17–8 Tower A, Menara Atlas, Plaza Pantai 5, Jalan 4/83A, off Jalan Pantai Baru, Kuala Lumpur, Malaysia. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * * * * * | | | |
| | Mohsen Torabi, a.k.a., the following one alias:<br>—Moha Torab.<br>2nd Floor, Jalan 9A, Berangan, Kuala Lumpur, Malaysia; and 33–88 Menara Keck Seng, 203 Jalan Bukit Bintang, Kuala Lumpur, Malaysia; and A–17–8 Tower A, Menara Atlas, Plaza Pantai 5, Jalan 4/83A, off Jalan Pantai Baru, Kuala Lumpur, Malaysia. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * * * * * | | | |
| | Muhamad Fazil bin Khalid, 33–88 Menara Keck Seng, 203 Jalan Bukit Bintang, Kuala Lumpur, Malaysia; and A–17–8 Tower A, Menara Atlas, Plaza Pantai 5, Jalan 4/83A, off Jalan Pantai Baru, Kuala Lumpur, Malaysia; and No. 2 Jalan 29C, Selayang Baru, Batu Caves, Selangor, Malaysia. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * * * * * | | | |
| | Syarikat Penghantaran TWW Sdn Bhd, Lot C–7, Block C Mas Advance Cargo Centre KLIA Cargo Village Southern Support Zone 64000, Sepang Selangor Darul Ehsan, Malaysia. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE], 3/21/16. |
| * | * | * | * * | * |
| Netherlands ...... | All Industrial International, Knobbelswaansingel 19, 2496 LN, The Hague, Netherlands; and Breukelensestraat 44, 2574 RC, The Hague, Netherlands. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE], 3/21/16. |
| | Kapil Raj Arora, Breukelensestraat 44, 2574 RC, The Hague, Netherlands; and Knobbelswaansingel 19, 2496 LN, The Hague, Netherlands. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE], 3/21/16. |
| * | * | * | * * | * |
| Singapore ......... | Amanda Sng, 211 Henderson Road, #13–02 Henderson Industrial Park, Singapore 159552. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * * | * |

USAO_SHIH_01575430

Federal Register / Vol. 81, No. 54 / Monday, March 21, 2016 / Rules and Regulations **14963**

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| * | * | * | * | * |
| Switzerland ....... | Beaumont Trading AG, a.k.a., the following one alias:<br>—Beaumont Tradex India.<br>Haldenstrasse 5, Baar (Zug Canton), CH 6342 Switzerland (See alternate addresses in India and the U.A.E.). | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| * | * | * | * | * |
| United Arab Emirates. | * | * | * | * |
| | AdCom Systems, Industrial City of Abu Dhabi—ICAD, Abu Dhabi, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | Advanced Targeting Systems Company, LLC (ATS), P.O. Box 34237, High Specialized Economical Zone M41, 103A13, Al Mussafah, Abu Dhabi, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Beaumont Trading AG, a.k.a., the following one alias:<br>—Beaumont Tradex India.<br>DMCC Business Center, 49 Almas Tower—JLT Dubai, U.A.E. (See alternate addresses in India and Switzerland). | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | Behover General Trading/Information Technologies, a.k.a., the following one alias:<br>—DBA Behover Information Technologies.<br>P.O. Box 25756, Atrium Center Building, Burdubai, Dubai, U.A.E.; and Unit M3&4, Atrium Centre, Bank Street Dubai, U.A.E.; and P.O. Box 19741, Dubai, U.A.E.; and Unit 2009, Prism Tower, Business Bay, Dubai, U.A.E.; and P.O. Box 115904, Dubai, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | Beverly Apigo, P.O. Box 28515, Dubai, U.A.E.; and 202 B Sama Tower Sheikh Tayed Road #3 Dubai, U.A.E. P.O. Box 16048; and BC2–414, RAK Free Trade Zone, P.O. Box 16048, Ras Al Khaimah, U.A.E.; and G1/ RAK Free Trade Zone RAK—U.A.E.; and G–17 Sheikh Tayed Road #3, Ras Al Khaimah Free Trade Zone, Dubai, U.A.E.; and P.O. Box 10559 Ras Al Khaimah, U.A.E.; and P.O. Box 25344 Bur Dubai, Dubai, U.A.E.; and Suite 608 Atrium Center, Bank St., Bur Dubai, Dubai, U.A.E., P.O. Box 16048; and Suite 706 Atrium Center Bank Street, Bur Dubai, Dubai U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | Complete Freight Solutions, 704 The Atrium Ctr, Khalid Bin, Dubai, U.A.E; and 1st Floor, Office No. 114, Yousef Al Otaiba Bldg, Above Emirates Islamic Bank Office, 2nd December Street (Old Al Dyafah Street), P.O. Box No. 29687, Satwa, Dubai, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |

USAO_SHIH_01575431

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| | Cybernet MEA, 202 B Sama Tower Sheikh Tayed Road #3, Dubai, U.A.E., P.O. Box 16048; *and* BC2–414, RAK Free Trade Zone, P.O. Box 16048 Ras Al Khaimah, U.A.E.; *and* G1/RAK Free Trade Zone RAK—U.A.E.; *and* G–17 Sheikh Tayed Road #3, Ras Al Khaimah Free Trade Zone, Dubai, U.A.E.; *and* No. 608 Atrium Center Bank Street, Dubai, U.A.E.; *and* P.O. Box 10559 Ras Al Khaimah, U.A.E.; *and* P.O. Box 116911 Dubai, U.A.E.; *and* P.O. Box 25344 Bur Dubai, Dubai, U.A.E.; *and* Suite 608 Atrium Center Bank Street, Bur Dubai, Dubai, U.A.E.; *and* Suite 706 Atrium Center Bank Street, Bur Dubai, Dubai U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Donna Lynn Ocampo, P.O. Box 28515, Dubai, U.A.E.; *and* 202 B Sama Tower Sheikh Tayed Road #3 Dubai, U.A.E., P.O. Box 16048; *and* BC2–414, RAK Free Trade Zone P.O. Box 16048 Ras Al Khaimah, U.A.E.; *and* G1/RAK Free Trade Zone RAK—U.A.E.; *and* G–17 Sheikh Tayed Road #3 Ras Al Khaimah Free Trade Zone Dubai, U.A.E.; *and* P.O. Box 10559 Ras Al Khaimah, U.A.E.; *and* P.O. Box 25344 Bur Dubai, Dubai, U.A.E.; *and* Suite 608 Atrium Center, Bank St., Bur Dubai, Dubai, U.A.E. P.O. Box 16048; *and* Suite 706 Atrium Center Bank Street Bur Dubai, Dubai, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Frank Genin, a.k.a., the following one alias:<br>—Franck Genin.<br>Villa No. 6 AL WASL RD, 332/45b Jumeira 1, Dubai, Dubai 25344, U.A.E.; *and* Suite 608 Atrium Center, Bank St., Bur Dubai, Dubai, U.A.E., P.O. Box 16048; *and* Suite 706 Atrium Center Bank Street Bur Dubai, Dubai U.A.E.; *and* P.O. Box 10559 Ras Al Khaimah, U.A.E.; *and* P.O. Box 25344 Bur Dubai, Dubai, U.A.E.; *and* 2nd Floor, #202 Sheik Zayed Road Dubai POB 25344 U.A.E.; *and* P.O. Box 28515, Dubai, U.A.E.; *and* 202 B Sama Tower Sheikh Tayed Road #3 Dubai, U.A.E. P.O. Box 16048; *and* BC2–414, RAK Free Trade Zone P.O. Box 16048 Ras Al Khaimah, U.A.E.; *and* G1/RAK Free Trade Zone RAK—U.A.E.; *and* G–17 Sheikh Tayed Road #3 Ras Al Khaimah Free Trade Zone, Dubai, U.A.E. (See alternate address under Hong Kong). | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Gulf Eagle Contracting (GEC), P.O. Box 31814, Al Dhafra Road, New Airport Road, Abu Dhabi, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | Gulf Eagle Industrial and Metal Profiles (GEIMP), P.O. Box 31814, Al Mussafah Industrial City, Abu Dhabi, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |

USAO_SHIH_01575432

Federal Register / Vol. 81, No. 54 / Monday, March 21, 2016 / Rules and Regulations    **14965**

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---------|--------|---------------------|----------------------|---------------------------|
| | Hamideh Ghayour, P.O. Box 155904, Dubai, U.A.E.; and Unit M3&4, Atrium Centre, Bank Street Dubai, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Innovative Technology Systems (ITS), 2nd Floor, #202 Sheik Zayed Road Dubai, POB 25344, U.A.E.; and Suite 608 Atrium Center, Bank Street, Bur Dubai, Dubai, U.A.E; and Suite 706 Atrium Center Bank Street, Bur Dubai, Dubai U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Managed Systems and Services (MSAS)(FZC), No. A3089 Self Sharjah U.A.E.; and SAIF Zone 250 M2 Warehouse P60–109, P.O. Box 122550, Sharjah, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Mehdi Jafariyeh, a.k.a., the following one alias:<br>—Mehdi Jeffery.<br>P.O. Box 28515, Dubai, U.A.E.; and 202 B Sama Tower Sheikh Tayed Road #3 Dubai, U.A.E., P.O. Box 16048; and BC2–414, RAK Free Trade Zone P.O. Box 16048 Ras Al Khaimah, U.A.E.; and G 1/RAK Free Trade Zone RAK—U.A.E.; and G–17 Sheikh Tayed Road #3 Ras Al Khaimah Free Trade Zone, Dubai, U.A.E. and P.O. Box 10559 Ras Al Khaimah, U.A.E.; and P.O. Box 25344 Bur Dubai, Dubai, U.A.E.; and Suite 608 Atrium Center, Bank St., Bur Dubai, Dubai, U.A.E., P.O. Box 16048; and Suite 706 Atrium Center Bank Street Bur Dubai, Dubai U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Patco Group Ltd, P.O. Box 20470, Ajman, U.A.E.; and Ajman Free Zone Bldg., 48-Block-C Meena Road near Ajman Sea Port, Ajman, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Reza Hajigholamali, P.O. Box 20470, Ajman, U.A.E.; and Ajman Free Zone Bldg., 48-Block-C Meena Road near Ajman Sea Port, Ajman, U.A.E (See alternate address under Iran). | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | Rose Ann Apigo, P.O. Box 28515, Dubai, U.A.E.; and 202 B Sama Tower Sheikh Tayed Road #3 Dubai, U.A.E., P.O. Box 16048; and BC2–414, RAK Free Trade Zone P.O. Box 16048 Ras Al Khaimah, U.A.E.; and G1/RAK Free Trade Zone RAK—U.A.E.; and G–17 Sheikh Tayed Road #3 Ras Al Khaimah Free Trade Zone, Dubai, U.A.E.; and P.O. Box 10559 Ras Al Khaimah, U.A.E.; and P.O. Box 25344 Bur Dubai, Dubai, U.A.E.; and Suite 608 Atrium Center, Bank St., Bur Dubai, Dubai, U.A.E., P.O. Box 16048; and Suite 706 Atrium Center Bank Street, Bur Dubai, Dubai U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Skylinks FZC, a.k.a., the following two aliases:<br>—Skylinks; and<br>—Skylinks Satellite Comm. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |

USAO_SHIH_01575433

**14966**    Federal Register / Vol. 81, No. 54 / Monday, March 21, 2016 / Rules and Regulations

| Country | Entity | License requirement | License review policy | **Federal Register** citation |
|---|---|---|---|---|
| | P.O. Box 28515, Dubai, U.A.E.; *and* 202 B Sama Tower Sheikh Tayed Road #3 Dubai, U.A.E., P.O. Box 16048; *and* BC2–414, RAK Free Trade Zone P.O. Box 16048 Ras Al Khaimah, U.A.E.; *and* G1/RAK Free Trade Zone RAK—U.A.E.; *and* G–17 Sheikh Tayed Road #3 Ras Al Khaimah Free Trade Zone, Dubai, U.A.E.; *and* P.O. Box 10559 Ras Al Khaimah, U.A.E.; *and* P.O. Box 25344 Bur Dubai, Dubai, U.A.E.; *and* Suite 608 Atrium Center, Bank St., Bur Dubai, Dubai, U.A.E., P.O. Box 16048; *and* Suite 706 Atrium Center Bank Street, Bur Dubai, Dubai U.A.E. 3 (See alternate address under Hong Kong). | | | |
| | * | * | * | * |
| | T.V. Joe Ouseppachan, Office 228, Al Aatar Shopping Mall, P.O. Box 115824, Karama, Dubai, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| | Teofila Logistics, Office 228, Al Aatar Shopping Mall, P.O. Box 115824, Karama, Dubai, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | TGO General Trading LLC, a.k.a., the following one alias:<br>—Three Green Orbit.<br>19th Floor Festival Tower, Festival City, P.O. Box 36605, Dubai, U.A.E. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 81 FR [INSERT FR PAGE NUMBER], 3/21/16. |
| | * | * | * | * |
| * | * | * | * | * |

Dated: March 17, 2016.

**Kevin J. Wolf,**

*Assistant Secretary for Export Administration.*

[FR Doc. 2016–06406 Filed 3–18–16; 8:45 am]

BILLING CODE 3510–33–P

---

**COMMODITY FUTURES TRADING COMMISSION**

**17 CFR Part 32**

**RIN 3038–AE26**

**Trade Options**

**AGENCY:** Commodity Futures Trading Commission.

**ACTION:** Final rule.

**SUMMARY:** The Commodity Futures Trading Commission (the "Commission" or the "CFTC") is issuing a final rule to amend the limited trade options exemption in the Commission's regulations, as described herein, with respect to the following subject areas: Reporting requirements for trade option counterparties that are not swap dealers or major swap participants; recordkeeping requirements for trade option counterparties that are not swap dealers or major swap participants; and certain non-substantive amendments.

**DATES:** *Effective date:* The effective date for this final rule is March 21, 2016.

**FOR FURTHER INFORMATION CONTACT:** David N. Pepper, Special Counsel, Division of Market Oversight, at (202) 418–5565 or *dpepper@cftc.gov;* or Mark Fajfar, Assistant General Counsel, Office of the General Counsel, at (202) 418–6636 or *mfajfar@cftc.gov,* Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street NW., Washington, DC 20581.

**SUPPLEMENTARY INFORMATION:**

**I. Introduction**

*A. Background*

In April 2012, pursuant to section 4c(b) of the Commodity Exchange Act (the "CEA" or the "Act"),[1] the

Commission issued a final rule to repeal and replace part 32 of its regulations concerning commodity options.[2] The Commission undertook this effort to address section 721 of the Dodd-Frank Act Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act" or "Dodd-Frank"),[3] which, among other things, amended the CEA to define the term "swap" to include commodity options.[4] Notably, § 32.2(a) provides the

---

[1] 7 U.S.C. 6c(b) (providing that no person shall offer to enter into, enter into or confirm the execution of, any transaction involving any commodity regulated under this chapter which is of the character of, or is commonly known to the trade as an "option" contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing any such transaction under such terms and conditions as the Commission shall prescribe).

[2] *See* Commodity Options, 77 FR 25320 (Apr. 27, 2012) ("Commodity Options Release"). The Commission also issued certain conforming amendments to parts 3 and 33 of its regulations. *See id.* The Commission's regulations are set forth in chapter I of title 17 of the Code of Federal Regulations.

[3] Public Law 111–203, 124 Stat. 1376 (2010).

[4] *See* 7 U.S.C. 1a(47)(A)(i) (defining "swap" to include an option of any kind that is for the purchase or sale, or based on the value, of 1 or more commodities"); 7 U.S.C. 1a(47)(B)(i) (excluding options on futures from the definition of "swap"); 7 U.S.C. 1a(36) (defining an "option" as an agreement, contract, or transaction that is of the character of, or is commonly known to the trade as, an "option"). The Commission defines "commodity option" or "commodity option transaction" as any transaction or agreement in interstate commerce which is or is held out to be of the character of, or is commonly known to the trade as, an "option," "privilege," "indemnity," "bid," "offer," "call," "put," "advance guaranty" or "decline guaranty"

USAO_SHIH_01575434



**Federal Register** / Vol. 83, No. 148 / Wednesday, August 1, 2018 / Rules and Regulations **37423**

current, is non-controversial and unlikely to result in adverse or negative comments. It, therefore: (1) Is not a "significant regulatory action" under Executive Order 12866; (2) is not a "significant rule" under DOT Regulatory Policies and Procedures (44 FR 11034; February 26, 1979); and (3) does not warrant preparation of a regulatory evaluation as the anticipated impact is so minimal. Since this is a routine matter that only affects air traffic procedures and air navigation, it is certified that this rule, when promulgated, does not have a significant economic impact on a substantial number of small entities under the criteria of the Regulatory Flexibility Act.

**Environmental Review**

The FAA has determined that this action qualifies for categorical exclusion under the National Environmental Policy Act in accordance with FAA Order 1050.1F, "Environmental Impacts: Policies and Procedures," paragraph 5–6.5.a. This airspace action is not expected to cause any potentially significant environmental impacts, and no extraordinary circumstances exist that warrant preparation of an environmental assessment.

**Lists of Subjects in 14 CFR Part 71**

Airspace, Incorporation by reference, Navigation (air).

**Adoption of the Amendment**

In consideration of the foregoing, the Federal Aviation Administration amends 14 CFR part 71 as follows:

**PART 71—DESIGNATION OF CLASS A, B, C, D, AND E AIRSPACE AREAS; AIR TRAFFIC SERVICE ROUTES; AND REPORTING POINTS**

■ 1. The authority citation for part 71 continues to read as follows:

**Authority:** 49 U.S.C. 106(f), 106(g); 40103, 40113, 40120; E.O. 10854, 24 FR 9565, 3 CFR, 1959–1963 Comp., p. 389.

**§71.1 [Amended]**

■ 2. The incorporation by reference in 14 CFR 71.1 of FAA Order 7400.11B, Airspace Designations and Reporting Points, dated August 3, 2017, and effective September 15, 2017, is amended as follows:

\*    \*    \*    \*    \*

*Paragraph 6005    Class E Airspace Areas Extending Upward From 700 Feet or More Above the Surface of the Earth.*

**ACE KS E5    Lyons, KS [Amended]**

Lyons-Rice Municipal Airport, KS
(Lat. 38°20′31″ N, long. 98°13′38″ W)

That airspace extending upward from 700 feet above the surface within a 6.5-mile radius of Lyons-Rice County Municipal Airport.

Issued in Fort Worth, Texas, on July 24, 2018.

**Walter Tweedy,**
*Acting Manager, Operations Support Group, ATO Central Service Center.*
[FR Doc. 2018–16363 Filed 7–31–18; 8:45 am]
**BILLING CODE 4910–13–P**

---

**DEPARTMENT OF COMMERCE**

**Bureau of Industry and Security**

**15 CFR Part 744**

**[Docket No. 170714666–7666–01]**

**RIN 0694–AH42**

**Addition of Certain Entities; and Modification of Entry on the Entity List**

**AGENCY:** Bureau of Industry and Security, Commerce.

**ACTION:** Final rule.

**SUMMARY:** This rule amends the Export Administration Regulations (EAR) by adding forty-four entities (eight entities and thirty-six subordinate institutions) to the Entity List. The entities that are being added to the Entity List have been determined by the U.S. Government to be acting contrary to the national security or foreign policy interests of the United States. These entities will be listed on the Entity List under the destination of China. This rule also modifies one entry under China to provide additional addresses and names for the entity at issue.

**DATES:** This rule is effective August 1, 2018.

**FOR FURTHER INFORMATION CONTACT:** Chair, End-User Review Committee, Office of the Assistant Secretary, Export Administration, Bureau of Industry and Security, Department of Commerce, Phone: (202) 482–5991, Email: *ERC@bis.doc.gov.*

**SUPPLEMENTARY INFORMATION:**

**Background**

The Entity List (Supplement No. 4 to part 744) identifies entities reasonably believed to be involved, or to pose a significant risk of being or becoming involved, in activities contrary to the national security or foreign policy interests of the United States. The EAR imposes additional license requirements on, and limits the availability of most license exceptions for, exports, reexports, and transfers (in-country) to listed entities. The "license review policy" for each listed entity is identified in the License Review Policy

column on the Entity List and the impact on the availability of license exceptions is described in the **Federal Register** notice adding entities to the Entity List. BIS places entities on the Entity List pursuant to sections of part 744 (Control Policy: End-User and End-Use Based) and part 746 (Embargoes and Other Special Controls) of the EAR.

The End-User Review Committee (ERC), composed of representatives of the Departments of Commerce (Chair), State, Defense, Energy and, where appropriate, the Treasury, makes all decisions regarding additions to, removals from, or other modifications to the Entity List. The ERC makes all decisions to add an entry to the Entity List by majority vote and all decisions to remove or modify an entry by unanimous vote.

**ERC Entity List Decisions**

*Additions to the Entity List*

This rule implements the decision of the ERC to add forty-four entities (eight entities and thirty-six of their subordinate institutions) to the Entity List. These entities are being added on the basis of § 744.11 (License requirements that apply to entities acting contrary to the national security or foreign policy interests of the United States) of the EAR. All of the entities added as part of this rule are located in China.

The ERC reviewed § 744.11(b) (Criteria for revising the Entity List) in making the determination to add these entities to the Entity List. Under that paragraph, entities for which there is reasonable cause to believe, based on specific and articulable facts, that the entity has been involved, is involved, or poses a significant risk of being or becoming involved in, activities that are contrary to the national security or foreign policy interests of the United States, and those acting on behalf of such entity, may be added to the Entity List. Paragraphs (b)(1) through (5) of § 744.11 provide an illustrative list of activities that could be contrary to the national security or foreign policy interests of the United States.

The ERC determined that seventeen entities, China Electronic Technology Group Corporation (CETC) 13, and twelve of its subordinate institutions; CETC–55, and two of its subordinate institutions; and Hebei Far East Communication System Engineering, all located in China, be added to the Entity List for actions contrary to the national security or foreign policy interests of the United States. These seventeen entities are being added to the Entity List on the basis of their involvement in the

procurement of U.S.-origin items for activities contrary to the national security and foreign policy interests of the United States. Specifically, the ERC determined that there is reasonable cause to believe, based on specific and articulable facts, that all of these entities are involved in the illicit procurement of commodities and technologies for unauthorized military end-use in China.

The ERC determined that twenty-seven entities, China Aerospace Science and Industry Corporation Second Academy, and thirteen of its subordinate institutions; China Electronics Technology Group Corporation 14th Research Institute, and two of its subordinate institutions; China Electronics Technology Group Corporation 38th Research Institute, and seven of its subordinate institutions; China Tech Hi Industry Import and Export Corporation; and China Volant Industry, all located in China, be added to the Entity List for actions contrary to the national security or foreign policy interests of the United States. The ERC determined that for these twenty-seven entities there is reasonable cause to believe, based on specific and articulable facts, that there is an unacceptable risk of use in (or diversion of U.S.-origin items to) military end-use activities in China.

Pursuant to § 744.11(b) of the EAR, the ERC determined that the conduct of all forty-four of these entities raises sufficient concern that prior review of exports, reexports or transfers (in-country) of all items subject to the EAR involving these entities, and the possible imposition of license conditions or license denials on shipments to the entities, will enhance BIS's ability to prevent violations of the EAR.

For all forty-four entities added to the Entity List in this final rule, BIS imposes a license requirement for all items subject to the EAR, and a license review policy of presumption of denial. The license requirements apply to any transaction in which items are to be exported, reexported or transferred (in-country) to any of the entities or in which such entities act as purchaser, intermediate consignee, ultimate consignee, or end-user. In addition, no license exceptions are available for exports, reexports or transfers (in-country) to the entities being added to the Entity List in this rule. The acronym "a.k.a." (also known as) is used in entries on the Entity List to identify aliases and help exporters, reexporters and transferors to better identify entities on the Entity List.

This rule adds the following entities to the Entity List:

## China

(1) *China Aerospace Science and Industry Corporation Second Academy,* a.k.a., the following eight aliases, and thirteen subordinate institutions:
—China Changfeng Mechanics and Electronics Technology Academy;
—China Chang Feng Mechano-Electronic Engineering Academy;
—CASIC Second Academy;
—China Chang Feng Mechano-Electronic Engineering Company;
—CASIC Academy of Defense Technology;
—Second Research Academy of CASIC;
—Changfeng Electromechanical Technology Design Institute; *and*
—China Chang Feng Mechanics and Electronics Technology Academy.

*Subordinate Institution*

*Second Design Department,* a.k.a., the following two aliases:
—Beijing Institute of Electronics Systems Engineering; *and*
—Second Planning Department.

*Subordinate Institution*

*23rd Research Institute,* a.k.a., the following two aliases:
—Beijing Institute of Radio Measurement; *and*
—BIRM.

*Subordinate Institution*

*25th Research Institute,* a.k.a., the following one alias:
—Beijing Institute of Remote Sensing Equipment.

*Subordinate Institution*

*201 Research Institute,* a.k.a., the following one alias:
—Aerospace Science and Technology Defense Technology Research and Experimental Center.

*Subordinate Institution*

*203rd Research Institute,* a.k.a., the following two aliases:
—Beijing Radio Measurement and Testing Institute; *and*
—Beijing Institute of Radio Metrology and Measurement.

*Subordinate Institution*

*204th Research Institute,* a.k.a., the following two aliases:
—Beijing Institute of Computer Applications and Simulation Technology; *and*
—706th Research Institute.

*Subordinate Institution*

*206th Research Institute,* a.k.a., the following two aliases:
—Beijing Institute of Mechanical Equipment; *and*
—Beijing Institute of Machinery and Equipment.

*Subordinate Institution*

*207th Research Institute,* a.k.a., the following three aliases:
—Beijing Guangda Optoelectronics;
—Beijing Institute of Environmental Features; *and*
—Beijing Institute of Environmental Characteristics.

*Subordinate Institution*

*208th Research Institute,* a.k.a., the following one alias:
—Beijing Electronic Document Service Center.

*Subordinate Institution*

*210th Research Institute,* a.k.a., the following one alias:
—Xian Changfeng Electromechanical Institute.

*Subordinate Institution*

*283 Factory,* a.k.a., the following one alias:
—Beijing Xinfeng Machinery Factory.

*Subordinate Institution*

*284 Factory,* a.k.a., the following two aliases:
—Beijing Changfeng Machinery Factory; *and*
—Beijing Changfeng Xinlian Project Management.

*Subordinate Institution*

*699 Factory,* a.k.a., the following one alias:
—Beijing Xinli Machinery Factory.

The following addresses apply to the entity and to the thirteen subordinate institutions:
50 Yongding Road, Haidian District, Beijing, China; *and* 51 Yongding Road, Haidian District, Beijing, China; *and* 52 Yongding Road, Haidian District, Beijing, China; *and* 58 Yongding Road, Haidian District, Beijing, China; *and* 90 Dianzi Road, Section One, Xian, China.

(2) *China Electronics Technology Group Corporation 13th Research Institute (CETC 13),* a.k.a., the following six aliases, and twelve subordinate institutions:
—Hebei Semiconductor Research Institute;
—HSRI;
—Hebei Institute of Semiconductors;
—Heibei Semiconductor Institute;
—Hebei Semiconductor; *and*
—CETC Research Institute 13.

113 Hezuo Road, Shijiazhuang, Hebei, China; *and* 21 Changsheng Street, Shijiazhuang, Hebei, China; *and* 21 Changsheng Road, Shijiazhuang, Hebei, China;

Federal Register / Vol. 83, No. 148 / Wednesday, August 1, 2018 / Rules and Regulations    37425

*Subordinate Institution*

Bowei Integrated Circuits, a.k.a., the following three aliases:
—Hebei Bowei Integrated;
—Hebei Bowei Technology; and
—Shijuang Bowei.
113 Hezuo Road, Shijiazhuang, Hebei, China; and 21 Changsheng Street, Shijiazhuang, Hebei, China; and 21 Changsheng Road, Shijiazhuang, Hebei, China; and Shijiazhuang New and Hi-Tech Dev Zone, Hebei, China.

*Subordinate Institution*

Envoltek, a.k.a., the following one alias:
—Hebei Envoltek Electronics.
21 Changsheng Street, Shijiazhuang, Hebei, China; and 21 Changsheng Road, Shijiazhuang, Hebei, China.

*Subordinate Institution*

Hebei Sinopack Electronics, a.k.a., the following one alias:
—Hebei Sinapack Elec.
113 Hezuo Road, Shijiazhuang, Hebei, China; and 21 Changsheng Street, Shijiazhuang, Hebei, China; and 21 Changsheng Road, Shijiazhuang, Hebei, China.

*Subordinate Institution*

Hebei Brightway International,
21 Changsheng Street, Shijiazhuang, Hebei, China; and 21 Changsheng Road, Shijiazhuang, Hebei, China.

*Subordinate Institution*

Hebei Medicines Health,
113 Hezuo Road, Shijiazhuang, Hebei, China.

*Subordinate Institution*

Hebei Poshing Electronics, a.k.a., the following three aliases:
—Hebei Poshin Electronics;
—Hebei Poshing Elec.; and
—Hubei PoshingElectronics.
113 Hezuo Road, Shijiazhuang, Hebei, China; and 21 Changsheng Street, Shijiazhuang, Hebei, China; and 21 Changsheng Road, Shijiazhuang, Hebei, China.

*Subordinate Institution*

Hebei Puxing Electronic,
113 Hezuo Road, Shijiazhuang, Hebei, China; and 21 Changsheng Street, Shijiazhuang, Hebei, China; and 21 Changsheng Road, Shijiazhuang, Hebei, China.

*Subordinate Institution*

Micro Electronic Technology, a.k.a., the following three aliases:
—Micro Electronic Technology Development Application Corp;

—METDA;
—METDAC.
113 Hezuo Road, Shijiazhuang, Hebei, China.

*Subordinate Institution*

Shijiazhuang Development Zone Maiteda Microelectronics Technology Development and Application Corporation,
21 Changsheng Street, Shijiazhuang, Hebei, China; and 21 Changsheng Road, Shijiazhuang, Hebei, China.

*Subordinate Institution*

MT Microsystems,
113 Hezuo Road, Shijiazhuang, Hebei, China.

*Subordinate Institution*

North China Integrated Circuit Corporation,
21 Changsheng Street, Shijiazhuang, Hebei, China; and 21 Changsheng Road, Shijiazhuang, Hebei, China; and 113 Hezuo Road, Shijiazhuang, Hebei, China.

*Subordinate Institution*

Tonghui Electronics, a.k.a., the following one alias:
—Tonghui Electronics Technology.
21 Changsheng Street, Shijiazhuang, Hebei, China; and 21 Changsheng Road, Shijiazhuang, Hebei, China;
(3) China Electronics Technology Group Corporation 14th Research Institute (CETC 14), a.k.a., the following seven aliases, and two subordinate institutions:
—Nanjing Research Institute of Electronics Technology;
—NRIET;
—Nanjing Electronics Technology Institute;
—Ministry of Information Industry Electronics;
—No 14 Research Institute;
—Research Institute 14; and
—CETC Research Institute 14.

*Subordinate Institution*

Nanjing SunSea Industry Corporation.

*Subordinate Institution*

Nanjing Institute of Radio Technology,
The following addresses apply to the entity and to the two subordinate institutions:
No 1 Dinghuaimen, Nanjing, China; and No 8 Guorui Road, Yuhua District, Nanjing, China; and No 4 Guping Gang, Nanjing, China; and 52 Huju Road, North, Nanjing, China;
(4) China Electronics Technology Group Corporation 38th Research Institute (CETC 38), a.k.a., the following

seven aliases, and seven subordinate institutions:
—Hefei Institute of Electronic Engineering;
—Southwest China Research Institute of Radar Technology;
—East China Research Institute of Electronic Engineering;
—ECRIEE;
—No 38 Research Institute;
—Research Institute 38; and
—CETC Research Institute 38.

*Subordinate Institution*

Anhui Sun-Create Electronics.

*Subordinate Institution*

Anhui Bowei Chang An Electronics.

*Subordinate Institution*

ECU Electronic Industrial.

*Subordinate Institution*

Hefei ECU–TAMURA Electric.

*Subordinate Institution*

Anhui Bowei Guangcheng Information Technology.

*Subordinate Institution*

Anhui Bowei Ruida Electronics Technology.

*Subordinate Institution*

Brainware Terahertz.
The following addresses apply to the entity and to the seven subordinate institutions:
199 Xiangzhang Ave, Hefei, Anhui, China; and 19 He Huan Lu, Hefei, China; and 19 Hehuan Road, Hefei, China; and 418 Guilin Road, Shanghai, China; and 260 Ji Xi Road, Hefei, China; and 88 Pihe Road, Hefei, China; and Forward Road, Economics Development Zone of Luan, Luan, Anhui, China;
(5) China Electronics Technology Group Corporation 55th Research Institute (CETC 55), a.k.a., the following four aliases, and two subordinate institutions:
—Nanjing Electronic Devices Institute;
—CETC Research Institute 55;
—NEDI; and
—NEDTEK.
524 Zhongzhan East Road, Nanjing, Jiangsu, China; and 524 East Zhongshan Road, Nanjing, Jiangsu, China; and 523 East Zhongshang Road, Nanjing, Jiangsu, China; and 166 Middle Zhenghang Road, Nanjing, China; and 166 Zhengfang Mid Road, Nanjing, China; and 166 Zhengfand Mid Road, Nanjing, China; and Huaxia Sci and Tech Park Hi-Tech Development, Nanjing, China; and RM 2105 Huaxia Bldg, No 81 Zhongshan Rd, Nanjing, China; and 8 Xingwen Road, Economic and Tech, Nanjing, China.

USAO_SHIH_01575412

*Subordinate Institution*

*Nanjing Guosheng Electronics,*
8 Xingwen Road, Economic and Tech, Nanjing, China; *and* 166 Middle Zhenghang Road, Nanjing, China; *and* 166 Zhengfang Mid Road, Nanjing, China; *and* 166 Zhengfang Mid Road, Nanjing, China; *and* 168 Zhengfand Mid Road, Nanjing, China; *and* 165 Zhangfang Mid-Road, Nanjing, China; *and* 414 South Zhong Shan Road, Nanjing, Jiangsu, China.

*Subordinate Institution*

*Nanjing Guobo Electronic,*
166 Zhengfang Mid Road, Nanjing, China;

(6) *China Tech Hi Industry Import and Export Corporation,* a.k.a., the following two aliases:

—CTHC; *and*

—Tianhang Industry Import and Export Company.

30 Haidian Road, Beijing, China; *and* No A 16 Zao Jun Miao, Haidian, Beijing, China;

(7) *China Volant Industry,* a.k.a., the following two aliases:

—Volinco; *and*

—China Huateng Industry.

30 Haidian Road, Beijing, China; *and* Room 703, 7th Floor, Building 1, No 11, Changchunqiao Road, Haidian District, Beijing, China; *and*

(8) *Hebei Far East Communication System Engineering,* a.k.a., the following two aliases:

—Hebei Far East Comm.; *and*

—HBFEC.

21 Changsheng Street, Shijiazhuang, Hebei, China; *and* 21 Changsheng Road, Shijiazhuang, Hebei, China; *and* 589 West Zhongshan Road, Shijiazhuang, Hebei, China.

*Modifications to the Entity List*

This final rule implements a decision of the ERC to modify one existing entry on the Entity List. The ERC made a determination to revise one entry under the destination of China by adding three additional aliases and five additional addresses to the entry for Chengdu GaStone Technology Co., Ltd. (CGTC), for a total of four aliases and nine addresses.

This final rule revises one entry on the Entity List to make the modifications described above:

(1) *Chengdu GaStone Technology Co., Ltd. (CGTC),* a.k.a., the following four aliases:

—Chengdu Jiashi Technology Co.;

—Chengdu HiWafer Semiconductor; *and*

—Chengdu Haiwei Technology; *and*

—Chengdu Zenith.

31F, A Tower, Yanlord Square, No. 1, Section 2, Renmind South Road,

Chengdu China; *and* Internet of Things Industrial Park Economic Development District Xinan Hangkonggang (Southwest Airport), Shuangliu County, Chengdu; *and* 29th Floor, Yanlord Landmark, No. 1 Renmin South Road Section 2, Chengdu; *and* 29/F Yanlord Landmark Tower A, Chengdu, China; *and* Union Road, No 88 Internet of Things Industrial, Chengdu, China; *and* No 88 Wulian Road, Southwest Airp Development Zone, Chengdu, China; *and* Industrial Park of Internet of Thing SW Airport Eco Dev Zone, Chengdu, China; *and* Internet Things of Industrial Pa Southwest Airport Economic, Chengdu, China; *and* The Industrial Park of Internet of Things, Southwest Airport Economic Development Zone, Chengdu, China.

**Export Administration Act of 1979**

Although the Export Administration Act of 1979 expired on August 20, 2001, the President, through Executive Order 13222 of August 17, 2001, 3 CFR, 2001 Comp., p. 783 (2002), as amended by Executive Order 13637 of March 8, 2013, 78 FR 16129 (March 13, 2013) and as extended by the Notice of August 15, 2017, 82 FR 39005 (August 16, 2017), has continued the Export Administration Regulations in effect under the International Emergency Economic Powers Act. BIS continues to carry out the provisions of the Export Administration Act of 1979, as appropriate and to the extent permitted by law, pursuant to Executive Order 13222, as amended by Executive Order 13637.

**Rulemaking Requirements**

1. Executive Orders 13563 and 12866 direct agencies to assess all costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health and safety effects, distributive impacts, and equity). Executive Order 13563 emphasizes the importance of quantifying both costs and benefits, of reducing costs, of harmonizing rules, and of promoting flexibility. This rule has been determined to be not significant for purposes of Executive Order 12866. This rule is not an Executive Order 13771 regulatory action because this rule is not significant under Executive Order 12866.

2. Notwithstanding any other provision of law, no person is required to respond to nor be subject to a penalty for failure to comply with a collection of information, subject to the requirements of the Paperwork

Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*) (PRA), unless that collection of information displays a currently valid Office of Management and Budget (OMB) Control Number. This regulation involves collections previously approved by OMB under control number 0694–0088, Simplified Network Application Processing System, which includes, among other things, license applications, and carries a burden estimate of 43.8 minutes for a manual or electronic submission.

Total burden hours associated with the PRA and OMB control number 0694–0088 are not expected to increase as a result of this rule. You may send comments regarding the collection of information associated with this rule, including suggestions for reducing the burden, to Jasmeet K. Seehra, Office of Management and Budget (OMB), by email to *Jasmeet_K._Seehra@ omb.eop.gov,* or by fax to (202) 395–7285.

3. This rule does not contain policies with Federalism implications as that term is defined in Executive Order 13132.

4. For the entities added to the Entity List in this rule, the provisions of the Administrative Procedure Act (5 U.S.C. 553) requiring notice of proposed rulemaking, the opportunity for public participation and a 30-day delay in effective date are inapplicable because this regulation involves a military or foreign affairs function of the United States (5 U.S.C. 553(a)(1)). BIS's implementation of this rule is necessary to protect U.S. national security and foreign policy interests by preventing items subject to the EAR from being exported, reexported, or transferred (in-country) to the entities being added to the Entity List. If this rule were delayed to allow for notice and comment and a delay in effective date, the entities being added to the Entity List by this action would continue to be able to receive items subject to the EAR without a BIS license and to conduct activities contrary to the national security or foreign policy interests of the United States. In addition, publishing a proposed rule would give these entities notice of the U.S. Government's intention to place them on the Entity List, which could provide them with an incentive to accelerate their receipt of items subject to the EAR to conduct activities that are contrary to the national security or foreign policy interests of the United States, including taking steps to set up additional aliases, change addresses, and engaging in other measures to try to limit the impact of the listing on the Entity List once a final rule was published. Further, no other

USAO_SHIH_01575413

law requires that a notice of proposed rulemaking and an opportunity for public comment be provided for this rule.

5. The Department finds that there is good cause under 5 U.S.C. 553(b)(3)(B) to waive the provisions of the Administrative Procedure Act (APA) requiring prior notice and the opportunity for public comment for the one modification to an Entity list entry included in this rule because doing so would be contrary to the public interest. In addition, the one change is limited to providing additional addresses and aliases, which will assist the public in more easily identifying the listed entity.

6. Because a notice of proposed rulemaking and an opportunity for public comment are not required to be given for this rule by 5 U.S.C. 553, or by any other law, the analytical requirements of the Regulatory Flexibility Act, 5 U.S.C. 601 *et seq.*, are

not applicable. Accordingly, no regulatory flexibility analysis is required and none has been prepared.

**List of Subjects in 15 CFR Part 744**

Exports, Reporting and recordkeeping requirements, Terrorism.

Accordingly, part 744 of the Export Administration Regulations (15 CFR parts 730–774) is amended as follows:

**PART 744—[AMENDED]**

■ 1. The authority citation for 15 CFR part 744 continues to read as follows:

**Authority:** 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22 U.S.C. 3201 *et seq.*; 42 U.S.C. 2139a; 22 U.S.C. 7201 *et seq.*; 22 U.S.C. 7210; E.O. 12058, 43 FR 20947, 3 CFR, 1978 Comp., p. 179; E.O. 12851, 58 FR 33181, 3 CFR, 1993 Comp., p. 608; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 12947, 60 FR 5079, 3 CFR, 1995 Comp., p. 356; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13099, 63 FR 45167, 3 CFR, 1998 Comp., p.

208; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13224, 66 FR 49079, 3 CFR, 2001 Comp., p. 786; Notice of August 15, 2017, 82 FR 39005 (August 16, 2017); Notice of September 18, 2017, 82 FR 43825 (September 19, 2017); Notice of November 6, 2017, 82 FR 51971 (November 8, 2017); Notice of January 17, 2018, 83 FR 2731 (January 18, 2018).

■ 2. Supplement No. 4 to part 744 is amended under China, People's Republic of:

■ a. By revising one entity "Chengdu GaStone Technology Co., Ltd. (CGTC)"; and

■ b. By adding, in alphabetical order, eight entities.

The additions and revisions read as follows:

**Supplement No. 4 to Part 744—Entity List**

\*    \*    \*    \*    \*

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| \* | \* | \* | \* | \* |
| CHINA, PEOPLE'S REPUBLIC OF. | \* | \* | \* | \* |
|  | Chengdu GaStone Technology Co., Ltd. (CGTC), a.k.a., the following four aliases: | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial ...... | 79 FR 44683, 8/1/14. 81 FR 14958, 3/21/16. 83 FR [INSERT FR PAGE NUMBER], 8/1/2018. |
|  | —Chengdu Jiashi Technology Co.; |  |  |  |
|  | —Chengdu HiWafer Semiconductor; |  |  |  |
|  | —Chengdu Haiwei Technology; *and* |  |  |  |
|  | —Chengdu Zenith. |  |  |  |
|  | 31F, A Tower, Yanlord Square, No. 1, Section 2, Renmind South Road, Chengdu China; *and* Internet of Things Industrial Park Economic Development District Xinan Hangkonggang (Southwest Airport), Shuangliu County, Chengdu; *and* 29th Floor, Yanlord Landmark, No. 1 Renmin South Road Section 2, Chengdu; *and* 29/F Yanlord Landmark Tower A, Chengdu, China; *and* Union Road, No 88 Internet of Things Industrial, Chengdu, China; *and* No 88 Wulian Road, Southwest Airp Development Zone, Chengdu, China; *and* Industrial Park of Internet of Thing SW Airport Eco Dev Zone, Chengdu, China; *and* Internet Things of Industrial Pa Southwest Airport Economic, Chengdu, China; *and* The Industrial Park of Internet of Things, Southwest Airport Economic Development Zone, Chengdu, China |  |  |  |
|  | \* | \* | \* | \* |
|  | China Aerospace Science and Industry Corporation Second Academy, a.k.a., the following eight aliases, and thirteen subordinate institutions: | For all items subject to the EAR. (See §744.11 of the EAR) | Presumption of denial ...... | 83 FR [INSERT FR PAGE NUMBER], 8/1/2018. |
|  | —China Changfeng Mechanics and Electronics Technology Academy; |  |  |  |
|  | —China Chang Feng Mechano-Electronic Engineering Academy; |  |  |  |
|  | —CASIC Second Academy; |  |  |  |

USAO_SHIH_01575414

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| | —China Chang Feng Mechano-Electronic Engineering Company;<br>—CASIC Academy of Defense Technology;<br>—Second Research Academy of CASIC;<br>—Changfeng Electromechanical Technology Design Institute; *and*<br>—China Chang Feng Mechanics and Electronics Technology Academy.<br>*Subordinate institution*<br>Second Design Department, a.k.a., the following two aliases:<br>—Beijing Institute of Electronics Systems Engineering; *and*<br>—Second Planning Department.<br>*Subordinate institution*<br>23rd Research Institute, a.k.a., the following two aliases:<br>—Beijing Institute of Radio Measurement; *and*<br>—BIRM.<br>*Subordinate institution*<br>25th Research Institute, a.k.a., the following one alias:<br>—Beijing Institute of Remote Sensing Equipment.<br>*Subordinate institution*<br>201 Research Institute, a.k.a., the following one alias:<br>—Aerospace Science and Technology Defense Technology Research and Experimental Center.<br>*Subordinate institution*<br>203rd Research Institute, a.k.a., the following two aliases:<br>—Beijing Radio Measurement and Testing Institute; *and*<br>—Beijing Institute of Radio Metrology and Measurement.<br>*Subordinate institution*<br>204th Research Institute, a.k.a., the following two aliases:<br>—Beijing Institute of Computer Applications and Simulation Technology; *and*<br>—706th Research Institute.<br>*Subordinate institution*<br>206th Research Institute, a.k.a., the following two aliases:<br>—Beijing Institute of Mechanical Equipment; *and*<br>—Beijing Institute of Machinery and Equipment.<br>*Subordinate institution*<br>207th Research Institute, a.k.a., the following three aliases:<br>—Beijing Guangda Optoelectronics;<br>—Beijing Institute of Environmental Features; *and*<br>—Beijing Institute of Environmental Characteristics.<br>*Subordinate institution*<br>208th Research Institute, a.k.a., the following one alias:<br>—Beijing Electronic Document Service Center.<br>*Subordinate institution*<br>210th Research Institute, a.k.a., the following one alias:<br>—Xian Changfeng Electromechanical Institute. | | | |

USAO_SHIH_01575415

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| | *Subordinate institution* 283 Factory, a.k.a., the following one alias: —Beijing Xinfeng Machinery Factory. *Subordinate institution* 284 Factory, a.k.a., the following two aliases: —Beijing Changfeng Machinery Factory; *and* —Beijing Changfeng Xinlian Project Management. *Subordinate institution* 699 Factory, a.k.a., the following one alias: —Beijing Xinli Machinery Factory. The following addresses apply to the entity and to the thirteen subordinate institutions: 50 Yongding Road, Haidian District, Beijing, China; *and* 51 Yongding Road, Haidian District, Beijing, China; *and* 52 Yongding Road, Haidian District, Beijing, China; *and* 58 Yongding Road, Haidian District, Beijing, China; *and* 90 Dianzi Road, Section One, Xian, China. | | | |
| | * * * * * | | | |
| | China Electronics Technology Group Corporation 13th Research Institute (CETC 13), a.k.a., the following six aliases, and twelve subordinate institutions: —Hebei Semiconductor Research Institute; —HSRI; —Hebei Institute of Semiconductors; —Hebei Semiconductor Institute; —Hebei Semiconductor; *and* —CETC Research Institute 13. 113 Hezuo Road, Shijiazhuang, Hebei, China; *and* 21 Changsheng Street, Shijiazhuang, Hebei, China; *and* 21 Changsheng Road, Shijiazhuang, Hebei, China. *Subordinate institution* Bowei Integrated Circuits, a.k.a., the following three aliases: —Hebei Bowei Integrated; —Hebei Bowei Technology; *and* —Shijuang Bowei. 113 Hezuo Road, Shijiazhuang, Hebei, China; *and* 21 Changsheng Street, Shijiazhuang, Hebei, China; *and* 21 Changsheng Road, Shijiazhuang, Hebei, China; *and* Shijiazhuang New and Hi-Tech Dev Zone, Hebei, China. *Subordinate institution* Envoltek, a.k.a., the following one alias: —Hebei Envoltek Electronics. 21 Changsheng Street, Shijiazhuang, Hebei, China; *and* 21 Changsheng Road, Shijiazhuang, Hebei, China. *Subordinate institution* Hebei Sinopack Electronics, a.k.a., the following one alias: —Hebei Sinopack Elec. 113 Hezuo Road, Shijiazhuang, Hebei, China; *and* 21 Changsheng Street, Shijiazhuang, Hebei, China; *and* 21 Changsheng Road, Shijiazhuang, Hebei, China. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 83 FR [INSERT FR PAGE NUMBER], 8/1/2018. |

USAO_SHIH_01575416

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| | *Subordinate institution* Hebei Brightway International, 21 Changsheng Street, Shijiazhuang, Hebei, China; *and* 21 Changsheng Road, Shijiazhuang, Hebei, China. | | | |
| | *Subordinate institution* Hebei Medicines Health, 113 Hezuo Road, Shijiazhuang, Hebei, China. | | | |
| | *Subordinate institution* Hebei Poshing Electronics, a.k.a., the following three aliases: —Hebei Poshin Electronics; —Hebei Poshing Elec.; *and* —Hubei PoshingElectronics. 113 Hezuo Road, Shijiazhuang, Hebei, China; *and* 21 Changsheng Street, Shijiazhuang, Hebei, China; *and* 21 Changsheng Road, Shijiazhuang, Hebei, China. | | | |
| | *Subordinate institution* Hebei Puxing Electronic, 113 Hezuo Road, Shijiazhuang, Hebei, China; *and* 21 Changsheng Street, Shijiazhuang, Hebei, China; *and* 21 Changsheng Road, Shijiazhuang, Hebei, China. | | | |
| | *Subordinate institution* Micro Electronic Technology, a.k.a., the following three aliases: —Micro Electronic Technology Development Application Corp; —METDA; *and* —METDAC. 113 Hezuo Road, Shijiazhuang, Hebei, China. | | | |
| | *Subordinate institution* Shijiazhuang Development Zone Maiteda Microelectronics Technology Development and Application Corporation, 21 Changsheng Street, Shijiazhuang, Hebei, China; *and* 21 Changsheng Road, Shijiazhuang, Hebei, China. | | | |
| | *Subordinate institution* MT Microsystems, 113 Hezuo Road, Shijiazhuang, Hebei, China. | | | |
| | *Subordinate institution* North China Integrated Circuit Corporation, 21 Changsheng Street, Shijiazhuang, Hebei, China; *and* 21 Changsheng Road, Shijiazhuang, Hebei, China; *and* 113 Hezuo Road, Shijiazhuang, Hebei, China. | | | |
| | *Subordinate institution* Tonghui Electronics, a.k.a., the following one alias: —Tonghui Electronics Technology. 21 Changsheng Street, Shijiazhuang, Hebei, China; *and* 21 Changsheng Road, Shijiazhuang, Hebei, China. | | | |
| | China Electronics Technology Group Corporation 14th Research Institute (CETC 14), a.k.a., the following seven aliases, and two subordinate institutions: —Nanjing Research Institute of Electronics Technology; —NRIET; —Nanjing Electronics Technology Institute; | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial ...... | 83 FR [INSERT FR PAGE NUMBER], 8/1/2018. |

USAO_SHIH_01575417

Federal Register / Vol. 83, No. 148 / Wednesday, August 1, 2018 / Rules and Regulations    37431

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| | ----Ministry of Information Industry Electronics;<br>----No 14 Research Institute;<br>----Research Institute 14; *and*<br>----CETC Research Institute 14.<br>*Subordinate institution*<br>Nanjing SunSea Industry Corporation.<br>*Subordinate institution*<br>Nanjing Institute of Radio Technology.<br>The following addresses apply to the entity and the two subordinate institutions:<br>No 1 Dinghuaimen, Nanjing, China; *and* No 8 Guorui Road, Yuhua District, Nanjing, China; *and* No 4 Guping Gang, Nanjing, China; *and* 52 Huju Road, North, Nanjing, China. | | | |
| | * * * | * | * | * |
| | China Electronics Technology Group Corporation 38th Research Institute (CETC 38), a.k.a., the following seven aliases, and seven subordinate institutions:<br>----Hefei Institute of Electronic Engineering;<br>----Southwest China Research Institute of Radar Technology;<br>----East China Research Institute of Electronic Engineering;<br>----ECRIEE;<br>----No 38 Research Institute;<br>----Research Institute 38; *and*<br>----CETC Research Institute 38.<br>*Subordinate institution*<br>Anhui Sun-Create Electronics.<br>*Subordinate institution*<br>Anhui Bowei Chang An Electronics.<br>*Subordinate institution*<br>ECU Electronic Industrial.<br>*Subordinate institution*<br>Hefei ECU–TAMURA Electric.<br>*Subordinate institution*<br>Anhui Bowei Guangcheng Information Technology.<br>*Subordinate institution*<br>Anhui Bowei Ruida Electronics Technology.<br>*Subordinate institution*<br>Brainware Terahertz.<br>The following addresses apply to the entity and to the seven subordinate institutions:<br>199 Xiangzhang Ave, Hefei, Anhui, China; *and* 19 He Huan Lu, Hefei, China; *and* 19 Hehuan Road, Hefei, China; *and* 418 Guilin Road, Shanghai, China; *and* 260 Ji Xi Road, Hefei, China; *and* 88 Pihe Road, Hefei, China; *and* Forward Road, Economics Development Zone of Luan, Luan, Anhui, China. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 83 FR [INSERT FR PAGE NUMBER], 8/1/2018. |
| | China Electronics Technology Group Corporation 55th Research Institute (CETC 55), a.k.a, the following four aliases, and two subordinate institutions:<br>----Nanjing Electronic Devices Institute;<br>----CETC Research Institute 55;<br>----NEDI; *and*<br>----NEDTEK. | For all items subject to the EAR. (See § 744.11 of the EAR). | Presumption of denial ...... | 83 FR [INSERT FR PAGE NUMBER], 8/1/2018. |

USAO_SHIH_01575418

37432    Federal Register / Vol. 83, No. 148 / Wednesday, August 1, 2018 / Rules and Regulations

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| | 524 Zhongzhan East Road, Nanjing, Jiangsu, China; *and* 524 East Zhongshan Road, Nanjing, Jiangsu, China; *and* 523 East Zhongshang Road, Nanjing, Jiangsu, China; *and* 166 Middle Zhenghang Road, Nanjing, China; *and* 166 Zhengfand Mid Road, Nanjing, China; *and* 166 Zhengfang Mid Road, Nanjing, China; *and* Huaxia Sci and Tech Park Hi-Tech Development, Nanjing, China; *and* RM 2105 Huaxia Bldg, No 81 Zhongshan Rd, Nanjing, China; *and* 8 Xingwen Road, Economic and Tech, Nanjing, China. | | | |
| | *Subordinate institution* | | | |
| | Nanjing Guosheng Electronics, | | | |
| | 8 Xingwen Road, Economic and Tech, Nanjing,Chia; and 166 Middle Zhenghang Road, Nanjing, China; *and* 166 Zhengfang Mid Road, Nanjing, China; *and* 166 Zhengfand Mid Road, Nanjing, China; *and* 168 Zhengfand Mid Road, Nanjing, China; *and* 165 Zhangfang Mid-Road, Nanjing, China; *and* 414 South Zhong Shan Road, Nanjing, Jiangsu, China; *and* | | | |
| | *Subordinate institution* | | | |
| | Nanjing Guobo Electronic, | | | |
| | 166 Zhengfang Mid Road, Nanjing, China. | | | |
| | China Tech Hi Industry Import and Export Corporation, a.k.a., the following two aliases: | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial ...... | 83 FR [INSERT FR PAGE NUMBER], 8/1/2018. |
| | —CTHC; *and* | | | |
| | —Tianhang Industry Import and Export Company. | | | |
| | 30 Haidian Road, Beijing, China; *and* No A 16 Zao Jun Miao, Haidian, Beijing, China. | | | |
| | China Volant Industry a.k.a., the following two aliases: | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial ...... | 83 FR [INSERT FR PAGE NUMBER], 8/1/2018. |
| | —Volinco; *and* | | | |
| | —China Huateng Industry. | | | |
| | 30 Haidian Road, Beijing, China; *and* Room 703, 7th Floor, Building 1, No 11, Changchunqiao Road, Haidian District, Beijing, China. | | | |
| | * | * | * | * | * |
| | Hebei Far East Communication System Engineering, a.k.a., the following two aliases: | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial ...... | 83 FR [INSERT FR PAGE NUMBER], 8/1/2018. |
| | —Hebei Far East Comm.; *and* | | | |
| | —HBFEC. | | | |
| | 21 Changsheng Street, Shijiazhuang, Hebei, China; *and* 21 Changsheng Road, Shijiazhuang, Hebei, China; *and* 589 West Zhongshan Road, Shijiazhuang, Hebei, China. | | | |
| | * | * | * | * | * |
| * | * | * | * | * | * |

USAO_SHIH_01575419

Federal Register / Vol. 83, No. 148 / Wednesday, August 1, 2018 / Rules and Regulations    **37433**

Dated: July 27, 2018.

**Richard E. Ashooh,**

*Assistant Secretary for Export Administration.*

[FR Doc. 2018–16474 Filed 7–31–18; 8:45 am]

BILLING CODE 3510-33-P

---

## DEPARTMENT OF DEFENSE

**Office of the Secretary**

**32 CFR Part 80**

[Docket ID: DOD–2017–OS–0047]

RIN 0790–AJ92

**Provision of Early Intervention Services to Eligible Infants and Toddlers With Disabilities and Their Families, and Special Education Children With Disabilities Within the Section 6 School Arrangements**

**AGENCY:** Under Secretary of Defense for Personnel and Readiness, DoD.

**ACTION:** Final rule.

**SUMMARY:** This final rule removes the Department of Defense (DoD) regulation concerning the provision of early intervention services to eligible infants and toddlers with disabilities and their families, and special education children with disabilities within the Section 6 school arrangements. The contents of this part have been updated and incorporated into the revision of DoD's regulation at 32 CFR part 57, "Provision of Early Intervention and Special Education Services to Eligible DoD Dependents." Therefore, this part is unnecessary and can be removed from the CFR.

**DATES:** This rule is effective on August 1, 2018.

**FOR FURTHER INFORMATION CONTACT:** Rebecca Lombardi, 571–372–0862.

**SUPPLEMENTARY INFORMATION:** It has been determined that publication of this CFR part removal for public comment is impracticable, unnecessary, and contrary to public interest since its content was incorporated into another CFR part for which public comment was taken.

DoD internal guidance concerning the provision of early intervention services to eligible infants and toddlers with disabilities and their families, and special education children with disabilities within the Section 6 school arrangements will continue to be published in DoD Instruction 1342.12 (available at *http://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/134212p.pdf*) and DoD Manual 1342.12 (available at *http://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodm/134212m.pdf*). This rule is not significant under Executive Order (E.O.) 12866, "Regulatory Planning and Review," therefore, E.O. 13771, "Reducing Regulation and Controlling Regulatory Costs" does not apply.

**List of Subjects in 32 CFR Part 80**

Education of individuals with disabilities, Government employees, Infants and children, Military personnel.

**PART 80—[REMOVED]**

■ Accordingly, by the authority of 5 U.S.C. 301, 32 CFR part 80 is removed.

Dated: July 25, 2018.

**Aaron T. Siegel,**

*Alternate OSD Federal Register Liaison Officer, Department of Defense.*

[FR Doc. 2018–16394 Filed 7–31–18; 8:45 am]

BILLING CODE 5001-06-P

---

## DEPARTMENT OF DEFENSE

**Department of the Navy**

**32 CFR Part 701**

[Docket ID: USN–2017–HQ–0003]

RIN 0703–AA95

**Availability of Department of the Navy Records and Publication of Department of the Navy Documents Affecting the Public**

**AGENCY:** Department of the Navy, Department of Defense (DoD).

**ACTION:** Final rule.

**SUMMARY:** This final rule removes DoD's regulation concerning the Department of the Navy's Freedom of Information Act (FOIA) program. The DoD has revised their FOIA program rule to include DoD component information and has removed the requirement for component supplementary rules. Therefore, the Navy's FOIA program rule can be removed from the CFR.

**DATES:** This rule is effective on August 1, 2018.

**FOR FURTHER INFORMATION CONTACT:** Christopher Julka at 703–697–0031.

**SUPPLEMENTARY INFORMATION:** On February 6, 2018 (83 FR 5196–5197), the DoD published a revised FOIA program rule as a result of the FOIA Improvement Act of 2016. When the DoD FOIA program rule was revised, it included DoD component information and removed the requirement for component supplementary rules. The DoD now has one DoD-level rule for the FOIA program at 32 CFR part 286 that contains all the codified information required for the Department. Therefore, 32 CFR part 701, subparts A through D, can be removed from the CFR.

It has been determined that publication of these subpart removals from the CFR for public comment is impracticable, unnecessary, and contrary to public interest since it is based on removing DoD internal policies and procedures that are publicly available on the Department's website.

Department of the Navy internal guidance concerning the implementation of the FOIA within the Navy will remain in effect and will continue to be published in SECNAVINST 5720.42F (available at *https://doni.daps.dla.mil/Directives/05000%20General%20Management%20Security%20and%20Safety%20Services/05-700%20General%20External%20and%20Internal%20Relations%20Services/5720.42F.pdf*).

This rule is one of 14 separate DoD FOIA rules. With the finalization of the DoD-level FOIA rule at 32 CFR part 286, the Department is eliminating the need for this separate FOIA rule and reducing costs to the public as explained in the preamble of the DoD-level FOIA rule published at 83 FR 5196–5197.

This rule is not significant under Executive Order (E.O.) 12866, "Regulatory Planning and Review," therefore, E.O. 13771, "Reducing Regulation and Controlling Regulatory Costs" does not apply.

**List of Subjects in 32 CFR Part 701**

Freedom of information.

Accordingly, 32 CFR part 701 is amended as follows:

**PART 701—AVAILABILITY OF DEPARTMENT OF THE NAVY RECORDS AND PUBLICATION OF DEPARTMENT OF THE NAVY DOCUMENTS AFFECTING THE PUBLIC**

■ 1. The authority citation for part 701 continues to read as follows:

Authority: 5 U.S.C. 552.

**Subparts A, B, C, and D [Removed and Reserved]**

■ 2. Remove and reserve subparts A through D.

Dated: July 26, 2018.

**Emilee Kujat Baldini,**

*Lieutenant Commander, Judge Advocate General's Corps, U.S. Navy, Federal Register Liaison Officer.*

[FR Doc. 2018–16347 Filed 7–31–18; 8:45 am]

BILLING CODE 5001-06-P

USAO_SHIH_01575420

# EXHIBIT B

**License Determination**
**E1058238**
**Date of Completion:**
**January 16, 2019**



UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C. 20230

**Witness(es):** Technical: Carlos Monroy/(202) 482-3246

**Commodity Description:** Diced wafer from 93B2GM101 lot , wafer ID BE1641-12
**Manufacturer:** Wolfspeed, a Cree company
**Requested Start/End Dates:** January 01, 2011 - December 20, 2018
**Intermediate Countries:** Hong Kong
**Destination Country:** China

### Determination Details
**Start Date:** January 01, 2011 **End Date:** December 22, 2014
**BIS License Required:** Yes

**ECCN:** 3A001.b.2.b
**Reason(s) for Control:** Anti-Terrorism,Anti-Terrorism,National Security,National Security
**Policy Text:**
Based on the information provided with this request, the Bureau of Industry and Security (BIS) has determined that, during the time referenced, the Cree Monolithic Microwave Integrated Circuit (MMIC) Amplifier, part number PA1-1020-A1, was classified under Export Control Classification Number (ECCN) 3A001.b.2.b. During the specified time period, items classified under ECCN 3A001.b.2 were controlled on the Commerce Control List (CCL) (15 C.F.R. Part 774, Supplement No.1) for national security (NS2) and anti-terrorism (AT1) reasons, and thus, they were eligible for export to Hong Kong under the provisions of no license required (NLR). Within the time frame specified, a BIS license was required under the EAR for the export or reexport to China of items classified under ECCN 3A001.b.2. No list based license exceptions were available under the EAR for exports or reexports to China during the specified time period.
The named end-user on this license determination, CHENGDU GASTONE TECHNOLOGY COMPANY, appears on the Entity List (Supplement No.4 to Part 744 of the EAR). The full entry on the Entity List is CHENGDU GASTONE TECHNOLOGY COMPANY LTD, alias Chengdu Jiashi Technology Co. The License Determination does not provide a location for the entity. The locations for Chengdu Gastone Technology Company Ltd on the Entity List are:
- 31F, A Tower, Yanlord Square, No.1, Section 2, Renmind South Road, Chengdu China
- Internet of Things Industrial Park Economic Development District Xinan Hangkonggang (Southwest Airport), Shuangliu County, Chengdu

YC_SHIH_00013928

License Determination
E1058238
Date of Completion:
January 16, 2019



UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C. 20230

## Determination Details

- 29th Floor, Yanlord Landmark, No. 1 Renmin South Road Section 2, Chengdu
- 29/F Yanlord Landmark Tower A, Chengdu, China.

This entity was added on the Entity List on August 1, 2014 (79 FR 44683) ,and thus, was
on the Entity List during the time period on the license determination from August 1, 2014 to
January 5, 2018. The entry was modified on March 21, 2016 (81 FR 14958), which added
an alias and three locations to the entry but did not affect the license requirement that was
in place since August 1, 2014. The license requirement for this entity is "all items subject to
the EAR" and the license review policy is "Presumption of Denial." As a result of this listing,
as of August 1,2014, a license is required for the export, reexport and transfer (in-country) of
any item subject to the EAR (to include EAR99-classified items) to this entity. There are no
license exceptions available.

## Determination Details

**Start Date:** December 23, 2014 **End Date:** December 20, 2018
**BIS License Required:** Yes

**ECCN:** 3A001.b.2.b
**Reason(s) for Control:** Anti-Terrorism,Anti-Terrorism,National Security,National
Security,Regional Stability,Regional Stability
**Policy Text:**
Based on the information provided with this request, the Bureau of Industry and Security
(BIS) has determined that, during the time referenced, the Cree Monolithic Microwave
Integrated Circuit (MMIC) Amplifier, part number PA1-1020-A1, was classified under Export
Control Classification Number (ECCN) 3A001.b.2.b. During the specified time period,
as a result of 79 FR76867, items classified under ECCN 3A001.b.2 were controlled on
the Commerce Control List (CCL) (15 C.F.R. Part 774, Supplement No. 1) for regional
stability (RS1), national security (NS) and anti-terrorism (AT1) reasons. Thus, during this
time, a BIS license was required under sections 742.4 and 742.6 of the EAR for the export
or reexport to Hong Kong of items classified under ECCN 3A001.b.2. However, during
the referenced time, these items were eligible for export without a license to Hong Kong,
using License Exceptions LVS, GBS and STA provided that the end use was solely for
civil telecommunications applications. Within the time frame specified, a BIS license was
required under the EAR for the export or reexport to China of items classified under ECCN
3A001.b.2. No list based license exceptions were available under the EAR for exports or
reexports to China during the specified time period.

YC_SHIH_00013929

License Determination
E1058238
Date of Completion:
January 16, 2019



UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C. 20230

## Determination Details

The named end-user on this license determination, CHENGDU GASTONE TECHNOLOGY COMPANY, appears on the Entity List (Supplement No.4 to Part 744 of the EAR). The full entry on the Entity List is CHENGDU GASTONE TECHNOLOGY COMPANY LTD, alias Chengdu Jiashi Technology Co. The License Determination does not provide a location for the entity. The locations for Chengdu Gastone Technology Company Ltd on the Entity List are:

- 31F, A Tower, Yanlord Square, No.1, Section 2, Renmind South Road, Chengdu China
- Internet of Things Industrial Park Economic Development District Xinan Hangkonggang (Southwest Airport), Shuangliu County, Chengdu
- 29th Floor, Yanlord Landmark, No. 1 Renmin South Road Section 2, Chengdu
- 29/F Yanlord Landmark Tower A, Chengdu, China.

This entity was added on the Entity List on August 1, 2014 (79 FR 44683) ,and thus, was on the Entity List during the time period on the license determination from August 1, 2014 to January 5, 2018. The entry was modified on March 21, 2016 (81 FR 14958), which added an alias and three locations to the entry but did not affect the license requirement that was in place since August 1, 2014. The license requirement for this entity is "all items subject to the EAR" and the license review policy is "Presumption of Denial." As a result of this listing, as of August 1,2014, a license is required for the export, reexport and transfer (in-country) of any item subject to the EAR (to include EAR99-classified items) to this entity. There are no license exceptions available.

Brian Baker, Division Director
BIS/EA/STC/EL



This is an official U.S. Dept of Commerce document. BIS will provide Licensing Officer witnesses to testify regarding this License Determination as needed.

YC_SHIH_00013930

**License Determination**
**E1058240**
**Date of Completion:**
**January 16, 2019**



UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C. 20230

**Witness(es):** Technical: Carlos Monroy/(202) 482-3246

**Commodity Description:** Diced wafer from 93B2GM101 lot , wafer ID BE1641-12
**Manufacturer:** Wolfspeed, a Cree company
**Requested Start/End Dates:** January 01, 2011 - December 20, 2018
**Intermediate Countries:** Hong Kong
**Destination Country:** China

### Determination Details
**Start Date:** January 01, 2011 End Date: December 22, 2014
**BIS License Required:** Yes

**ECCN:** 3A001.b.2.c
**Reason(s) for Control:** Anti-Terrorism,Anti-Terrorism,National Security,National Security
**Policy Text:**
Based on the information provided with this request, the Bureau of Industry and Security (BIS) has determined that, during the time referenced, the Cree Monolithic Microwave Integrated Circuit (MMIC) Amplifier, part number PA2_1615_A1, was classified under Export Control Classification Number (ECCN) 3A001.b.2.c. During the specified time period, items classified under ECCN 3A001.b.2 were controlled on the Commerce Control List (CCL) (15 C.F.R. Part 774, Supplement No.1) for national security (NS2) and anti-terrorism (AT1) reasons, and thus, they were eligible for export to Hong Kong under the provisions of no license required (NLR). Within the time frame specified, a BIS license was required under the EAR for the export or reexport to China of items classified under ECCN 3A001.b.2. No list based license exceptions were available under the EAR for exports or reexports to China during the specified time period.
The named end-user on this license determination, CHENGDU GASTONE TECHNOLOGY COMPANY, appears on the Entity List (Supplement No.4 to Part 744 of the EAR). The full entry on the Entity List is CHENGDU GASTONE TECHNOLOGY COMPANY LTD, alias Chengdu Jiashi Technology Co. The License Determination does not provide a location for the entity. The locations for Chengdu Gastone Technology Company Ltd on the Entity List are:
- 31F, A Tower, Yanlord Square, No.1, Section 2, Renmind South Road, Chengdu China
- Internet of Things Industrial Park Economic Development District Xinan Hangkonggang (Southwest Airport), Shuangliu County, Chengdu

YC_SHIH_00013931

License Determination
E1058240
Date of Completion:
January 16, 2019



UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C. 20230

## Determination Details

- 29th Floor, Yanlord Landmark, No. 1 Renmin South Road Section 2, Chengdu
- 29/F Yanlord Landmark Tower A, Chengdu, China.

This entity was added on the Entity List on August 1, 2014 (79 FR 44683) ,and thus, was
on the Entity List during the time period on the license determination from August 1, 2014 to
January 5, 2018. The entry was modified on March 21, 2016 (81 FR 14958), which added
an alias and three locations to the entry but did not affect the license requirement that was
in place since August 1, 2014. The license requirement for this entity is "all items subject to
the EAR" and the license review policy is "Presumption of Denial." As a result of this listing,
as of August 1,2014, a license is required for the export, reexport and transfer (in-country) of
any item subject to the EAR (to include EAR99-classified items) to this entity. There are no
license exceptions available.

## Determination Details

**Start Date:** December 23, 2014 **End Date:** December 20, 2018
**BIS License Required:** Yes

**ECCN:** 3A001.b.2.c
**Reason(s) for Control:** Anti-Terrorism,Anti-Terrorism,National Security,National
Security,Regional Stability,Regional Stability
**Policy Text:**
Based on the information provided with this request, the Bureau of Industry and Security
(BIS) has determined that, during the time referenced, the Cree Monolithic Microwave
Integrated Circuit (MMIC) Amplifier, part number PA2_1615_A1, was classified under
Export Control Classification Number (ECCN) 3A001.b.2.c. During the specified time period,
as a result of 79 FR76867, items classified under ECCN 3A001.b.2 were controlled on
the Commerce Control List (CCL) (15 C.F.R. Part 774, Supplement No. 1) for regional
stability (RS1), national security (NS) and anti-terrorism (AT1) reasons. Thus, during this
time, a BIS license was required under sections 742.4 and 742.6 of the EAR for the export
or reexport to Hong Kong of items classified under ECCN 3A001.b.2. However, during
the referenced time, these items were eligible for export without a license to Hong Kong,
using License Exceptions LVS, GBS and STA provided that the end use was solely for
civil telecommunications applications. Within the time frame specified, a BIS license was
required under the EAR for the export or reexport to China of items classified under ECCN
3A001.b.2. No list based license exceptions were available under the EAR for exports or
reexports to China during the specified time period.

YC_SHIH_00013932

License Determination
E1058240
Date of Completion:
January 16, 2019



UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C. 20230

## Determination Details

The named end-user on this license determination, CHENGDU GASTONE TECHNOLOGY COMPANY, appears on the Entity List (Supplement No.4 to Part 744 of the EAR). The full entry on the Entity List is CHENGDU GASTONE TECHNOLOGY COMPANY LTD, alias Chengdu Jiashi Technology Co. The License Determination does not provide a location for the entity. The locations for Chengdu Gastone Technology Company Ltd on the Entity List are:

- 31F, A Tower, Yanlord Square, No.1, Section 2, Renmind South Road, Chengdu China
- Internet of Things Industrial Park Economic Development District Xinan Hangkonggang (Southwest Airport), Shuangliu County, Chengdu
- 29th Floor, Yanlord Landmark, No. 1 Renmin South Road Section 2, Chengdu
- 29/F Yanlord Landmark Tower A, Chengdu, China.

This entity was added on the Entity List on August 1, 2014 (79 FR 44683) ,and thus, was on the Entity List during the time period on the license determination from August 1, 2014 to January 5, 2018. The entry was modified on March 21, 2016 (81 FR 14958), which added an alias and three locations to the entry but did not affect the license requirement that was in place since August 1, 2014. The license requirement for this entity is "all items subject to the EAR" and the license review policy is "Presumption of Denial." As a result of this listing, as of August 1,2014, a license is required for the export, reexport and transfer (in-country) of any item subject to the EAR (to include EAR99-classified items) to this entity. There are no license exceptions available.

Brian Baker, Division Director
BIS/EA/STC/EL



This is an official U.S. Dept of Commerce document. BIS will provide Licensing Officer witnesses to testify regarding this License Determination as needed.

YC_SHIH_00013933

License Determination
E1058239
Date of Completion:
January 16, 2019



UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C. 20230

**Witness(es):**  Technical: Carlos Monroy/(202) 482-3246

**Commodity Description:** Diced wafer from 93B2GM101 lot , wafer ID BE1641-12
**Manufacturer:** Wolfspeed, a Cree company
**Requested Start/End Dates:** January 01, 2011 - December 20, 2018
**Intermediate Countries:** Hong Kong
**Destination Country:** China

### Determination Details
**Start Date:** January 01, 2011 **End Date:** December 22, 2014
**BIS License Required:** Yes

**ECCN:** 3A001.b.2.b
**Reason(s) for Control:** Anti-Terrorism,Anti-Terrorism,National Security,National Security
**Policy Text:**
Based on the information provided with this request, the Bureau of Industry and Security
(BIS) has determined that, during the time referenced, the Cree Monolithic Microwave
Integrated Circuit (MMIC) Amplifier, part number PA2-1020-A1, was classified under Export
Control Classification Number (ECCN) 3A001.b.2.b. During the specified time period, items
classified under ECCN 3A001.b.2 were controlled on the Commerce Control List (CCL)
(15 C.F.R. Part 774, Supplement No.1) for national security (NS2) and anti-terrorism (AT1)
reasons, and thus, they were eligible for export to Hong Kong under the provisions of no
license required (NLR). Within the time frame specified, a BIS license was required under
the EAR for the export or reexport to China of items classified under ECCN 3A001.b.2. No
list based license exceptions were available under the EAR for exports or reexports to China
during the specified time period.
The named end-user on this license determination, CHENGDU GASTONE TECHNOLOGY
COMPANY, appears on the Entity List (Supplement No.4 to Part 744 of the EAR). The full
entry on the Entity List is CHENGDU GASTONE TECHNOLOGY COMPANY LTD, alias
Chengdu Jiashi Technology Co. The License Determination does not provide a location for
the entity. The locations for Chengdu Gastone Technology Company Ltd on the Entity List
are:
- 31F, A Tower, Yanlord Square, No.1, Section 2, Renmind South Road, Chengdu China
- Internet of Things Industrial Park Economic Development District Xinan Hangkonggang
(Southwest Airport), Shuangliu County, Chengdu

YC_SHIH_00013934

License Determination
E1058239
Date of Completion:
January 16, 2019



UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C. 20230

## Determination Details

- 29th Floor, Yanlord Landmark, No. 1 Renmin South Road Section 2, Chengdu
- 29/F Yanlord Landmark Tower A, Chengdu, China.

This entity was added on the Entity List on August 1, 2014 (79 FR 44683) ,and thus, was on the Entity List during the time period on the license determination from August 1, 2014 to January 5, 2018. The entry was modified on March 21, 2016 (81 FR 14958), which added an alias and three locations to the entry but did not affect the license requirement that was in place since August 1, 2014. The license requirement for this entity is "all items subject to the EAR" and the license review policy is "Presumption of Denial." As a result of this listing, as of August 1,2014, a license is required for the export, reexport and transfer (in-country) of any item subject to the EAR (to include EAR99-classified items) to this entity. There are no license exceptions available.

## Determination Details

**Start Date:** December 23, 2014 **End Date:** December 20, 2018
**BIS License Required:** Yes

**ECCN:** 3A001.b.2.b
**Reason(s) for Control:** Anti-Terrorism,Anti-Terrorism,National Security,National Security,Regional Stability,Regional Stability
**Policy Text:**
Based on the information provided with this request, the Bureau of Industry and Security (BIS) has determined that, during the time referenced, the Cree Monolithic Microwave Integrated Circuit (MMIC) Amplifier, part number PA2-1020-A1, was classified under Export Control Classification Number (ECCN) 3A001.b.2.b. During the specified time period, as a result of 79 FR76867, items classified under ECCN 3A001.b.2 were controlled on the Commerce Control List (CCL) (15 C.F.R. Part 774, Supplement No. 1) for regional stability (RS1), national security (NS) and anti-terrorism (AT1) reasons. Thus, during this time, a BIS license was required under sections 742.4 and 742.6 of the EAR for the export or reexport to Hong Kong of items classified under ECCN 3A001.b.2. However, during the referenced time, these items were eligible for export without a license to Hong Kong, using License Exceptions LVS, GBS and STA provided that the end use was solely for civil telecommunications applications. Within the time frame specified, a BIS license was required under the EAR for the export or reexport to China of items classified under ECCN 3A001.b.2. No list based license exceptions were available under the EAR for exports or reexports to China during the specified time period.

YC_SHIH_00013935

License Determination
E1058239
Date of Completion:
January 16, 2019



UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C. 20230

## Determination Details

The named end-user on this license determination, CHENGDU GASTONE TECHNOLOGY
COMPANY, appears on the Entity List (Supplement No.4 to Part 744 of the EAR). The full
entry on the Entity List is CHENGDU GASTONE TECHNOLOGY COMPANY LTD, alias
Chengdu Jiashi Technology Co. The License Determination does not provide a location for
the entity. The locations for Chengdu Gastone Technology Company Ltd on the Entity List
are:

- 31F, A Tower, Yanlord Square, No.1, Section 2, Renmind South Road, Chengdu China
- Internet of Things Industrial Park Economic Development District Xinan Hangkonggang
(Southwest Airport), Shuangliu County, Chengdu
- 29th Floor, Yanlord Landmark, No. 1 Renmin South Road Section 2, Chengdu
- 29/F Yanlord Landmark Tower A, Chengdu, China.

This entity was added on the Entity List on August 1, 2014 (79 FR 44683) ,and thus, was
on the Entity List during the time period on the license determination from August 1, 2014 to
January 5, 2018. The entry was modified on March 21, 2016 (81 FR 14958), which added
an alias and three locations to the entry but did not affect the license requirement that was
in place since August 1, 2014. The license requirement for this entity is "all items subject to
the EAR" and the license review policy is "Presumption of Denial." As a result of this listing,
as of August 1,2014, a license is required for the export, reexport and transfer (in-country) of
any item subject to the EAR (to include EAR99-classified items) to this entity. There are no
license exceptions available.

Brian Baker, Division Director
BIS/EA/STC/EL



This is an official U.S. Dept of Commerce document. BIS will provide Licensing Officer witnesses to testify regarding this License
Determination as needed.

YC_SHIH_00013936

# EXHIBIT C



**BIS Export Enforcement**
*Keeping the most sensitive goods
out of the most dangerous hands*

## MAJOR CASES LIST
### *February 2008*

The mission of the Commerce Department's Bureau of Industry and Security (BIS) is to advance U.S. national security, foreign policy and economic objectives by ensuring an effective export control and treaty compliance system and promoting continued U.S. strategic technology leadership.

BIS integrates its export licensing, outreach and enforcement activities to effectively regulate international trade in sensitive dual-use items, prevent violations and combat illicit trafficking and proliferation. BIS's enforcement arm, the Office of Export Enforcement (OEE), is an elite law enforcement organization recognized for its expertise, professionalism, integrity and accomplishments in export enforcement. OEE's export enforcement goal is to *keep the most sensitive goods out of the most dangerous hands.*

BIS's export enforcement activities target the most significant threats facing the United States today: the proliferation of Weapons of Mass Destruction (WMD) and missile delivery systems, terrorism and state sponsors of terror, and diversions of dual-use goods to unauthorized military end-uses. During Fiscal Year 2006 (October 1, 2005 through September 30, 2006), OEE investigations resulted in 33 criminal convictions with criminal fines totaling $3 million. During that same time period, BIS has also imposed more than $13 million in administrative penalties, 33 export denial orders and other administrative sanctions as a result of 95 closed administrative enforcement cases. A list of some significant cases follows.

### WMD and Missile Proliferation

***Nuclear Detonators to Pakistan*** – On August 1, 2006, BIS issued a 10 year denial of export privileges against Asher Karni and related parties Pakland PME Corporation and Humayun Khan in connection with their exports of electrical equipment and components with nuclear weapons applications to Pakistan. On August 4, 2005, Karni, a South African businessman was sentenced to three years' imprisonment as part of his guilty plea to conspiracy and export violations arising out of his unlawful exports to Pakistan and India of U.S. origin goods controlled for nuclear nonproliferation reasons. On April 8, 2005, the U.S. Attorney for the District of Columbia announced that Khan, of Islamabad, Pakistan, had been indicted for conspiring to violate, and, on three occasions, violating U.S. export restrictions. Khan, operating through his company Pakland PME, is alleged to have arranged, through Karni, the purchase and export to Pakistan of U.S. origin triggered spark gaps, which can be used as nuclear weapons detonators. Khan falsely

USA_SHIH_00855217

BIS Export Enforcement                                                                      - 2 -

indicated that the goods were intended for medical use. Khan is believed to be currently in
Pakistan. OEE, the Federal Bureau of Investigation (FBI), and the Department of Homeland
Security's Bureau of Immigration and Customs Enforcement (ICE) jointly conducted this
investigation.

*Industrial Furnace to China* – On October 4, 2006, William Kovacs, president of Elatec
Technology Corporation, was sentenced to 12 months and one day imprisonment, three years'
supervised release, and 300 hours community service in connection with the export of an
industrial furnace to a proliferation entity of concern in China. On May 28, 2004, Kovacs and
Elatec pled guilty to charges that they conspired to violate U.S. export licensing requirements in
connection with this export. Elatec's export license application for this transaction had
previously been denied by BIS due to missile technology concerns. An associate, Stephen
Midgley, separately pled guilty on January 10, 2005, to falsely stating in export documents that
the furnace did not require an export license when the goods were shipped to China. Midgley
was sentenced to one year probation, 120 hours community service and a $1,500 criminal fine.
BIS assessed Midgley a $5,000 ($4,000 suspended) administrative penalty as part of an
agreement with Midgley to settle charges related to this unlicensed export. OEE and ICE jointly
conducted this investigation.

*Nickel Powder to Taiwan* – On October 11, 2007, Theresa Chang was sentenced to three years'
probation and to pay a $5,000 criminal fine. On June 21, 2007, Chang pled guilty to one count of
making false statements related to the export of nickel powder controlled for nuclear proliferation
reasons to Taiwan without an export license.

*Graphite Products to the United Arab Emirates* – On October 4, 2007, a District Court Judge in
the Western District of Pennsylvania imposed a $40,000 criminal fine against Spares Global Inc.
On July 3, 2007, Spares Global, Inc., represented by President and empowered official, Mr. Om
Sharma, pled guilty to conspiracy to commit several federal violations related to the shipment of
graphite products to the United Arab Emirates with potential nuclear and military applications.
Spares Global conspired to falsify documents related to the graphite shipment and then attempted
to mislead federal investigators when questioned about the shipment and the documents.

*Carbon-Carbon Industrial Manufacturing Equipment to Missile Laboratory in India* – On
November 18, 2005, Fiber Materials Inc. of Maine; its wholly owned subsidiary, Materials
International of Massachusetts; and the companies' two top officers, Walter Lachman and
Maurice Subilia, were sentenced for conspiracy and export violations related to the unlicensed
export to India of equipment used to manufacture carbon-carbon components with applications in
ballistic missiles. On March 31, 1995, all four defendants were convicted of one count of
violating the Export Administration Act and one count of conspiracy by a federal trial jury. The
equipment, a specially designed control panel for the operation of a hot isostatic press used to
produce carbon-carbon items, was exported to the Defense Research Development Laboratory in
India and delivered to Agni, the defense laboratory developing India's principal nuclear-capable
ballistic missile. Lachman was sentenced to three years' probation, the first year of which is to be
spent in home detention. Subilia was sentenced to three years' probation, the first six months of
which was to be spent in community confinement to be followed by one year of home detention.
A criminal fine of $250,000 was imposed on Lachman, Subilia, and Fiber Materials; no fine was
imposed on Materials International because it is a wholly-owned subsidiary of Fiber Materials.
Additionally, on March 14, 2007, 10 year Denial Orders were issued to Subilia, Lachman, and
Fiber Materials, Inc. relating to their November 18, 2005 conviction. OEE and ICE jointly
conducted this investigation.

USA_SHIH_00855218

BIS Export Enforcement                                                                                    - 5 -

***Controlled Items to Ballistic Missile Facility in Iran*** – In September 2005, Mohammed
Farajbakhsh was sentenced to seven months in prison and two years' probation following his
April 2005 guilty plea to one count each of conspiracy and violation of the International
Emergency Economic Powers Act (IEEPA) for conspiring to illegally export goods to Iran via the
United Arab Emirates (UAE). Farajbakhsh, Hamid Fatholoomy, and their UAE-based companies
Diamond Technology and Akeed Trading were indicted in February 2005 for allegedly shipping
computer goods from a U.S. supplier to an entity affiliated with Iran's ballistic missile program,
as well as satellite communications equipment and other goods. OEE, Defense Criminal
Investigative Service (DCIS), and ICE jointly conducted this investigation.

***Chemical and Biological Weapons Controlled Toxins to Syria*** – On August 5, 2005, Maine
Biological Labs was sentenced to a criminal fine of $500,000 and five years' probation for illegal
exports and false statements in connection with unlicensed exports of virus toxins to Syria. On
July 22, 2005, six individuals, all former employees of Maine Biological Labs, were sentenced in
connection with various charges including conspiracy, illegal exports, smuggling, false
statements, aiding and abetting, and anti-boycott offenses. One former employee was sentenced
to two years' probation; the remaining five were each sentenced to terms of imprisonment
ranging from nine months to 12 months and one day. The court also imposed criminal fines
ranging from $5,000 to $30,000 on the defendants. Two other former employees were previously
convicted on similar charges and sentenced to probation. OEE, the U.S. Department of
Agriculture, and ICE jointly conducted this investigation.

***Thermal Insulation Blankets to China*** – On May 17, 2005, Vladimir Alexanyan, owner of
Valtex International, was ordered to pay a $12,000 criminal fine, was sentenced to three years'
probation, and was ordered to refrain from any international activities or trade for the term of his
probation. Valtex International was ordered to pay a $250,000 criminal fine. In February 2005,
Vladimir Alexanyan and Valtex pled guilty to export violations and false statements in
connection with the attempted export of satellite/missile insulation blankets to the Chinese
Academy of Space Technology in Beijing. BIS had previously rejected Valtex's application for
an export license for these items. The goods were seized in San Francisco before their shipment
from the U.S. BIS assessed Alexanyan an $88,000 administrative penalty and Valtex a $77,000
administrative penalty to settle charges related to this attempted unlicensed export. Both Valtex
and Alexanyan are also subject to five year denials of export privileges to China. Further, Valtex
agreed to implement an export management system. OEE and ICE jointly conducted this
investigation.

***Digital Oscilloscopes Controlled for Nuclear Nonproliferation Reasons to Israel*** – On
March 21, 2005, Metric Equipment Sales pled guilty in the Northern District of California to one
count of exporting digital oscilloscopes to Israel without a BIS license. The oscilloscopes, with
sampling rates exceeding 1 GHz, are capable of being utilized in WMD development and missile
delivery fields and are controlled for nuclear nonproliferation reasons. Metric was sentenced to a
$50,000 criminal fine, three years' probation and 250 hours of community service. BIS assessed
Metric a $150,000 administrative penalty and a five year suspended denial of export privileges as
part of an agreement with Metric to settle charges related to these unlicensed exports.

***Computer Chips with Guidance System Applications to China*** – On October 6, 2004, Ting-Ih
Hsu, a naturalized U.S. citizen and president of Azure Systems, Inc., and Hai Lin Nee, a Chinese
citizen and an employee of Azure, were sentenced to three years' probation for false statements in
connection with the illegal export of low-noise amplifier chips to China. The defendants falsely
described the goods as "transistors" in export documents. These goods have application in the
U.S. Hellfire missile. OEE and ICE jointly conducted this investigation.

USA_SHIH_00855219

BIS Export Enforcement                                                      - 4 -

*Pulse Generators to India* – On June 6, 2004, BNC Corp. of San Rafael, California (previously
Berkeley Nucleonics Corporation) was sentenced to five years' probation and a $300,000
criminal fine for illegally exporting pulse generators to two entities in India without the required
export licenses. The end-users were listed on BIS's entity list for nuclear non-proliferation
reasons. Two former employees of BNC, Richard Hamilton and Vincent Delfino, were convicted
in December 2003 for their role in these exports. Each was sentenced to two years' probation, a
$1,000 criminal fine, and 100 hours of community service and was prohibited from engaging in
or facilitating export transactions. BIS assessed BNC a $55,000 administrative penalty and a five
year suspended denial of export privileges as part of an agreement with BNC to settle charges
related to these unlicensed exports.

*Bubonic Plague to Tanzania* – On March 10, 2004, Thomas Campbell Butler, MD, a professor
at Texas Tech University, was sentenced to two years' imprisonment, three years' supervised
release, and criminal fines and restitution totaling more than $50,000 for export violations, false
statements, theft, embezzlement, fraud, and mail and wire fraud. Butler was arrested in January
2003 for falsely reporting to the FBI that 30 vials of bubonic plague bacteria that had been
destroyed by Butler were missing and presumed stolen from his university laboratory. An
investigation into Butler's report uncovered that Butler had earlier exported a related set of
bubonic plague bacteria to Tanzania in September 2002 without the required licenses. In
addition, on September 1, 2006, Dr. Butler agreed to pay a $37,400 administrative penalty and his
export privileges were denied for a period of 10 years. OEE conducted this investigation as a
member of the North Texas Joint Terrorism Task Force.

*Biological Research Products to Indian Government Organizations on the Entity List* – On
December 28, 2005, Becton, Dickinson, & Co., of Franklin Lakes, New Jersey was ordered to
pay a $123,000 administrative fine, and was subjected to an audit requirement to settle charges of
36 violations of the Export Administration Regulations (EAR) involving the export of various life
sciences research products to listed entities from the Indian Department of Atomic Energy and
Indian Department of Defense.

*Exports of Chemical and Biological Weapons Controlled Chemicals to Multiple Locations* –
On August 9, 2005, BIS assessed a $142,450 administrative penalty against BJ Services
Company of Tomball, Texas as part of an agreement that settled charges that between 1999 and
2002, BJ Services made 13 exports of items controlled for chemical and biological weapons
reasons to various destinations without obtaining the required export licenses. The settlement
agreement also requires that BJ Services must perform an audit of its internal compliance
program that is required to be submitted to OEE.

*Illegal Exports of Biotoxins to Canada* – On May 9, 2005, EMD Biosciences, Inc. (EMD) of San
Diego, California, was order to pay a $904,500 administrative penalty to settle charges that it
exported biological toxins to Canada in violation of the EAR. EMD also received a two year
suspended denial of export privileges. Between June 2002 and July 2003, EMD committed 134
violations of the EAR stemming from 67 exports of biological toxins to Canada that were made
without obtaining required Department of Commerce export licenses. EMD, formerly known as
CN Biosciences, Inc., in 1999, paid administrative fines for unlicensed exports of the same and
similar issue.

*Diaphragm Pumps to Iran, Syria Israel and China* – On April 27, 2005, Wilden Pump and
Engineering Co., LLC (Wilden), Grand Terrace, California, was ordered to pay a $700,000
administrative penalty to settle charges that it violated the EAR in connection with unauthorized
exports of diaphragm pumps from the U.S. to Iran, Israel, China, Syria, and the United Arab

USA_SHIH_00855220

BIS Export Enforcement                                                                    - 10 -

hardware to Sudan. On three occasions between June 1999 and February 2000, Mobil Services
Company Ltd. and Mobil Oil Egypt caused the re-export of computer servers and laptop
computers to a Mobil Oil subsidiary in Sudan without the required export licenses. The computer
equipment was controlled for export to Sudan for anti-terrorism reasons and in support of the
trade embargo against Sudan.

## Unauthorized Military Use

*Missile Test Equipment to China* – On May 18, 2006, Yueqiang "Bill" Chen, a permanent
resident alien, was arrested in San Jose, California pursuant to a criminal complaint that charged
Chen with five counts of violating IEEPA and the EAR related to the China exports to the
China. On May 24, 2006, a Federal Grand Jury in the Northern District of California indicted
Chen on five counts which charge that Chen unlawfully aided and abetted the unauthorized
exports of vibration test equipment to the China in violation of IEEPA. The indictment alleges
that while working as the General Manager for the China Division of Data Physics Corporation,
Chen knowingly and willfully sold and arranged for the export of vibration test and shaker
equipment for use in the design, development, production, and use of missiles in the China
without a license from BIS.

*National Security Controlled Items to China* – On May 1, 2006, criminal sentences were handed
down against four former employees of Manten Electronics in connection with their illegal
exports of millions of dollars worth of sensitive national security controlled items, with
applications in radar, electronic warfare and communications systems, to state-sponsored
institutes in China. Weibu Xu, aka Xu Weibu, aka Kevin Xu, was sentenced to 44 months'
imprisonment and two years' probation. Hao Li Chen, aka Ali Chan, was sentenced to 30 months'
imprisonment and two years' probation. Xiu Ling Chen, aka Linda Chen, was sentenced to 18
months' imprisonment and two years' probation. Kwan Chun Chan, aka Jenny Chan, was
sentenced to six months' home confinement and two years' probation. OEE, the FBI, and ICE
jointly conducted this investigation.

*Attempted Export of Encryption Modules to Taiwan* – On March 7, 2006, Ching Kan Wang,
President/owner China May, Inc. of Hollywood, Florida was sentenced to prison for one year and
one day. Wang pled guilty to conspiracy to violate the IEEPA for his role in attempting to
acquire sensitive communication encryption modules for export to Taiwan without the required
BIS export licenses. OEE and ICE jointly conducted this investigation.

*National Security Controlled Electronic Equipment to China* – On January 18, 2006, Ning
Wen, operating Wen Enterprises, was sentenced following his conviction at trial on September
21, 2005 to 60 months' imprisonment, two years' supervised release and a $50,000 criminal fine
for conspiracy to illegally export more than $500,000 worth of controlled electronic components
to Beijing Rich Linscience Electronics in China. On December 21, 2005, Hailin Lin was
sentenced to 42 months' imprisonment and a $50,000 criminal fine; and on July 25, 2005, Jian
Guo Qu was sentenced to 46 months' imprisonment (later reduced to 22 months), and two years'
supervised release for their roles in these exports. OEE, FBI, Internal Revenue Service, and ICE
jointly conducted this investigation.

*Satellite and Radar Technology to China* – On September 28, 2005, Zhaoxin Zhu of Shenzhen,
China was sentenced to 24 months' imprisonment and three years' supervised release for
conspiring to purchase controlled satellite and radar technology for illegal export to China. Zhu
negotiated with undercover federal agents to purchase a variety of sensitive goods, including

USA_SHIH_00855221

BIS Export Enforcement                                                                - 5 -

Emirates without the required Department of Commerce export licenses. Between 2000 and 2003,
Wilden committed 71 violations of the EAR. Specifically, BIS found that Wilden committed 26
violations by exporting diaphragm pumps without the required licenses. In connection with 22 of
the exports, Wilden violated the EAR by transferring diaphragm pumps with knowledge that
violations of the EAR would occur. BIS also charged that Wilden committed 23 violations of the
EAR by making false statements on export control documents. The majority of the pumps that
were exported are controlled for export and re-export for due chemical and biological weapons
proliferation reasons.

### Terrorism/State Sponsors of Terrorism

***Support to a Foreign Terrorist Organization*** - On November 29, 2007, Fawzi Mustapha Assi
pled guilty to one count of 18 U.S.C. 2339(b), Providing material support or resources to a
designated foreign terrorist organization, for his involvement in unlicensed exports to Lebanon.
The plea was entered in the Eastern District of Michigan. OEE, ICE and FBI jointly conducted
this investigation.

***Nickel Alloyed Pipes to Iran*** - On November 30, 2007, Proclad International Pipelines, Ltd., a
British corporation, headquartered in Scotland, United Kingdom, pled guilty in United States
District Court for the District of Columbia to one count of violating the International Emergency
Economic Powers Act for an Attempted Export Without an Export License. In February 2004,
Proclad conspired with other parties in the U.S. to illegally export nickel alloyed pipes to Iran
through the United Kingdom and the United Arab Emirates. As part of a global settlement, the
Proclad has agreed to pay $100,000 in civil penalties and to be subject to a suspended order
denying its export privileges for a period of seven years to settle charges that it violated the
Export Administration Regulations.

***Petrochemical Valves to Iran and Iraq*** - On December 17, 2007, Andrew Freyer was sentenced
to serve 17 months in prison followed by two years' of probation and to pay a $10,000 criminal
fine for his part in a conspiracy to export U.S. origin valves to Iran via Australia. On August 15,
2007, Freyer was convicted at trial of one count of aiding and abetting. On October 15, 2007,
Sharon Doe, Inside Sales Manager for Crane Pacific Valves in Signal Hill, California, was
sentenced to serve three years' probation, six months of home detention, and to pay a $5,000
criminal fine for her role in the export of petrochemical valves to Iran and Iraq through Australia
in order to evade the Export Administration Regulations. Crane Pacific Valves filed a Voluntary
Self-Disclosure with BIS when they discovered that employees had orchestrated a diversion
through Australia. The company cooperated with OEE Special Agents during the investigation.
Doe pled guilty in January 2007, to one count of shipping valves to Iran and one count of
shipping valves to Iraq.

***Payments to a Terrorist Organization*** - On September 17, 2007, Chiquita Brands International
Inc. was sentenced to pay a $25 million criminal fine and five years' probation to include an
effective compliance and ethics program. The investigation of Chiquita involved illegal payments
to a terrorist organization. From 1997 through 2004, Chiquita made monthly payments through its
wholly owned Colombian subsidiary C.I. Bananos de Exportacion S.A. to the right wing
paramilitary group Autodefensas de Columbia (AUC). The AUC was first designated as a
Foreign Terrorist Organization by the State Department on September 10, 2001. The AUC was
later designated as a Specially Designated Global Terrorist by the Office of Foreign Asset Control
in October 2001. These designations made it a federal crime for Chiquita, as a U.S. corporation,

USA_SHIH_00855222

BIS Export Enforcement                                                                    - 7 -

assessment. On June 14, 2007, on behalf of Tak Components, Shahsavarani also pled guilty to 16 counts of violating the IEEPA. Tak Components knowingly conducted a series of at least 16 export shipments of equipment described as "gaskets, bearing balls, auto parts, oil or fuel filters and other parts and accessories for tractors" from the U.S. to Iran. Shahsavarani declared in shipping documents that the end destination for each shipment was in Dubai, U.A.E., concealing that the intended final destination for the equipment was Iran. OEE and ICE jointly conducted this investigation.

***Tensile Strength Measuring Equipment to Iran*** – On November 30, 2006, Juan Sevilla, Sales Director of United Calibration Corporation of Huntington Beach, California, was sentenced to five years' probation, six months of home confinement, 100 hours community service, and a $10,000 criminal fine for violating the IEEPA by attempting to illegally export machinery and related software to measure the tensile strength of steel to Iran in violation of the U.S. embargo. OEE and ICE jointly conducted this investigation.

***Night Vision Equipment to Hezbollah*** – On November 14, 2006, BIS issued a Section 11(h) Denial Order against Tomer Grinberg and Naji Khalil in connection with their criminal convictions for conspiring to export Commerce and State-controlled night vision devices to the terrorist group Hezbollah in Lebanon. The Order denies export privileges for a period of ten years. On April 12, 2006, Grinberg, of Tober Group, Inc., a Brooklyn, New York freight forwarder, was sentenced to six months in prison for his role in conspiring to export Commerce and State Department-controlled night vision units to Greece knowing that they would be shipped to Lebanon. On February 2, 2006, Khalil was sentenced to two 60 month prison terms and a 57 month prison term, all to be served concurrently, plus a $100,000 criminal fine for his role in the attempted export of these night vision devices, knowing that they would be delivered to Hezbollah in Beirut. OEE conducted this investigation as a member of the New York Joint Terrorism Task Force.

***Terrorist Dealings/Computer Exports to Libya and Syria*** – In October 2006, sentences were handed down in connection with prior convictions at trial of Infocom Corporation and its principals, the Elashi brothers, for dealing in the funds of a Specially Designated Terrorist, a high ranking official of the terrorist organization Hamas; and conspiracy to export computers and computer equipment to Libya and Syria. Basman Elashi was sentenced to 80 months' imprisonment on October 13, 2006; Ghassan Elashi was sentenced to 80 months' imprisonment on October 12, 2006; and Infocom itself was sentenced to two years' probation on October 11, 2006. Two other Infocom principals were previously sentenced in January 2006. Hazim Elashi was sentenced to 60 months' imprisonment, two years' probation, and deportation from the U.S. on January 24, 2006; and Ihsan Elashi was sentenced to 72 months in prison and two years' probation on January 25, 2006. At the time of his sentencing, Ihsan Elashi was serving a 48 month prison sentence following his 2002 conviction for violating a BIS Temporary Denial Order. OEE conducted this investigation as a member of the North Texas Joint Terrorism Task Force.

***Aircraft Parts to Iran*** – On October 13, 2006, Ernest Koh, doing business as Chong Tek, was sentenced to 52 months' imprisonment after his conviction at trial on May 18, 2006, in connection with obtaining U.S. aircraft parts which can be used in C-130 military transport planes and P-3 Naval Aircraft, and diverting those parts to Malaysia for transshipment to Iran. In addition, the jury found that Koh had laundered millions of dollars from his bank accounts in Singapore through accounts in the U.S. to promote the ongoing illegal scheme.

DHS Export Enforcement                                                                    - 6 -

to provide money to the AUC. In April 2003, Chiquita made a voluntary self-disclosure to the
government of its payments to the AUC, giving rise to this investigation.

*Aircraft Parts to Iran* - On July 30, 2007, Ali Khan, owner of TurboAnalysis, Phoenix, AZ, was
sentenced in U.S. District Court, Eastern District of New York, Brooklyn, in connection with his
role in a conspiracy to illegally export aircraft components to Iran. Khan was sentenced by Judge
John Gleeson to serve five years' probation, perform 300 hours of community service, pay $1.4
million dollars in forfeiture, and $100,000 in criminal fines. Khan previously pled guilty to one
count of Conspiracy to violate the International Emergency Economic Powers Act, in violation of
Title 18 U.S.C. Section 371, in September of 2005. Khan also paid a $110,000 administrative
fine pursuant to a Final Order signed on August 8, 2005 in connection with the aforementioned
shipments.

*Computer equipment to Iraq* - On July 18, 2007, Darrin Hanna and Dawn Hanna were indicted
in the Eastern District of Michigan. Both Darrin and Dawn Hanna were indicted on counts of
violating the International Emergency Economic Powers Act, conspiracy, money laundering and
false statements related to the exports of sensitive computer, communications and GPS equipment
to Iraq.

*Machines to Iran* - On October 24, 2007, Roger Unterberger, Muhammad Bhatti and Go-Trans
(North America) Inc., three defendants involved with the investigation of Go Trans (North
American) Inc., were sentenced in the Northern District of Illinois. On August 20, 2007, the
three defendants each pled guilty to one count of making false statements for their involvement
with the attempted export of pipe cutting machines to Iran via Germany. Unterberger was
sentenced to one year of probation and was ordered to pay a $5,000 criminal fine and a $100
special assessment. Unterberger, who is a citizen of Switzerland, was arrested on June 4, 2007, at
O'Hare International Airport, Chicago, Illinois, when he entered the U.S. to attend a business
meeting. Bhatti was sentenced to one year of probation and was ordered to pay a $100 special
assessment. Go Trans was sentenced to one year probation and was ordered to pay a $34,000
criminal fine and a $400 special assessment. On August 1, 2007, an Information was filed in the
Northern District of Illinois charging Roger Unterberger, a retired Senior Vice President of
Gondrand AG, headquartered in Basel, Switzerland, Go-Trans (North America) Inc., of Jamaica,
NY and Muhammad Bhatti, Chief Operating Officer of Go-Trans, with one count of making false
statements. Related to the information, on July 31, 2007, Mohammed Meshkin, an Iranian doing
business as Madar Sabz Tehran Company in Tehran, Iran, was indicted in the Northern District of
Illinois on one count of violating IEEPA. OEE and ICE jointly conducted this investigation.

*Laboratory Equipment to Iran* - On July 17, 2007, in U.S. District Court, Eastern District of
New York, James Gribbin, of Long Island, New York, pled guilty to conspiracy. Gribbin's plea
was entered in connection with his involvement in the illegal export of laboratory equipment to
Iran. On June 15, 2007, Patrick Gaillard, President of Oyster Bay Pump Works, Hicksville, New
York, pled guilty to conspiracy to violate the IEEPA. In November 2006, Gaillard, through his
company Oyster Bay Pump Works, attempted to export two laboratory equipment systems,
valued collectively at approximately $300,000, to Iran via an intermediary in the U.A.E. without
the required export license.

*Tractor Parts to Iran* – On October 11, 2007, Saied Shahsavarani, President of Tak Components,
Inc., was sentenced to three years' probation, to pay a $1,000 criminal fine and a $100 special
assessment. On June 14, 2007, Shahsavarani pled guilty to one count of aiding and abetting the
operation of an unlicensed money transmitting business. Also on October 11, 2007, Tak
Components was sentenced to one year probation, to forfeit $38,016, and pay a $6,400 special

USA_SHIH_00855224

BIS Export Enforcement                                                                            - 6 -

*Computer Equipment to Iran* - On September 18, 2006, SuperMicro Computer, Inc. pled guilty
to illegally exporting motherboards controlled for National Security reasons to Iran and was
sentenced to a criminal fine of $150,000. SuperMicro also agreed to pay an administrative fine of
$125,400 to settle charges for related transactions with the BIS. On April 13, 2007, a SuperMicro
Computer employee agreed to pay an administrative for $60,000 to settle charges for related
transactions with BIS.

*Forklift Parts to Iran* – On August 4, 2006, David Tatum was sentenced to one year probation,
50 hours' community service, and a $5,000 criminal fine in connection with illegal exports of
forklift parts by Clark Material Handling Corporation via Sharp Line Trading in Dubai, UAE to
Iran. On January 19, 2006, Khalid Mahmood, dba Sharp Line Trading, was sentenced to 17
months' imprisonment. On December 7, 2005, Robert Quinn of Clark Material Handling
Corporation was sentenced to 39 months' imprisonment and a $6,000 criminal fine for his role in
these exports. OEE and ICE jointly conducted this investigation.

*Aircraft Parts to Libya* – On May 30, 2006, NewCal Aviation, Little Ferry, New Jersey, was
sentenced to two years' probation and a $200,000 criminal fine. Richard Greenleaf, former Vice
President of NewCal, was also sentenced to three years' probation and a $2,500 criminal fine in
connection with exports of aircraft parts to a Specially Designated National (SDN) of Libya.
Greenleaf admitted that he caused aircraft parts to be shipped by NewCal to Mediterranean
Aviation Company, Ltd., a/k/a Medavia, in Malta on approximately 30 separate occasions
between April 2002 and April 2004. During the time in which the shipments were made, Medavia
was designated by the Office of Foreign Assets Control (OFAC) as a Specially Designated
National of Libya under the Libyan Sanctions Regulations. OEE and ICE jointly conducted this
investigation.

*U.S. Firm Doing Business with National Gas Company in Iran* – On March 10, 2006, GasTech
Engineering Corporation was sentenced to five years' probation, a $50,000 criminal asset
forfeiture, a $5,000 criminal fine and a $33,000 regulatory penalty to be paid to OFAC in
connection with violations of the Iranian Transactions Regulations. GasTech and its
President/CEO, Parviz Khosrowyar, were involved in a $12 million contract with the National
Iranian Gas Company. GasTech attempted to evade U.S. sanctions against Iran by subcontracting
a large portion of the contract to a Canadian firm. Khosrowyar remains a fugitive. OEE and ICE
jointly conducted this investigation.

*Houston Firm Attempts to Export Specialty Nickel Alloy Pipe to Iran* – On December 16, 2005,
PA Inc. of Houston, Texas, was sentenced to three years' probation and a $50,000 criminal fine
following a guilty plea to a charge of attempting to violate the IEEPA resulting from an attempted
illegal export of specialty nickel alloyed piping destined to Iran. On August 19, 2005, BIS
assessed a $50,000 administrative penalty and a five year suspended denial of export privileges as
part of an agreement with PA Inc. to settle administrative charges related to these transactions.

*Night Vision Lenses to Iran* – On July 19, 2005, Erik Kyriacou, a former NBC cameraman and
resident of Long Island, New York, was sentenced to five years' probation, four months of home
confinement, a $400 special assessment, and restitution for attempting to illegally export night
vision lenses to Iran. The lenses had been stolen from NBC News in New York. According to
court documents, Kyriacou was attempting to sell the lenses on the Internet to undercover agents
posing as international arms brokers. Kyriacou agreed to sell the lenses to the agents knowing
that they were destined for shipment to Iran in violation of the U.S. embargo. OEE and ICE
jointly conducted this investigation.

USA_SHIH_00855225

BIS Export Enforcement                                                                    - 9 -

*Experimental Aircraft and Electrical Components to Iran* – On February 25, 2005, a federal indictment was unsealed charging Ali Asghar Manzarpour of Brighton, United Kingdom, with the attempted export of an experimental, single-engine aircraft and exports of electrical components to Iran. Manzarpour had been arrested on February 17, 2005 in Warsaw, Poland by Polish authorities at the request of the U.S. Manzarpour was previously convicted and imprisoned in the United Kingdom for attempting to export U.S.-origin maraging steel to Iran. At the time British authorities noted that this steel, which is used to build centrifuges for uranium enrichment, appeared to be destined for Iran's nuclear weapons program. OEE and ICE jointly conducted this investigation.

*Oil Burning Nozzles to Iran* – On January 20, 2005, Nozzle Manufacturing Company, previously doing business as Monarch Nozzle, of Swedesboro, New Jersey, pled guilty to knowingly shipping oil burning nozzles to Iran in violation of the U.S. embargo. Nozzle Manufacturing was sentenced to pay a $10,000 criminal fine. In addition, BIS and the Treasury Department's Office of Foreign Assets Control (OFAC) each assessed $10,000 administrative penalties as a part of agreements to settle charges related to these unlicensed exports. The company was dissolved after sentencing. OEE and ICE jointly conducted this investigation.

*Cryogenic Submersible Pumps to Iran* – On December 7, 2004, Ebara International Corporation of Sparks, Nevada, was sentenced in U.S. District Court, Washington, D.C. for illegally exporting cryogenic submersible pumps to Iran in violation of the U.S. embargo. Ebara agreed to pay a $6.3 million criminal fine and serve three years' corporate probation. BIS assessed a $121,000 administrative penalty and a three year suspended denial of export privileges as part of an agreement with Ebara to settle administrative charges related to these unlicensed exports. In addition, Everett Hylton, Ebara's founder and former Chief Executive Officer, pled guilty to conspiracy to make false statements, and agreed to a $10,000 criminal fine and three years of probation. Hylton also agreed to a $99,000 administrative penalty and the imposition of a three year suspended denial of export privileges as part of an agreement with BIS to settle administrative charges related to Ebara's exports to Iran.

*Trenching Equipment to Libya* – On December 3, 2004, Tesmec S.P.A., an Italian company, was sentenced to a $85,000 criminal fine for the attempted export of a trencher, valued in excess of $1 million, for ultimate delivery to the Western Libya Gas Project in Libya. OEE and ICE jointly conducted this investigation.

*Falsification on Self Disclosure of Iran Exports* – On November 3, 2006, EPMedSystems, Inc., of West Berlin, New Jersey was administratively fined $244,000 for charges related to the unlicensed export of EAR99 commodities to Iran and falsifying a Voluntary Self-Disclosure (VSD). EPMed filed a VSD with BIS which detailed five exports to Iran, which the company stated were completed by a third party without the company's knowledge. However, subsequent investigation identified several additional exports, as well as significant evidence that the company was aware that their European Sales Manager was exporting items to Iran without the required licenses. Furthermore, investigation revealed that the EPMed made several omissions and false statements in the VSD they filed with BIS. Consequently, EPMed was administratively charged with substantive export counts, as well as counts of acting with knowledge, acting to evade the requirements of the EAR, conspiracy to export, and false statements.

*Computers and Related Hardware to Sudan* – On June 1, 2005, ExxonMobil Corporation of Fairfax, Virginia., was ordered by BIS pay $49,500 in administrative fines to settle charges that affiliates of the former Mobil Oil Corporation, located in Texas, the United Kingdom, and Egypt participated in or were otherwise liable for the unauthorized re-export of computers and related

USA_SHIH_00855226

BIS Export Enforcement                                                                        12

## Other Dual Use

*Exports of Night Vision to Various Locations* - On January 22, 2008, Green Supply Inc. was
sentenced in U.S. District Court in the Eastern District of Missouri to two years' probation, a
$17,500 fine, and $800 special assessment for violations of export controls. On November 2,
2007, Green Supply pled guilty to one count of violating the IEEPA and one count of violating
ITAR. The charges are the result of an investigation that identified approximately 66 illegal
exports in violation of IEEPA and eight illegal exports in violation of ITAR between 2002 and
2006. Green Supply is a wholesale distributor of hunting and camping equipment to include
restraint devices, shotgun barrels, global positioning systems, firearm scopes and sights, and other
items controlled for export. OEE and ICE jointly conducted this investigation.

*False Statements on Shipper's Export Declarations* - On August 8, 2007, P.R.A. World Wide
Trading Co., Inc. (PRA), of Brooklyn, N.Y., agreed to pay $250,000 in administrative penalties to
settle charges that it violated the Export Administration Regulations government the export of
dual-use items. Specifically, BIS alleged that PRA conspired to make false statements to the U.S.
Government and made false or misleading representations on export control documents. BIS will
suspend $90,000 of this figure for one year and subsequently waive this amount if PRA does not
commit any violations during the suspension period. BIS charged that between June 1, 2001 and
December 20, 2002, PRA, a freight forwarder, on 41 occasions conspired to make false
statements in violation of the EAR and falsely represented the value of the items subject to the
EAR on Shipper's Export Declarations (SEDs). On December 19, 2006, criminal sanctions were
imposed on the owner and President of PRA, Igor Cherkassky after he pled guilty to one count of
conspiracy to make false statements on SEDs. Cherkassky admitted that between 1998 and 2004,
while serving as the President of PRA, he instructed employees to prepare and submit SEDs that
contained false information about the true value of exported items. Pursuant to the plea,
Cherkassky was sentenced to two months of imprisonment, three years of supervised release, a
$5,000 criminal fine, and a $100 special assessment.

*Diaphragm Pumps to Taiwan, Singapore, Brazil and Ecuador* – On May 4, 2007, Yamada
America, Inc., an Illinois company, was ordered to pay $220,000 in administrative fines to settle
charges that the company committed 26 violations of the EAR. Between 2001 and 2005, Yamada
America exported diaphragm pumps to Taiwan, Singapore, Brazil, and Ecuador without the
required export license and with knowledge that a violation would occur. In addition, Yamada
America made false statements on export control documents related to the unlicensed exports.

*Ballistic Helmets to Suriname* – On June 15, 2007, Alpine Armoring, Inc. of Herndon, Virginia
was sentenced to pay a $102,000 criminal fine and one year of probation for unlicensed exports.
In addition, Fred Khoroushi, President of Alpine Armoring, was sentenced to pay a $10,000
criminal fine for making false statements. Alpine Armoring also agreed to a five year suspended
denial of export privileges and to pay an $88,000 administrative fine to settle charges with BIS in
connection with these exports. On March 27, 2007, Alpine Armoring pled guilty to the
unlicensed export of ballistic helmets to Suriname. In January 2002, Alpine Armoring shipped
ballistic helmets to the Centrale Banke Van Suriname without the required export license.
Khoroushi also pled guilty to making false statements on a Shipper's Export Declaration. The
ballistic helmets exported in this case are controlled for national security and anti-terrorism
reasons.

*Violation of the Cuba Sanctions* – On April 25, 2007, LogicaCMG, Inc. pled guilty and was
sentenced to pay a $50,000 criminal fine for illegally causing goods to be exported to Cuba in
violation of the EAR. In 2001, LogicaCMG's predecessor company, CMG Telecommunications,

USA_SHIH_00855229

BIS Export Enforcement                                                                        - 14 -

analyzer software and technology specifically designed for the use of the voice stress analyzer
equipment.

***Administrative Fine for Chemicals Export to Israel*** – On March 22, 2006, Ameribrom, Inc, of
Fort Lee, New Jersey was fined $82,500 by BIS for 11 violations of the EAR for failure to obtain
and submit required end-use certificates in connection with 11 shipments of a chloropicrin based
pesticide and soil fungicide, an item classified under ECCN 1C335, to Israel. EAR Section 745.2
requires that an end-use certificate from the government of the recipient of the applicable items
be submitted to BIS for exports of Chemical Weapons Convention (CWC) Schedule 3 chemicals
to countries not party to the CWC.

***Failure to File Shipper's Export Declarations on Aircraft Parts*** – On February 16, 2007,
Aviacsa Airlines of Houston, Texas was ordered to pay an administrative fine $450,000. Between
February 2002 and May 2003, Aviacsa Airlines failed to file Shipper's Export Declarations on 75
separate occasions. These improperly documented exports were for aircraft parts subject to the
EAR that were valued at $2,500 per Harmonized Tariff Schedule/Schedule B number to Mexico.

***Sodium Cyanide to South Africa*** – On October 5, 2005, ProChem (Proprietary), Ltd., as
successor corporation to Protea Chemicals (Proprietary), Ltd., based in Gauteng, South Africa,
paid administrative penalties totaling $1.54 million to settle charges pertaining to unauthorized
resales of U.S.-origin sodium cyanide and potassium cyanide to end users in South Africa. On
112 occasions between November 1999 and December 2003, Protea resold U.S.-origin sodium
cyanide and potassium cyanide to various unauthorized business entities in South Africa. BIS
further charged that Protea committed an additional 112 violations of the EAR by reselling these
controlled commodities with knowledge that conditions on its Department of Commerce licenses
did not authorize resale to the end users. These resales were made in violation of conditions set
forth in Department of Commerce licenses issued to Protea and in violation of the EAR.

## Deemed Exports

***Video Amplifiers to China/National Security Controlled Technology to Chinese Nationals*** – On
July 25, 2005, Charlie Kuan, former president of Suntek Microwave, Newark, California, was
sentenced to 12 months and one day imprisonment and two years' supervised release for failure
to obtain required export licenses for shipments of detector log video amplifiers (DLVA), items
controlled for national security reasons, to Chengdu Jeway Microwave Telecommunications, a
company controlled by the Chinese government. Suntek, which was also charged with failing to
obtain export licenses under the deemed export provisions of the EAR, was sentenced to a
$339,000 criminal fine. BIS additionally assessed administrative penalties of $275,000 against
Suntek, $187,000 against Kuan, and 20 year denials of export privileges against both parties in
connection with these violations.

***National Security Controlled Technology to Chinese and Ukrainian Nationals*** – In November
2004, BIS assessed Fujitsu Network Communications, Inc. an administrative penalty of $125,000
as part of an agreement with Fujitsu to settle charges related to unlicensed deemed exports to
foreign nationals. In particular, BIS alleged that Fujitsu failed to obtain the export licenses
required for transferring commercial digital fiber-optic transmission and broadband switching
technology to Chinese and Ukrainian nationals. The applicable technology is subject to national
security controls.

USA_SHIH_00855230

BIS Export Enforcement                                                                        - 13 -

exported telecommunications equipment to Cuba via Panama without the required export license.
LogicaCMG also agreed to pay a $99,000 administrative penalty to settle charges in connection
with this export. This telecommunications equipment was controlled for national security, anti-
terrorism, and encryption reasons.

*Energy Equipment to Iran, Iraq, Libya and Cuba* – On May 23, 2006, Dresser Inc. and its
subsidiaries were ordered to pay $1.1 million in administrative fines for EAR violations.
Between June 2000 and April 2004, Dresser and its subsidiaries made 169 exports of energy
related equipment from the U.S. to Iran, Iraq, Libya, and Cuba without the required licenses.
Dresser voluntarily self-disclosed these violations and cooperated fully with the investigation.

*Failure to Abide by Licensing Conditions on Undersea Mapping Equipment* – On September 1,
2006, WesternGeco LLC, was ordered to pay an administrative penalty in the amount of
$925,000 and Western Geophysical Company of America was also ordered to pay administrative
penalties totaling $1,965,600 for failing to abide by licensing conditions between August 1998
and January 2001. During this time period, both companies failed to abide by conditions placed
on export licenses issued for underwater geophysical mapping equipment exported to the China.
This equipment was controlled for national security reasons.

*Crime Control Items to South Africa* – On September 7, 2006, the Springer MaGrath Company
was sentenced to a criminal fine of $50,000 for knowingly and willfully exporting crime control
items to South Africa without the required export license from BIS. Springer MaGrath also paid
an administrative fine of $451,000 to BIS and received a three year suspended denial of export
privileges.

*North Carolina Company President Convicted for Illegal Export of Crime Control Products* –
On March 22, 2006, John Carrington, the former President of Sirchie Fingerprint Laboratories
and a former North Carolina state Senator, was sentenced to 12 months' probation and agreed to
pay an $850,000 criminal penalty. On December 15, 2005, Carrington entered a guilty plea for
his part in illegally exporting approximately $1.2 million dollars in crime control equipment to
China through intermediaries in Italy and Hong Kong. In September 2005, Carrington settled
administrative charges by agreeing to a five year denial of export privileges. Sirchie also settled
administrative charges and agreed to pay $400,000 and accepted a five year suspended denial.

*Polygraph Machines to China* – In February 2005, Stoelting Company, of Wood Dale, Illinois,
and its president, LaVern Miller, were sentenced for criminal export violations in connection with
the illegal export of polygraph machines to China without required export licenses. These items
are restricted to China for human rights reasons. Stoelting was sentenced to two and half years'
corporate probation and a $20,000 criminal fine; while Miller was sentenced to two and a half
years' probation, including six months of electronically monitored home confinement, 500 hours
community service, and a criminal fine equivalent to the costs of his probation and monitoring,
estimated to be $18,000. In June 2004, Stoelting and Miller each agreed to pay $44,000 in
administrative penalties to BIS and Stoelting agreed to a five year suspended denial of export
privileges as part of agreements to settle charges related to these unlicensed transactions.

*Crime Control Items to South Africa and Mexico* – On April 7, 2006, the National Institute for
Truth Verification (NITV) agreed to pay a $77,000 administrative penalty to settle charges that it
violated the EAR in connection with unauthorized exports of voice stress analyzer equipment and
technology controlled for crime control reasons to Mexico and South Africa. Between March
2003 and January 2006, the NITV caused the export of computers containing voice stress

USA_SHIH_00855231

BIS Export Enforcement                                                                      - 11 -

traveling wave tubes with satellite and radar applications, for export to China. OEE and ICE
jointly conducted this investigation.

*Low Noise Amplifiers to China* – On August 17, 2005, Univision, operated by Zheng Zheng,
was sentenced to a $1,000 criminal fine for false statements in connection with the export of low
noise amplifiers, controlled for national security reasons, to China without obtaining the required
license from the Department of Commerce. On June 28, 2005, Zheng was also sentenced to a
$1,000 criminal fine for this violation. OEE and ICE jointly conducted this investigation.

*False Statements on Export Documents; Microwave Amplifiers to China*– On August 22, 2007,
Norsal Export and its President Norman Spector agreed to pay administrative fines to settled
charges that between November 9, 2000 and January 9, 2003, Norsal and Spector each committed
forty-four violations of the Export Administration Regulations by exporting microwave
amplifiers to the China with knowledge that violations of the EAR would occur in connection
with the items. BIS also charged that the parties filed false Shipper's Export Declarations in
support of the unlicensed exports. To settle the charges, Norsal agreed to a $462,000
administrative fine, all of which will be suspended for a period of one year, and then waived,
provided that no future violations of the EAR occur. Spector also agreed to an administrative fine
of $462,000, of which $442,000 will be suspended on the same terms, and $22,000 is due in
payment. In addition, both Norsal and Spector have been subjected to a twenty-five year denial
of export privileges. In February 2005, Spector International, dba Norsal Export, was sentenced
to a $57,000 criminal fine in connection with providing false information on Shipper's Export
Declarations regarding unlicensed exports of microwave amplifiers with potential radar
applications and controlled for national security reasons, to China.

*Unauthorized Exports and Reexports of Thermal Imaging Cameras to Various Locations* –
On June 6, 2005, E.D. Bullard of Cynthiana, Kentucky, was ordered to pay a $330,000
administrative penalty to settle charges that it exported and re-exported thermal imaging cameras
to Austria, the Czech Republic, France, Germany, Israel, Spain, Switzerland, and Venezuela in
violation of the EAR. In addition, Bullard Gmbh, of Bonn, Germany agreed to pay a $36,000
administrative penalty to settle charges that it resold, re-exported, and transferred thermal
imaging cameras to Austria, France, and Switzerland in violation of the EAR. Bullard and its
subsidiary, Bullard Gmbh, committed 61 violations of the EAR between February 2000 and
March 2002. Bullard, with assistance from Bullard Gmbh, caused the export, re-export, reselling
and transferring of thermal imaging cameras from the United States to the aforementioned
countries without the required export licenses, to intermediate consignees not authorized under a
license, after a license had expired, in quantities exceeding those authorized by a license, and in
violation of the terms and conditions of a license. In addition, Bullard was charged with making
false statements on Shipper's Export Declarations in connection with many of the shipments.
The export violations did not result in the diversion of any cameras to countries for which Bullard
did not have export licenses.

*Exports of Gun Sights to Various Locations* – In February 2005, BIS assessed a $510,000
administrative penalty against Bass Pro., Inc. as part of an agreement to settle charges related to
the unlicensed export of gun sights to a range of destinations. Gun sights are controlled for
human rights and anti-terrorism reasons.

USA_SHIH_00855232

BIS Export Enforcement                                                                                        - 19 -

*National Security Controlled Items and Technology to China* – In September 2004, BIS
assessed a $560,000 administrative penalty against Lattice Semiconductor Corporation as part of
an agreement to settle charges of unlicensed exports of extended range programmable logic
devices and technical data to China and the deemed export of controlled technology to Chinese
nationals.  The items and technology are controlled for national security reasons.

*National Security Controlled Technology to Chinese and Iranian Nationals* – In April 2004,
BIS assessed New Focus, Inc., an administrative penalty of $200,000 as part of an agreement
with New Focus to settle charges related to unlicensed deemed exports to foreign nationals and
other exports.  In particular, BIS alleged that New Focus failed to obtain the export licenses
required for transferring technology to two Iranian nationals and one Chinese national who, in the
course of their employment in the U.S., were exposed to national security controlled
manufacturing technology.  BIS also alleged that New Focus failed to obtain the required export
licenses for shipments of national security controlled amplifiers to the Czech Republic,
Singapore, and Chile.

*BIS Export Enforcement: Keeping the most sensitive goods out of the most dangerous hands.*

*To Report Illegal Exports: 1-800-424-2980 or www.bis.doc.gov*

*For more information contact:*
BIS Public Affairs 202-482-2721 or www.bis.doc.gov

USA_SHIH_00855233

# EXHIBIT D

| From: | tran teck <tran_teck@sympatico.ca> |
|-------|-------------------------------------|
| To: | 'Yi-chi Shih' <yichishih@gmail.com> |
| Sent: | 1/27/2010 5:03:03 PM |
| Subject: | Lists |
| Attachments: | BIS_00 Answers and Questions imp YC.pdf; BIS_00 specific companies list YC.pdf |

Hi Yi-Chi:

Attached are two files for your reference.

Ishiang

---

## Supplement No. 4 to Part 744 - ENTITY LIST

---

This Supplement lists certain entities subject to license requirements for specified items under this part 744 of the EAR.  License requirements for these entities include exports, reexports, and transfers (in-country) unless otherwise stated. This list of entities is revised and updated on a periodic basis in this Supplement by adding new or amended notifications and deleting notifications no longer in effect.

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---------|--------|---------------------|------------------------|----------------------------|
| **ARMENIA** | Bold Bridge International, LLC, Room 463, H. Hakobyan 3, Yerevan, Armenia. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |
| **CANADA** | Ali Bakhshien, 909-4005 Bayview Ave., Toronto, Canada  M2M 3Z9. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54504, 9/22/08. |
| | Kitro Corporation, 909-4005 Bayview Ave., Toronto, Canada  M2M 3Z9. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54504, 9/22/08. |
| **CHINA, PEOPLE'S REPUBLIC OF** | 13 Institute, China Academy of Launch Vehicle Technology, (CALT), a.k.a. 713 Institute or Beijing Institute of Control Devices. | For all items subject to the EAR. | See §744.3(d) of this part. | 66 FR 24265, 5/14/01. |

USAO_SHIH_00934085

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 2

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| CHINA, PEOPLE'S REPUBLIC OF | 33 Institute, a.k.a. Beijing Institute of Automatic Control Equipment. | For all items subject to the EAR having a classification other than EAR99 or a classification where the third through fifth digits of the ECCN are "999", e.g., XX999. | See §744.3(d) of this part. | 66 FR 24266, 5/14/01. |
| | 35 Institute, a.k.a. Beijing Huahang Radio Measurements Research Institute. | For all items subject to the EAR having a classification other than EAR99 or a classification where the third through fifth digits of the ECCN are "999", e.g., XX999. | See §744.3(d) of this part. | 66 FR 24266, 5/14/01. |
| | 54th Research Institute of China, a.k.a. Communication, Telemetry and Telecontrol Research Institute (CTI). | For all items subject to the EAR having a classification other than EAR99 or a classification where the third through fifth digits of the ECCN are "999", e.g., XX999. | See §744.3(d) of this part. | 66 FR 24266, 5/14/01. |
| | A.C. International, Room 1104, North Tower Yueziu City Plaza, No. 445 Dong Feng Zhong Rd., Guangzhou, China. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54504, 9/22/08. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934086

Control Policy: End-User and End-Use Based                                    Supplement No. 4 to Part 744 – page 3

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| CHINA, PEOPLE'S REPUBLIC OF | Asia International Trading Company, Room 1104, North Tower Yuexiu City Plaza, No. 445 Dong Feng Zhong Rd., Guangzhou, China. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54504, 9/22/08. |
| | Baotou Guanghua Chemical Industrial Corporation, 202 Factory Baotou, Inner Mongolia. | For all items subject to the EAR having a classification other than EAR99. | See §744.2(d) of this part. | 66 FR 24266, 5/14/01. |
| | Beijing Aerospace Automatic Control Institute, 51 Yong Ding Road Beijing. | For all items subject to the EAR having a classification other than EAR99. | See §744.3 of this part. | 64 FR 28909, 5/28/99. |
| | Beijing Institute of Structure and Environmental Engineering, a.k.a., Beijing Institute of Strength and Environmental Engineering, No. 36 Wanyuan Road Beijing. | For all items subject to the EAR having a classification other than EAR99. | See §744.3 of this part. | 64 FR 28909, 5/28/99. |
| | Beijing Power Machinery Institute. | For all items subject to the EAR. | See §744.3(d) of this part. | 66 FR 24266, 5/14/01. |
| | Beijing University of Aeronautics and Astronautics (BUAA), a.k.a. Beihang University. | For all items subject to the EAR. | See §744.3(d) of this part. | 66 FR 24266, 5/14/01 70 FR 54629, 9/16/05. |
| | China Aerodynamics Research and Development Center (CARDC) Sichuan Province. | For all items subject to the EAR having a classification other than EAR99. | See §744.3 of this part. | 64 FR 28909, 5/28/99. |

Export Administration Regulations                                                            January 13, 2010

USAO_SHIH_00934087

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 4

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| CHINA, PEOPLE'S REPUBLIC OF | Chinese Academy of Engineering Physics (a.k.a. Ninth Academy, including the Southwest Institutes of: Applied Electronics, Chemical Materials, Electronic Engineering, Explosives and Chemical Engineering, Environmental Testing, Fluid Physics, General Designing and Assembly, Machining Technology, Materials, Nuclear Physics and Chemistry (a.k.a. China Academy of Eng[ineering] Physics [CAEP]'s 902 Institute, Mianyang), Structural Mechanics; Research and Applications of Special Materials Factory; Southwest Computing Center (all of preceding located in or near Mianyang, Sichuan Province); Institute of Applied Physics and Computational Mathematics, Beijing; and High Power Laser Laboratory, Shanghai). | For all items subject to the EAR. | Case-by-case basis. | 62 FR 35334, 6/30/97 66 FR 24266, 5/14/01. |
| | Chitron Electronics Company Ltd, a.k.a., Chi-Chuang Electronics Company Ltd (Chitron-Shenzhen), 2127 Sungang Rd, Huatong Bldg, 19/F, Louhu Dist, Shenzhen, China 518001; and 169 Fucheng Rd, Fenggu Bldg., 7/F, Mianyang, China 621000; and Zhi Chun Rd, No 2 Bldg of Hoajing jiayuan, Suite #804, Haidian Dist, Beijing, China 100086; and 40 North Chang'an Rd, Xi'an Electronics Plaza Suite #516, Xi'an, China 710061; and 9 Huapu Rd, Chengbei Electronics &Apparatus Mall, 1/F Suite #39, Chengdu, China 610081; and 2 North Linping Rd Bldg 1. Suite #1706, Hongkou Dist, Shanghai, China 200086 (See alternate address under Hong Kong). | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934088

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 5

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| CHINA, PEOPLE'S REPUBLIC OF | First Department, China Academy of Launch Vehicle Technology, (CALT). | For all items subject to the EAR. | See §744.3(d) of this part. | 66 FR 24266, 5/14/01. |
| | Northwest Institute of Nuclear Technology, in the Science Research, Xi'an, Shaanxi. | For all items subject to the EAR. | See §744.2 of this part. | 64 FR 28909, 5/28/99. |
| | Northwestern Polytechnical University. | For all items subject to the EAR having a classification other than EAR99 or a classification where the third through fifth digits of the ECCN are "999", e.g., XX999. | See §744.3(d) of this part. | 66 FR 24266, 5/14/01. |
| | Shanghai Academy of Spaceflight Technology, Shanghai, Spaceflight Tower 222 Cao Xi Road Shanghai, 20023. | For all items subject to the EAR having a classification other than EAR99. | See §744.3 of this part. | 64 FR 28909, 5/28/99. |
| | Shanghai Institute of Space Power-Sources, Shangahi, 388 Cang Wu Rd Shanghai. | For all items subject to the EAR having a classification other than EAR99. | See §744.3 of this part. | 64 FR 28909, 5/28/99. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934089

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 6

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| CHINA, PEOPLE'S REPUBLIC OF | Southwest Research Institute of Electronics Technology, Chengdu. | For all items subject to the EAR having a classification other than EAR99 or a classification where the third through fifth digits of the ECCN are "999", e.g., XX999. | See §744.3(d) of this part. | 66 FR 24267, 5/14/01. |
| | Tracy Little, Room 1104, North Tower Yueziu City Plaza, No. 445 Dong Feng Zhong Rd., Guangzhou, China. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54504, 9/22/08. |
| | Wong Yung Fai, a.k.a., Tonny Wong, Unit 12B, Block 11, East Pacific Garden, Xiang Lin Road, Futian District, Shenzhen, China. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial | 75 FR 1699, 1/13/10. |
| | Xian Research Institute of Navigation Technology. | For all items subject to the EAR having a classification other than EAR99. | See §744.3(d) of this part. | 66 FR 24267, 5/14/01. |
| | Xiangdong Machinery Factory. | For all items subject to the EAR. | See §744.3(d) of this part. | 66 FR 24267, 5/14/01. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934090

Control Policy: End-User and End-Use Based                                    Supplement No. 4 to Part 744 – page 7

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| EGYPT | H Logic, Behind 14 Mahmoud Sedky St., El Ekbal, Alexandria, Egypt. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54504, 9/22/08. |
| | Hesham Yehia, Behind 14 Mahmoud Sedky St., El Ekbal, Alexandria, Egypt. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54504, 9/22/08. |
| | Najeeb Al Awadhi, 14 Mahmoud Sedky St., El Ekbal, Alexandria, Egypt. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54504, 9/22/08. |
| GERMANY | Akbar Ashraf Vaghefi, Koburgerstr 10, D-10825, Berlin, Germany. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54504, 9/22/08 74 FR 11474, 3/18/09. |
| | Christof Schneider, Margaretenweg #10, 42929 Wermelskirchen, Germany. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 74 FR 35797, 7/21/09. |
| | Djamshid Nezhad, Poppentrade 25, D-24148 Kiel, Germany. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54504, 9/22/08. |
| | Hans Werner Schneider, Bertha von Suttner Weg #1, 42929 Wermelskirchen, Germany. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 74 FR 35797, 7/21/09. |

Export Administration Regulations                                                    January 13, 2010

USAO_SHIH_00934091

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 8

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| GERMANY | IKCO Trading GmbH, Schadowplatz 5, 40212 Dusseldorf, Germany. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54504, 9/22/08. |
| | Nezhad Enterprise Company, Poppentrade 25, D-24148 Kiel, Germany. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54504, 9/22/08. |
| | Schneider GMBH, Thomas Mann Str. 35-37, 42929 Wermelskirchen, Germany; and P.O. Box 1523, Wermelskirchen, 42908 DE; and Thomas Mann Str., 35-37, P.O. Box 1523, Wermelskirchen, 42908 DE. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 74 FR 35797, 7/21/09. |
| HONG KONG | Able City Development Limited, Unit C, 9/F Neich Tower, 128 Gloucester Road, Wanchai, Hong Kong; and Unit 401, Harbour Ctr., Tower 2, 8 Hok Cheung Street, Hung Hom, Kowloon, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 74 FR 35797, 7/21/09. |
| | Amy So, Room 1701, New Commerce Centre, 19 On Sum St., Siu Lek Yuen, Shatin, N.T., Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54504, 9/22/08. |
| | Antony Emmanuel, No: 3 & 4; 12F Commercial VIP Building, 112-116 Canton Rd., Tsim Sha Tsui, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08 74 FR 11474, 3/18/09. |
| | Asia Link, Flat 1022, 10/F, No. 1 Hung To Rd., Kwun Tong, Kowloon, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934092

Control Policy: End-User and End-Use Based                                    Supplement No. 4 to Part 744 – page 9

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---------|--------|---------------------|----------------------|---------------------------|
| HONG KONG | Bruce Lam, 11/F Excelsior Bldg., 68-76 Sha Tsui Rd., Tsuen Wan, New Territories, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |
| | Centre Bright Electronics Company Limited, Unit 7A, Nathan Commercial Building 430-436 Nathan Road, Kowloon, Hong Kong; and Room D, Block 1, 6/F International Industrial Centre, 2-8 Kwei Tei Street, Shatin New Territories, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |
| | Chitron Electronics Company Ltd, a.k.a., Chi-Chuang Electronics Company Ltd (Chitron-Shenzhen), 6 Shing Yip St. Prosperity Plaza 26/F, Suite #06, Kwun Tong, Kowloon, Hong Kong (See alternate address under China). | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |
| | Creative Electronics, Room 2202c, 22/F, Nan Fung Centre, 264-298 Castle Peak Road, Hong Kong and G/F 1_J Wong Chuk Street Shamshuipo, Kowloon, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |
| | Exodus Microelectronics Company Limited, Unit 9B, Nathan Commercial Building 430-436 Nathan Road, Kowloon, Hong Kong; and Unit 6B, Block 1, International Centre 2-8 Kwei Tei Street, Shatin, New Territories, Hong Kong; and Unit 6B, Block 1, International Industrial Centre, 2-8 Kwei Tei Street, Shatin, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |

Export Administration Regulations                                                            January 13, 2010

USAO_SHIH_00934093

Control Policy: End-User and End-Use Based                    Supplement No. 4 to Part 744 – page 10

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| HONG KONG | Frank Lam, 1206-7, 12/F New Victory House, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |
| | Gary Chan, 4/F, Chinabest International Centre, 8 Kwai On Rd., Kwai Chung, N.T., Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |
| | Green Channel Electronics Company, Unit 902, Ricky Center, 36 Chong Yip St., Kwun Tong, Kowloon, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |
| | Hong Chun Tai, Unit 27B, Block 8, Monte Vista, 9 Sha On Street, Ma On Shan New Territories, Hong Kong; and Unit 7A, Nathan Commercial Building, 430-436 Nathan Road Kowloon, Hong Kong; and Room D, Block 1, 6/F International Industrial Centre, 2-8 Kwei Tei Street, Shatin, New Territories, Hong Kong; and Unit 9B, Nathan Commercial Building, 430-436 Nathan Road Kowloon, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |
| | Kong Fat Electronic Trading Limited, Unit 5, 1/F, Block A, Hoplite Industrial Centre, 3-5 Wang Tai Rd., Kowloon Bay, Kowloon, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |
| | Pelorus Enterprises Limited, 12F Commercial VIP Building, 112-116 Canton Rd., Tsim Sha Tsui, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |

Export Administration Regulations                                                      January 13, 2010

USAO_SHIH_00934094

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 11

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| HONG KONG | Polar Star International Co. Ltd., 1905 Yen Sheng Center, 64 Hoi Yuen Rd., Kwun Tong, Kln, Hong Kong. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |
| | Sik Yin Ngai, a.k.a. Spencer Ngai, Unit 401, Harbour Ctr., Tower 2, 8 Hok Cheung Street, Hung Hom, Kowloon, Hong Kong. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 74 FR 35797, 7/21/09. |
| | Siu Ching Ngai, a.k.a. Terry Ngai, Unit C, 9/F Neich Tower, 128 Gloucester Road, Wanchai, Hong Kong. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 74 FR 35797, 7/21/09. |
| | Speedy Electronics Ltd., 1206-7, 12/F New Victory House, Hong Kong. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |

**Export Administration Regulations**

**January 13, 2010**

USAO_SHIH_00934095

Control Policy: End-User and End-Use Based

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| HONG KONG | Sysdynamic Limited, Unit 716A, 7/F Enterprise Place (Building 9), No. 5 Science Park West Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong; and Unit 401, Harbour Ctr., Tower 2, 8 Hok Cheung Street Hung Hom, Kowloon, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 74 FR 35797, 7/21/09. |
| | Tam Shue Ngai, Unit C, 9/F Neich Tower, 128 Gloucester Road, Wanchai, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 74 FR 35797, 7/21/09. |
| | Techlink Electronics, Unit 5, 18/F, Laurels Industrial Centre, 32 Tai Yau St., San Po Kong, Kowloon, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |
| | TLG Electronics, Room 1701, New Commerce Centre, 19 On Sum St., Siu Lek Yuen, Shatin, N.T., Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |
| | Unite Chance Technology Company, Workshop A14, 5/F, Block A Sheung Shui Plaza, 3 Ka Fu Close Sheung Shui, N.T., Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |
| | United Sources Industrial Enterprises, 11/F, Excelsior Building, 68-76 Sha Tsui Road, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |
| | Victory Wave Holdings Limited, Unit 2401 A, Park-In Commercial Centre, 56 Dundas Street, Hong Kong; and Unit 2401A, 24/F Park-In Commercial Centre, 56 Dundas Street, Mongkok, Kowloon, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934096

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 13

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| HONG KONG | Wing Shing Computer Components Company (H.K.) Ltd., Unit E, 9/F, Lladro Centre, 72 Hoi Yuen Rd., Kwon Tong, Kin, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54505, 9/22/08. |
| | Wong Wai Chung, a.k.a., David Wong, Unit 27B, Block 8, Monte Vista, 9 Sha On Street, Ma On Shan, New Territories, Hong Kong; and Unit 7A, Nathan Commercial Building 430-436 Nathan Road, Kowloon, Hong Kong; and Room D, Block 1, 6/F International Industrial Centre, 2-8 Kwei Tei Street, Shatin, New Territories, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |
| | Wong Yung Fai, a.k.a., Tonny Wong, Unit 27B, Block 8, Monte Vista, 9 Sha On Street, Ma On Shan, New Territories, Hong Kong; and Unit 1006, 10/F Carnarvon Plaza, 20 Carnarvon Road, TST, Kowloon, Hong Kong; and Unit 7A, Nathan Commercial Building, 430-436 Nathan Road, Kowloon, Hong Kong; and Room D, Block 1, 6/F International Industrial Centre, 2-8 Kwei Tei Street, Shatin, New Territories, Hong Kong; and Unit 9B, Nathan Commercial Building 430-436 Nathan Road, Kowloon, Hong Kong; and Unit 2401A, 24/F Park-In Commercial Centre 56 Dundas Street, Mongkok, Kowloon, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |
| | Y-Sing Components Limited, Unit 401, Harbour Ctr., Tower 2, 8 Hok Cheung Street, Hung Hom, Kowloon, Hong Kong. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934097

Control Policy: End-User and End-Use Based                                  Supplement No. 4 to Part 744 – page 14

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| **INDIA** | Bharat Dynamics Limited. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |
| | The following subordinates of **Defense Research and Development Organization** (DRDO):<br><br>Armament Research and Development Establishment (ARDE)<br>Defense Research and Development Lab (DRDL), Hyderabad<br>Missile Research and Development Complex<br>Solid State Physics Laboratory. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |
| | The following **Department of Atomic Energy** entities:<br>Bhabha Atomic Research Center (BARC)<br>Indira Gandhi Atomic Research Center (IGCAR)<br>Indian Rare Earths<br>Nuclear reactors (including power plants) not under International Atomic Energy Agency (IAEA) safeguards (excluding Kundankulam 1 and 2), fuel reprocessing and enrichment facilities, heavy water production facilities and their collocated ammonia plants. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01 69 FR 56693, 09/22/04. |

Export Administration Regulations                                                   January 13, 2010

USAO_SHIH_00934098

Control Policy: End-User and End-Use Based                    Supplement No. 4 to Part 744 – page 15

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---------|--------|---------------------|----------------------|---------------------------|
| INDIA | The following **Indian Space Research Organization (ISRO)** subordinate entities:<br>-Liquid Propulsion Systems Center<br>-Solid Propellant Space Booster Plant (SPROB)<br>-Sriharikota Space Center (SHAR)<br>-Vikram Sarabhai Space Center (VSSC), Thiruvananthapuram. | For all items subject to the EAR having a classification other than (1) EAR99 or (2) a classification where the third through fifth digits of the ECCN are "999", e.g. XX999. | Case-by-case review for all items on the CCL. | 63 FR 64322, 11/19/98<br>65 FR 14444, 03/17/00<br>66 FR 50090, 10/01/01<br>69 FR56693, 09/22/04. |
| IRAN | Aflak Micro Electronics, Tehranno 14, Golkade St., Arash Mehr Ave., Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. |
| | Ahmad Rahzad, a.k.a., Saeb Karim, 29, 1st Floor, Amjad Bldg., Jomhoori Ave., Tehran, Iran   (See alternate address under Malaysia). | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. |
| | Ali Reza Seif, 34 Mansour Street, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. |
| | Amir Hosein Atabaki, 5 Yaas St, Unit 4, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 74001, 12/5/08. |

Export Administration Regulations                                      January 13, 2010

USAO_SHIH_00934099

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 16

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| IRAN | Arash Dadgar, No. 10, 64th St., Yousafabad, Tehran, Iran, 14638, and Unit 11, No. 35 South Iranshahr St, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. 75 FR 1699, 1/13/10. |
| | Atomic Energy Organization of Iran (a.k.a. Sazeman-E Energy Atomi), P.O. Box 14144-1339, End of North Karegar Avenue, Tehran, Iran. | For all items subject to the EAR. (See §744.2 of the EAR). | Presumption of denial. | 72 FR 38008, 07/12/07. |
| | Bahman Ghandi, a.k.a. Brian Ghandi, No. 14, Golkadeh St., Arashmehr St., Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. |
| | Elecomponents, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. |
| | Faradis Production, No. 33, Second Floor, Amjad Electronic Center, Jomhouri Ave., Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934100

Control Policy: End-User and End-Use Based                    Supplement No. 4 to Part 744 – page 17

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| **IRAN** | Farhad Maani, 67, 1st Floor, No. 3, Ebn-E Sina St., Mr. ValiAsr Ave, W. of Beheshti, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. |
| | GBNTT, No. 34 Mansour Street, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. |
| | Golza Engineering Company, No. 80/1, Fourth Floor, North Sindokht St., Dr. Fatemi Ave., Tehran, 14118, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. |
| | H. Farahani, Ground Floor - No. 31, Alborz Alley, EnghelabSt, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 74001, 12/5/08. |
| | Hamid Reza Ansarian, P.O. Box 19575-354, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. |

Export Administration Regulations                                        January 13, 2010

USAO_SHIH_00934101

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 18

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| IRAN | Iraj Najmi, No. 80/1, Fourth Floor, North Sindokht St., Dr. Fatemi Ave., Tehran, 14118, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. |
| | Kala Electric Company (a.k.a. Kalaye Electric Company), 33 Fifteenth (15th) Street, Seyed-Jamal-Eddin-Assad Abadi Avenue, Tehran, Iran. | For all items subject to the EAR. (See §744.2 of the EAR). | Presumption of denial. | 72 FR 38008, 07/12/07. |
| | Mahdi Electronics, Ground Floor - No. 31 Alborz Alley, EnghelabSt, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR) | Presumption of denial. | 73 FR 74001, 12/5/08. |
| | Maryan Jahanshahi, 34 Mansour St., Motahari-ValiAsr Street Junction, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. |
| | Mesbah Energy Company (a.k.a. "MEC"), 77 Armaghan Gharbi Street, Valiasr Blve, Tehran, Iran. | For all items subject to the EAR. (See §744.2 of the EAR). | Presumption of denial. | 72 FR 38008, 07/12/07. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934102

Control Policy: End-User and End-Use Based                                    Supplement No. 4 to Part 744 – page 19

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| IRAN | Mohammed Narjespour, 34 Mansour St., ValiAsr-Motahari Crossing, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54506, 9/22/08. |
| | Moslem Nasiri, 34 Mansour St., ValiAsr-Motahari Crossing, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |
| | M.R. Ahmadi, P.O.Box 19575/199, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |
| | Naser Golshekan, Ground Floor - No. 31, Alborz Alley, EnghelabSt, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 74001, 12/5/08. |
| | NBC Navegan Bar Co. Ltd., # 135 Khorramshahr Ave., Tehran 15338. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |
| | Neda Industrial Group, No. 10 and 12, 64th St. Jamalodin Asadabadi Avenue, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |
| | Nedayeh Micron Electronics, No. 34 Mansour St., Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |

Export Administration Regulations                                              January 13, 2010

USAO_SHIH_00934103

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 20

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| IRAN | Niasan Century Industry, Unit 2, GF, No:1, Marzban Name Alley, Mofateh St., Motahari Ave., 1588875333, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |
| | Pakgostar Company, Appt 501 & 502, Borje Sefid Bldg, Pasadaran Avenue, Tehran 1946963651, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 74001, 12/5/08. |
| | Rad Tavan Afza Company, 3rd Floor, No. 210, W. Fatemi, Tehran, Iran 14185387 and 1st Pars Bldg., Beg. Pars Alley, Betw Khosh & Behboudi St., Azadi Ave., Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |
| | Raht Aseman, No. 1.2, Mosque Alley, Mohammadi St, North Bahar Ave, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 74001, 12/5/08. |
| | Reza Zahedipour, 5 Yaas St, Unit 4, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 74001, 12/5/08. |
| | Safir Electronics, Ground floor No. 31 Alborz Alley, Enghelab St. Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 74001, 12/5/08. |
| | Sahab Phase, 5 Yaas St, Unit 4 Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 74001, 12/5/08. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934104

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 21

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| **IRAN** | Sanaye Electronic Arman Ertebat Nemad Company (SAEN CO.), 67, 1st Floor, No. 3, Ebn-E Sina St., Mr. ValiAsr Ave., W. of Beheshti, Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |
| | Shahid Bakeri Industrial Group (a.k.a. "SBIG"), Tehran, Iran. | For all items subject to the EAR. (See §744.3 of the EAR). | Presumption of denial. | 72 FR 38008, 07/12/07. |
| | Shahid Hemmat Industrial Group (a.k.a. "SHIG"), Damavand Tehran Highway, Tehran, Iran. | For all items subject to the EAR. (See §744.3 of the EAR). | Presumption of denial. | 72 FR 38008, 07/12/07. |
| | Simin Neda Industrial and Electrical Parts, No. 22, Second Floor, Amjad Bldg., Jomhoori Ave., Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |
| | Toos Electronics, 29, 1st Floor, Amjad Bldg., Jomhoori Ave., Tehran, Iran. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |
| | Vizneh Trading Company, 34 Mansour St., Motahari and ValiAsr Junction, Tehran, Iran, 1595747764. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |
| **IRELAND** | Mac Aviation Group, a.k.a. Mac Aviation Limited, Cloonmull House, Drumcliffe, County Sligo, Ireland. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 74 FR 35797, 7/21/09. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934105

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 22

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| IRELAND | Mac Aviation Nigeria, Cloonmull House, Drumcliffe, County Sligo, Ireland. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 74 FR 35797, 7/21/09. |
| | Sean Byrne, Cloonmull House, Drumcliffe, County Sligo, Ireland. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 74 FR 35797, 7/21/09. |
| | Sean McGuinn, Cloonmull House, Drumcliffe, County Sligo, Ireland. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 74 FR 35797, 7/21/09. |
| | Thomas McGuinn a.k.a. Tom McGuinn, Cloonmull House, Drumcliffe, County Sligo, Ireland. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 74 FR 35797, 7/21/09. |
| ISRAEL | Ben Gurion University Israel. | For computers above the Tier 3 level described in §742.12(b)(3)(i)(B). | Case-by-case basis. | 62 FR 4910, 2/3/97 65 FR 12919, 03/10/00. |
| | Nuclear Research Center at Negev Dimona, Israel. | For all items subject to the EAR. | Case-by-case basis. | 62 FR 35334, 6/30/97. |
| KUWAIT | Advanced Technology General Trading Company, Hawalli, Bin Khaldoun St., Fadhalah Complex, Mizzanin, Office #4, P.O. Box 22682, Safat, 13087, Kuwait. (See alternate address under U.A.E.). | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934106

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 23

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| KUWAIT | Abubakr Abuelazm, Hawalli, Bin Khaldoun St., Fadhalah Complex, Mizzanin, Office #4, P.O. Box 22682, Safat, 13087, Kuwait  (See alternate address under U.A.E.). | For all items subject to the EAR.  (See §744.11 of the EAR) | Presumption of denial. | 73 FR 54507, 9/22/08. |
| LEBANON | EKT Electronics,  1st floor, Hujij Building, Korniche Street, P.O. Box 817 No. 3, Beirut, Lebanon  (See alternate address under Syria). | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |
| | Mohammed Katranji, 1st floor, Hujij Building, Korniche Street, P.O. Box 817 No. 3, Beirut, Lebanon (See alternate address under Syria). | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |
| MALAYSIA | Ace Hub System, No. 15, Jalan PJS 11/16, Taman Bandar Sunway, 46150 Petaling Jaya, Selangor, Malaysia. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54507, 9/22/08. |
| | Ahmad Rahzad, a.k.a., Saeb Karim, 27-06, Amcorp Bldg, Jalan 18, Persiaran Barat, Petaling Jaya, 46050 Selangor, Malaysia  (See alternate address under Iran). | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08. |
| | Alex Ramzi, Suite 33-01, Menara Keck Seng, 203 Jalan Bukit Bintang, Kuala Lumpur, Malaysia 55100. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |
| | Amir Ghasemi, Suite 33-01, Menara Keck Seng, 203 Jalan Bukit Bintang, Kuala Lumpur, Malaysia 55100. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934107

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 24

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| **MALAYSIA** | Analytical Solutions, #GB (Ground Floor), Pearl Tower, O.G. Heights, Jalan Awan Cina, 58200 Kuala Lumpur, Malaysia. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08 73 FR 74001, 12/5/08. |
| | Ann Teck Tong, 97C, Jalan Kenari 23, Puchong Jaya, Puchong, Selangor, Malaysia Suite D23, Tkt. 2, Plaza Pekeliling, Jalan Tun Razak, Kuala Lumpur, Wilayah, Peresekkutuan, Malaysia. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08. |
| | Antcorp System, 5-02 Wisma Pantai, Jalan Wisma Pantai 12200 Butterworth, Penang, Malaysia; 27-G Lorong Kelasah 2, Tamen Kelasah 13700 Seberang Jaya, Penang, Malaysia; and No. 9 Jalan 3/4C Desa Melawati 53100 Kuala Lumpur, Malaysia. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08 74 FR 8184, 02/24/2009. |
| | Brian Kaam, a.k.a., Kaam Chee Mun, No. 15, Jalan PJS 11/16, Taman Bandar Sunway, 46150 Petaling Jaya, Selangor, Malaysia. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08. |
| | East Tech, Malaysia. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934108

Control Policy: End-User and End-Use Based                                    Supplement No. 4 to Part 744 – page 25

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---------|--------|---------------------|----------------------|---------------------------|
| MALAYSIA | Eco Biochem SDN BHD, No. 15, Jalan PJS 11/16, Taman Bandar Sunway, 46150 Petaling Jaya, Selangor D.E., Malaysia. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08. |
| | Evertop Services Sdn Bhd, Suite 33-01, Menara Keck Seng, 203 Jalan Bukit Bintang, Kuala Lumpur, Malaysia 55100. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |

USAO_SHIH_00934109

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 26

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| MALAYSIA | Festsco Marketing SDN BHD, 97C, Jalan Kenari 23, Puchong Jaya, Puchong, Selangor, Malaysia and Suite D23, Tkt. 2, Plaza Pekeliling, Jalan Tun Razak; Kuala Lumpur, Wilayah Persekutuan, Malaysia. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08. |
| | Majid Kakavand, Suite 33-01, Menara Keck Seng, 203 Jalan Bukit Bintang, Kuala Lumpur, Malaysia 55100. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |
| | Majid Seif, a.k.a., Mark Ong and Matti Chong,   27-06 Amcorp Building, Jalan 18, Persiaran Barat 46050 Petaling Jaya, Selangor, Malaysia. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08. |
| | Mohd Ansari, 5-02 Wisma Pantai, Jalan Wisma Pantai 12200 Butterworth, Penang, Malaysia; 27-G Lorong Kelasah 2, Tamen Kelasah 13700 Seberang Jaya, Penang Malaysia; and No. 9 Jalan 3/4C Desa Melawati 53100 Kuala Lumpur Malaysia. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08 73 FR 74001, 12/5/08 74 FR 8184, 02/24/2009. |
| | Nexus Empire, a.k.a., Vast Solution 2706, Amcorp Bldg., Jalan Persiaran Barat, Petaling Jaya, Selangor, Malaysia. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934110

**Control Policy: End-User and End-Use Based**                    Supplement No. 4 to Part 744 – page 27

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---------|--------|---------------------|----------------------|---------------------------|
| **MALAYSIA** | Vast Solution Sdn Bhd., 27-06 Amcorp Building, Jalan 18, Persiaran Barat, 46050 Petaling Jaya, Selangor, Malaysia. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08. |
| | VTE Industrial Automation SDN BHD, 97C, Jalan Kenari 23, Puchong Jaya, Puchong, Selangor, Malaysia. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08. |
| **PAKISTAN** | Abdul Qader Khan Research Laboratories, a.k.a. Khan Research Laboratories (KRL), a.k.a. Engineering Research Laboratories (ERL), Kahuta. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |

**Export Administration Regulations**                                      **January 13, 2010**

USAO_SHIH_00934111

Control Policy: End-User and End-Use Based                                    Supplement No. 4 to Part 744 – page 28

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| PAKISTAN | Al Technique Corporation of Pakistan, Ltd. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |
| | Allied Trading Co. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322 11/19/98 65 FR 14444 03/17/00 66 FR 50090 10/01/01 |
| | ANZ Importers and Exporters, Islamabad. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |
| | Defence Science and Technology Organization (DESTO), Rawalpindi. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |

Export Administration Regulations                                                    January 13, 2010

USAO_SHIH_00934112

Control Policy: End-User and End-Use Based

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---------|--------|---------------------|----------------------|---------------------------|
| PAKISTAN | High Technologies, Ltd., Islamabad. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |
| | Lastech Associates, Islamabad. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |
| | Machinery Master Enterprises, Islamabad. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934113

Control Policy: End-User and End-Use Based                    Supplement No. 4 to Part 744 – page 30

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| PAKISTAN | Maple Engineering Pvt. Ltd. Consultants, Importers and Exporters. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |
| | Orient Importers and Exporters, Islamabad. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |
| | **Pakistan Atomic Energy Commission (PAEC),** and the following subordinate entities:<br><br>National Development Complex (NDC) Nuclear reactors (including power plants), fuel reprocessing and enrichment facilities, all uranium processing, conversion and enrichment facilities, heavy water production facilities and any collocated ammonia plants Pakistan Institute for Nuclear Science and Technology (PINSTECH). | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |

Export Administration Regulations                                    January 13, 2010

USAO_SHIH_00934114

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 31

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| PAKISTAN | People's Steel Mills, Karachi. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |
| | Prime International. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |
| | Space and Upper Atmospheric Research Commission (SUPARCO). | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |
| | Technical Services, Islamabad. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934115

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 32

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---------|--------|---------------------|----------------------|---------------------------|
| PAKISTAN | The Tempest Trading Company, Islamabad. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |
| | Unique Technical Promoters. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |
| | Wah Chemical Product Plant. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 66 FR 50090, 10/01/01. |
| | Wah Munitions Plant, a.k.a. Explosives Factory, Pakistan Ordnance Factories (POF). | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98 65 FR 14444, 03/17/00 66 FR 50090, 10/01/01. |
| RUSSIA | All-Russian Scientific Research Institute of Technical Physics,(a.k.a. VNIITF, Chelyabinsk-70, All-Russian Research Institute of Technical Physics, ARITP, Russian Federal Nuclear Center) located in either Snezhinsk or Kremlev (Sarov). | For all items subject to the EAR. | Case-by-case basis. | 62 FR 35334, 6/30/97 66 FR 24267, 5/14/01. |

Export Administration Regulations

**January 13, 2010**

USAO_SHIH_00934116

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 33

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| RUSSIA | All-Union Scientific Research Institute of Experimental Physics, (a.k.a. VNIIEF, Arzamas-16, Russian Federal Nuclear Center, All Russian Research Institute of Experimental Physics, ARIEP, Khariton Institute) located in either Snezhinsk or Kremlev (Sarov). | For all items subject to the EAR. | Case-by-case basis. | 62 FR 35334, 6/30/97 66 FR 24267 5/14/01. |
| | Baltic State Technical University, 1/21, 1-ya Krasnoarmeiskaya Ul., 198005, St. Petersburg. | For all items subject to the EAR (see §744.10 of the EAR). | Presumption of denial. | 63 FR 40363, 7/29/98. |
| | Glavkosmos, 9 Krasnoproletarskaya St., 103030 Moscow. | For all items subject to the EAR (see §744.10 of the EAR). | Presumption of denial. | 63 FR 40363, 7/29/98. |
| | Medeleyev University of Chemical Technology of Russia (including at 9 Miusskaya Sq. Moscow 125047, Russia). | For all items subject to the EAR (see §744.10 of the EAR). | Presumption of denial. | 64 FR 14606, 3/26/99. |
| | Ministry for Atomic Power of Russia (any entities, institutes, or centers associated with) located in either Snezhinsk or Kremlev (Sarov). | For all items subject to the EAR. | Case-by-case basis. | 62 FR 35334, 6/30/97 66 FR 24267, 5/14/01. |
| | Moscow Aviation Institute (MAI) (including at 4 Volokolamskoye Shosse, Moscow 125871, Russia). | For all items subject to the EAR (see §744.10 of the EAR). | Presumption of denial. | 64 FR 14606, 3/26/99. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934117

Control Policy: End-User and End-Use Based                                    Supplement No. 4 to Part 744 – page 34

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| RUSSIA | Tula Instrument Design Bureau (all locations, including at Tula 300001, Russia) (§744.20 of the EAR). | All items subject to the EAR having a classification other than EAR99; no License Exceptions available. | Presumption of Denial. | 70 FR 10867, 03/07/05. |
| SINGAPORE | Brian Douglas Woodford, 1 Scotts Road, Suite 25-06 Shaw Centre, Singapore 228208 (See alternate address under the United Kingdom). | For all items subject to the EAR. (See §744.11 of the EAR) . | Presumption of denial. | 73 FR 74001, 12/5/08. |
| | Cyberinn PTE LTD, 1 Rochor Canal Road, #06-07 Sim Lim Square, 188504, Singapore. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08. |
| | Gryphon Aerospace, 36 Lorong N Telok Kurau Unit #03-03, Singapore 425160. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 74001, 12/5/08. |
| | Microsun Electronics Pte., Ltd, Sim Lim Tower, 10 Jalan Besar, Singapore 208787. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |
| | Monarch Aviation, 1 Scotts Road, Suite 25-06 Shaw Centre, Singapore 228208. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 74001, 12/5/08. |
| | Opto Electronics Pte. Ltd, Suite 11-08, Sim Lim Tower, 10 Jalan Besar, Singapore 208787. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 75 FR 1699, 1/13/10. |

Export Administration Regulations                                                        January 13, 2010

USAO_SHIH_00934118

Control Policy: End-User and End-Use Based                                    Supplement No. 4 to Part 744 – page 35

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| SINGAPORE | Strive Components, Block 10 Toa Payoh Industrial Park Lor 8 #01-1221, Singapore, 319062. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08. |
| | Synoptics Imaging Systems Pte Ltd., 12 Lor Bakar Batu #06-09, Singapore, 348745. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54508, 9/22/08. |
| | Yip Kum Kuan, 36 Lorong N Telok Kurau, Unit #03-03, Singapore 425160. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 74001, 12/5/08. |
| SOUTH KOREA | WASTEC, Inc., a.k.a., With Advanced Systemic Technology, Room 3303, 3304, Na-Dong Chungang Circulation Complex, #1258, Gurobon-Dong, Guro-gu, Seoul, South Korea. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54509, 9/22/08. |
| SYRIA | EKT Electronics, 1st floor, Abbasieh Building, Hijaz Street, P.O. Box 10112, Damascus, Syria (See alternate address under Lebanon). | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54509, 9/22/08. |
| | Encyclopedia Electronics Center, Musalam Al-Baroudi Street, Halbouni, Damascus, Syria. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54509, 9/22/08. |
| | Higher Institute of Applied Science and Technology (HIAST). | For all items subject to the EAR. (see §744.3 of the EAR). | Presumption of denial. | 70 FR 11861, 3/10/05. |

Export Administration Regulations                                                      January 13, 2010

USAO_SHIH_00934119

Control Policy: End-User and End-Use Based                                    Supplement No. 4 to Part 744 – page 36

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| **SYRIA** | Industrial Establishment of Defense (IED). | For all items subject to the EAR. (see §744.3 of the EAR). | Presumption of denial. | 70 FR 11861, 3/10/05. |
| | Mohammed Katranji, 1st floor, Abbasieh Building, Hijaz Street, P.O. Box 10112, Damascus, Syria; (See alternate address under Lebanon). | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54509, 9/22/08. |
| | National Standards and Calibration Laboratory (NSCL). | For all items subject to the EAR. (see §744.3 of the EAR). | Presumption of denial. | 70 FR 11861, 3/10/05. |
| | Scientific Studies and Research Center (SSRC). | For all items subject to the EAR. (see §744.3 of the EAR). | Presumption of denial. | 70 FR 11861, 3/10/05. |
| **UNITED ARAB EMIRATES** | A.H. Shamnad, P.O. Box 42340, Dubai, U.A.E.; and No. 3-4 Sharafia Ahmed Ali Building, Al Nakheel, Deira, Dubai 396, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54509, 9/22/08. |
| | Abubakr Abuelazm, Dubai, U.A.E. (See alternate address under Kuwait). | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54509, 9/22/08. |

Export Administration Regulations                                                              January 13, 2010

USAO_SHIH_00934120

Control Policy: End-User and End-Use Based                                    Supplement No. 4 to Part 744 – page 37

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| UNITED ARAB EMIRATES | Advanced Technology General Trading Company, Dubai, U.A.E. (See alternate address under Kuwait). | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54509, 9/22/08. 73 FR 74001, 12/5/08. 74 FR 35797, 7/21/09. |
| | Al-Faris, RAK Free Zone, P.O. Box 10559, Ras Al Khaimah, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54509, 9/22/08. |
| | Ali Akbar Yahya, 505 Siraj Building 17B Street, Mankhool, Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR) | Presumption of denial. | 73 FR 54509, 9/22/08. |
| | Ali Reza Divanizadeh, Al Ras Center Building, Behind Al Ras Hotel, Shop No. B-05, P.O. Box 5680, Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54509, 9/22/08. |
| | Amir Mohammad Zahedi, RAK Free Zone, P.O. Box 10559, Ras Al Khaimah, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54509, 9/22/08. |
| | Atlinx Electronics, Flat 401- Bin Yas Center - Al Maktum Road, P.O. Box 42340, Dubai, U.A.E.; and Shops 3-4, Sharafia Ahmed Ali Building, al-Nakheel, Deira, Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54509, 9/22/08. |

Export Administration Regulations                                                  January 13, 2010

USAO_SHIH_00934121

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 38

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| UNITED ARAB EMIRATES | Danoush Trading Company, No. 104, Beside Kheibar Hotel, Morshed Market St., Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54509, 9/22/08. |
| | Divanizadeh General Trading Company, Al Ras Center Building, Behind Al Ras Hotel, Shop No. B-05, P.O. Box 5680, Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54510, 9/22/08. |
| | Farrokh Nia Yaghmaei, a.k.a., Farrokh Nia Yaghmayi, Flat 401- Bin Yas Center - Al Maktum Road, P.O. Box 42340, Dubai, U.A.E.; and Shops 3-4, Sharafia Ahmed Ali Building, al-Nakheel, Deira, Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54510, 9/22/08. |

Export Administration Regulations

January 13, 2010

USAO_SHIH_00934122

**Control Policy: End-User and End-Use Based**                                      Supplement No. 4 to Part 744 – page 39

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| **UNITED ARAB EMIRATES** | H. Ghasir, Flat 401- Bin Yas Center - Al Maktum Road, P.O. Box 42340, Dubai, U.A.E.; and Shops 3-4, Sharafia Ahmed Ali Building, al-Nakheel, Deira, Dubai, U.A.E. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54510, 9/22/08. |
| | Hamed Al Fahid Trading Company, Shop No. 3-4 Ahmed Ali Bldg., Al Jalel, Deira, Dubai , U.A.E. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54510, 9/22/08. |
| | Hamed Athari, No. 3-4 Sharafia Ahmed Ali Building, Al Nakheel, Deira, Dubai 396, U.A.E. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54510, 9/22/08. |
| | Majidco Micro Electronics, Flat 401- Bin Yas Center - Al Maktum Road, P.O. Box 42340, Dubai, U.A.E.; and Shops 3-4, Sharafia Ahmed Ali Building, al-Nakheel, Deira, Dubai, U.A.E. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54510, 9/22/08. |
| | Mayrow General Trading, Flat 401- Bin Yas Center - Al Maktum Road, P.O. Box 42340, Dubai, UAE; Shops 3-4, Sharafia Ahmed Ali Building, al-Nakheel, Deira, Dubai, U.A.E.; P.O. Box 42340, Deira, Dubayy, U.A.E. and P.O. Box 171978, Deira, Dubayy, U.A.E. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54510, 9/22/08. |
| | Mayrow Technics Co., No. 3-4 Sharafia Ahmed Ali Building, Al Nakheel, Deira, Dubai 396, U.A.E. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54510, 9/22/08. |
| | Mehdi Rafie, Shop No. 3 & 4, Sharafia Ahmed Ali Bldg., Al Nakheel St., Deira, P.O. Box 171978, Dubai, U.A.E. | For all items subject to the EAR.  (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54510, 9/22/08. |

**Export Administration Regulations**                                                      **January 13, 2010**

USAO_SHIH_00934123

Control Policy: End-User and End-Use Based

Supplement No. 4 to Part 744 – page 40

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| UNITED ARAB EMIRATES | Mehran Kamalinia, a.k.a., Ronald Simon, Shop No. 3 & 4, Sharafia Ahmed Ali Bldg., Al Nakheel St., Deira, P.O. Box 171978, Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54510, 9/22/08. |
| | Micatic General Trading, Flat 401- Bin Yas Center - Al Maktum Road, P.O. Box 42340, Dubai, U.A.E.; and Shops 3-4, Sharafia Ahmed Ali Building, al-Nakheel, Deira, Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54510, 9/22/08. |
| | Micro Middle East Electronics, Flat 401- Bin Yas Center - Al Maktum Road, P.O. Box 42340, Dubai, U.A.E.; and Shops 3-4, Sharafia Ahmed Ali Building, al-Nakheel, Deira, Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54510, 9/22/08. |
| | Mohsen Saghafi, Shop No. 3 & 4, Sharafia Ahmed Ali Bldg., Al Nakheel St., Deira, P.O. Box 171978, Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54510, 9/22/08. |

USAO_SHIH_00934124

Control Policy: End-User and End-Use Based                                      Supplement No. 4 to Part 744 – page 41

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| **UNITED ARAB EMIRATES** | Mostafa Salehi, No. 308, 3rd Floor, Rafi Center, Al Nakheel, Deira, Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54511, 9/22/08. |
| | Narinco, Flat 401- Bin Yas Center - Al Maktum Road, P.O. Box 42340, Dubai, U.A.E.; and Shops 3-4, Sharafia Ahmed Ali Building, al-Nakheel, Deira, Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54511, 9/22/08. |

Export Administration Regulations                                               **January 13, 2010**

USAO_SHIH_00934125

Control Policy: End-User and End-Use Based                                    Supplement No. 4 to Part 744 – page 42

| COUNTRY | ENTITY | LICENSE REQUIREMENT | LICENSE REVIEW POLICY | FEDERAL REGISTER CITATION |
|---|---|---|---|---|
| **UNITED ARAB EMIRATES** | Neda Overseas Electronics L.L.C., No. 308, 3rd Floor, Rafi Center, Al Nakheel, Deira, Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54511, 9/22/08. |
| | Pyramid Technologies, P.O. Box 42340, Dubai, U.A.E.; and No. 3-4, Sharafia Ahmed Ali Building, Al Nakheel, Deira, Dubai 396, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54511, 9/22/08. |
| | S. Basheer, No. 3-4 Sharafia Ahmed Ali Building, Al Nakheel, Deira, Dubai 396, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54511, 9/22/08. |
| | Sayed-Ali Hosseini, 201 Latifah Building, Al Maktoum St., Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR) | Presumption of denial. | 73 FR 54511, 9/22/08. |
| | Shaji Muhammed Basheer, Shop No. 3 & 4, Sharafia Ahmed Ali Bldg., Al Nakheel St., Deira, P.O. Box 171978, Dubai, U.A.E. | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 54511, 9/22/08. |
| **UNITED KINGDOM** | Brian Douglas Woodford (See alternate address under Singapore). | For all items subject to the EAR. (See §744.11 of the EAR). | Presumption of denial. | 73 FR 74001, 12/5/08. |
| | Farshid Gillardian, a.k.a., Isaac Gill, Isaac Gillardian, London, United Kingdom. | For all items subject to the EAR. (See §744.11 of the EAR) | Presumption of denial. | 73 FR 74001, 12/5/08. |
| | MCES, London, United Kingdom. | For all items subject to the EAR. (See §744.11 of the EAR) | Presumption of denial. | 73 FR 74001, 12/5/08. |

Export Administration Regulations                                            January 13, 2010

USAO_SHIH_00934126

# EXHIBIT E

BIS 002

## Instructions

1.    Step 1

Figure out whether you need an export license. Only a select number of items require an export license. To find out whether the item you are exporting needs an export license, you need to locate the item's Export Control Classification Number, also referred to as ECCN, on the Commerce Control List. To do so, you can contact the Bureau of Industry and Security of the Department of Commerce, and they will walk you through the process. You can contact the BIS offices in Washington, DC at (202) 482-4811 or their Newport Beach location at (949) 660-0144.

2.    Step 2

Apply for the export license with help from a BIS specialist. You can also find more information on the required forms in the application process at BIS website. Click on the "Export Control Basics" in the left hand panel. On that page, you'll find all the steps you must take to figure out if you need to apply for an export license and the information for doing so.

3.    Step 3

Contact the Trade Information Center of the U.S. Government whenever you have a question. You can contact them at (800) USA-TRADE. If you are dealing with countries such as Cuba, Iran, Libya and Sudan, be sure to contact the Office of Foreign Assets Control at the U.S. Department of Treasury at (800) 540-6322.

4.    Step 4

Use a service to help you navigate the United States' export laws, such as the service offered at Exportfolio.com. They can help you determine the ECCN for your item and can tell you whether you need an export license.

USA_SHIH_00855227

## Summary of Steps to Take to Process Your Export

- Ensure that your export is under U.S. Department of Commerce jurisdiction.
- Classify your item by reviewing the Commerce Control List.
- If your item is classified by an Export Control Classification Number (ECCN), identify the Reasons for Control on the Commerce Control List.
- Cross-reference the ECCN Controls against the Commerce Country Chart to see if a license is required. If yes, determine if a License Exception is available before applying for a license.
- Ensure that no proscribed end-users or end-uses are involved with your export transaction. If proscribed end-users or end-uses are involved, determine if you can proceed with the transaction or must apply for a license.
- Export your item using the correct ECCN and the appropriate symbol (e.g., NLR, license exception, or license number and expiration date) on your export documentation (e.g., Shipper's Export Declaration).

# Introduction to

# Commerce Department

# Export Controls

## Overview

The Bureau of Industry and Security (BIS) is responsible for implementing and enforcing the Export Administration Regulations (EAR), which regulate the export and reexport of most commercial items. We often refer to the items that BIS regulates as "dual-use" - items that have both commercial and military or proliferation applications - but purely commercial items without an obvious military use are also subject to the EAR.

The EAR do not control all goods, services, and technologies. Other U.S. government agencies regulate more specialized exports. For example, the U.S. Department of State has authority over defense articles and defense services. A list of other agencies involved in export controls can be found on this Web site or in Supplement No. 3 to Part 730 of the EAR which is available on the Government Printing Office Web site.

This page is designed to give people who are new to exporting, and, in particular, new to export controls, a general understanding of our regulations and how to use them. However, nothing provided here can substitute for consulting the EAR. The EAR include answers to frequently asked questions, detailed step-

# Introduction to
# Commerce Department
# Export Controls

## Overview

The Bureau of Industry and Security (BIS) is responsible for implementing and enforcing the Export Administration Regulations (EAR), which regulate the export and reexport of most commercial items. We often refer to the items that BIS regulates as "dual-use" - items that have both commercial and military or proliferation applications - but purely commercial items without an obvious military use are also subject to the EAR.

The EAR do not control all goods, services, and technologies. Other U.S. government agencies regulate more specialized exports. For example, the U.S. Department of State has authority over defense articles and defense services. A list of other agencies involved in export controls can be found on this Web site or in Supplement No. 3 to Part 730 of the EAR which is available on the Government Printing Office Web site.

This page is designed to give people who are new to exporting, and, in particular, new to export controls, a general understanding of our regulations and how to use them. However, nothing provided here can substitute for consulting the EAR. The EAR include answers to frequently asked questions, detailed step-by-step instructions for determining if a transaction is subject to the regulations, how to request a commodity classification or advisory opinion, and how to apply for a license. In using the EAR, you may want to first look at Part 732 for the steps you follow to determine your obligations.

If you would like to review a specific part of the EAR referenced in this document, go to the on-line EAR database on the EAR Web site maintained by the Government Printing Office.

> **Note!** The EAR contain provisions relating to matters not discussed in this short overview. Two examples of important concepts not discussed here are controls on the activities of U.S. persons in support of proliferation programs (see EAR §744.6) and the antiboycott provisions contained in EAR §760.

## What Is an Export?

Any item that is sent from the United States to a foreign destination is an export. "Items" include commodities, software or technology, such as clothing, building materials, circuit boards, automotive parts, blue prints, design plans, retail software packages and technical information.

USA_SHIH_00855234

How an item is transported outside of the United States does not matter in determining export license requirements. For example, an item can be sent by regular mail or hand-carried on an airplane. A set of schematics can be sent via facsimile to a foreign destination, software can be uploaded to or downloaded from an Internet site, or technology can be transmitted via e-mail or during a telephone conversation. Regardless of the method used for the transfer, the transaction is considered an export for export control purposes. An item is also considered an export even if it is leaving the United States temporarily, if it is leaving the United State but is not for sale, (e.g. a gift) or if it is going to a wholly-owned U.S. subsidiary in a foreign country. Even a foreign-origin item exported from the United States, transmitted or transshipped through the United States, or being returned from the United States to its foreign country of origin is considered an export. Finally, release of technology or source code subject to the EAR to a foreign national in the United States is "deemed" to be an export to the home country of the foreign national under the EAR.

## How to Determine If You Need a Commerce Export License

A relatively small percentage of total U.S. exports and reexports require a license from BIS. License requirements are dependent upon an item's technical characteristics, the destination, the end-user, and the end-use. You, as the exporter, must determine whether your export requires a license. When making that determination consider:

- What are you exporting?
- Where are you exporting?
- Who will receive your item?
- What will your item be used for?

## What are you exporting?

### The Export Control Classification Number and the Commerce Control List

| Commerce Control List Categories |
|---|
| 0 = Nuclear materials, facilities and equipment (and miscellaneous items) |
| 1 = Materials, Chemicals, Microorganisms and Toxins |
| 2 = Materials Processing |
| 3 = Electronics |
| 4 = Computers |
| 5 = Telecommunications and Information Security |
| 6 = Sensors and Lasers |
| 7 = Navigation and Avionics |
| 8 = Marine |

USA_SHIH_00855235

A key in determining whether an export license is
needed from the Department of Commerce is



9 = Propulsion Systems, Space Vehicles, and Related
Equipment

knowing whether the item you are intending to export has a specific Export Control Classification Number
(ECCN). The ECCN is an alpha-numeric code. e.g., 3A001, that describes a particular item or type of item,
and shows the controls placed on that item. All ECCNs are listed in the Commerce Control List (CCL)
(Supplement No. 1 to Part 774 of the EAR) which is available on the Government Printing Office Web site.
The CCL is divided into ten broad categories, and each category is further subdivided into five product
groups. The CCL is available on the EAR Website.

**Five Product Groups**

A. Systems, Equipment and
Components
B. Test, Inspection and Production
Equipment
C. Material
D. Software
E. Technology

3 = Electronics
A = Systems, Equipment
& Components

3A 001

## Classifying Your Item

The proper classification of your item is essential to
determining any licensing requirements under the Export
Administration Regulations (EAR). You may classify the
item on your own, check with the manufacturer, or submit a
classification request to have BIS determine the ECCN for
you.

**EXAMPLE**

Assume that you have polygraph equipment
that is used to help law enforcement
agencies. What would be your ECCN? Start
by looking in the Commerce Control List
under the category of electronics (Category
3) and product group which covers
equipment (Product Group A). Then read
through the list to find whether your item is
included in the list. In this example the item
is 3A981 as shown below.

When reviewing the CCL to determine if your item is specified by an ECCN, you will first need to
determine in which of the ten broad categories of the Commerce Control List your item is included and
then consider the applicable product group.

See additional information on determining your ECCN.

3A981 Polygraphs (except biomedical recorders designed for use in medical
facilities for monitoring biological and neuro physical responses); fingerprint
analyzers, cameras and equipment, n.e.s.; automated fingerprint and identification
retrieval systems, n.e.s.; psychological stress analysis equipment; electronic

USA_SHIH_00855236

monitoring restraint devices; and specially designed parts and accessories, n.e.s.

**License Requirements**

Reason for Control: CC

| **Control(s)** | **Country Chart** |
|---|---|
| CC applies to entire entry | CC Column 1 |

**License Exceptions**

LVS: N/A
GBS: N/A
CIV: N/A

**List of Items Controlled**

Unit: Equipment in number
Related Controls: N/A
Related Definitions: N/A

The list of items controlled is contained in the ECCN heading.

## If Your Item is Not on the Commerce Control List - EAR99

If your item falls under U.S. Department of Commerce jurisdiction and is not listed on the CCL, it is designated as EAR99. EAR99 items generally consist of low-technology consumer goods and do not require a license in many situations. However, if your proposed export of an EAR99 item is to an embargoed country, to an end-user of concern or in support of a prohibited end-use, you may be required to obtain a license.

> EAR99 items subject to the EAR that are not elsewhere controlled by this CCL Category or in any other category in the CCL are designated by the number EAR99.

## Where are You Exporting?

Restrictions vary from country to country. The most restricted destinations are the embargoed countries and those countries designated as supporting terrorist activities, including Cuba, Iran, North Korea, Sudan, and Syria. There are restrictions on some products, however, that are worldwide.

## How to cross-reference the ECCN with the Commerce Country Chart

Once you have classified the item, the next step is to determine whether you need an export license based on the "reasons for control" of the item and the country of ultimate destination.
You begin this process by comparing the ECCN with the Commerce Country Chart (Supplement No. 1 to Part 738). The ECCNs and the Commerce Country Chart, taken together, define the items subject to export controls based solely on the technical parameters of the item and the country of ultimate destination.

USA_SHIH_00855237

Below the main heading for each ECCN entry, you will find "Reason for Control" (e.g., NS for National Security, AT for Anti-Terrorism, CC for Crime Control, etc.). Below this, you will find the "Country Chart" designator which shows the specific export control code(s) applied to your item (e.g., NS Column 2, AT Column 1, CC Column 1, etc.). These specific control codes for your ECCN need to be cross-referenced against the Commerce Country Chart.

### Commerce Country Chart
#### Reason for Control

| Countries | Chemical & Biological Weapons | | | Nuclear Nonproliferation | | National Security | | Missile Tech | Regional Stability | | Firearms Convention | Crime Control | | | Anti Terror |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | CB 1 | CB 2 | CB 3 | NP 1 | NP 2 | NS 1 | NS 2 | MT 1 | RS 1 | RS 2 | FC 1 | CC 1 | CC 2 | CC 3 | AT 1 |
| Guyana | X | X | | X | | X | X | X | X | | X | X | | X | |
| Haiti | X | X | | X | | X | X | X | X | | X | X | | X | |
| Honduras | X | X | | X | | X | X | X | X | | X | X | | X | |
| Hong Kong | X | X | | X | | X | X | X | X | | X | X | | X | |
| Hungary | X | | | | | X | | X | | | | | | | |
| Iceland | X | | | X | | X | | X | | | | | | | |
| India | X | X | X | X | X | X | X | X | X | | X | | | X | |
| Indonesia | X | X | | X | | X | X | X | X | | X | X | | X | |

If there is an "X" in the box based on the reason(s) for control of your item and the country of destination, a license is required, unless a License Exception is available. Part 742 of the EAR sets forth the license requirements and licensing policy for most reasons for control.

> **Example:**
>
> **Question:** You have polygraph equipment classified as 3A981 for export to Honduras. Would you be required to obtain an export license from the Department of Commerce before selling and shipping it to your purchaser?
>
> **Answer:** Yes. 3A981 is controlled for Crime Control (CC) reasons under CC Column 1 and the Country Chart shows that such items require a license for Honduras.

If there is no "X" in the control code column(s) specified under your ECCN and country of destination, you will not need an export license unless you are exporting to an end-user or end-use of concern.

> **Example:**
>
> **Question:** You have polygraph equipment classified as 3A981 for export to Iceland. Would you be required to obtain an export license from the Department of Commerce before selling and shipping it to your purchaser?
>
> **Answer:** No. As you can see from the Commerce Country Chart (above) 3A981 is controlled for Crime Control (CC) reasons under CC Column 1 and the Country Chart shows that such items do not require a license for Iceland unless you are exporting to an end-user or end-use of concern.

USA_SHIH_00855238

Although a relatively small percentage of all U.S. exports and reexports require a BIS license, virtually all exports and many reexports to embargoed destinations and countries designated as supporting terrorist activities require a license. These countries are Cuba, Iran, North Korea, Sudan, and Syria. Part 746 of the EAR describes embargoed destinations and refers to certain additional controls imposed by the Office of Foreign Assets Control of the Treasury Department.

## Who will receive your item?

Certain individuals and organizations are prohibited from receiving U.S. exports and others may only receive goods if they have been licensed, even items that do not normally require a license based on the ECCN and Commerce Country Chart or based on an EAR99 designation. You must be aware of the following lists:

Entity List - EAR Part 744, Supplement 4 - A list of organizations identified by BIS as engaging in activities related to the proliferation of weapons of mass destruction. Depending on your item, you may be required to obtain a license to export to an organization on the Entity List even if one is not otherwise required.

Treasury Department Specially Designated Nationals and Blocked Persons List - EAR Part 764, Supplement 3 - A list maintained by the Department of Treasury's Office of Foreign Assets Control comprising individuals and organizations deemed to represent restricted countries or known to be involved in terrorism and narcotics trafficking.

The Unverified List is composed of firms for which BIS was unable to complete an end-use check. Firms on the unverified list present a "red flag" that exporters have a duty to inquire about before making an export to them.

**Note!** Denied Persons - You may not participate in an export or reexport transaction subject to the EAR with a person whose export privileges have been denied by the BIS. A list of those firms and individuals whose export privileges have been denied is available on this Web site. Note that some denied persons are located within the United States. If you believe a person whose export privileges have been denied wants to buy your product in order to export it, you must not make the sale and should report the situation to BIS's Office of Export Enforcement. If you have questions about Denied Persons, you may contact BIS's Office of Enforcement Analysis at (202) 482-4255.

## What will your item be used for?

Some end-uses are prohibited while others may require a license. For example, you may not export to certain entities involved in the proliferation of weapons of mass destruction (e.g., nuclear, biological,

USA_SHIH_00855239

chemical) and the missiles to deliver them, without specific authorization, no matter what your item is. For more information on prohibited end- uses, please refer to Part 744 of the EAR.

## Ways to Export

Authorization to export is determined by the transaction: what the item is, where it is going, who will receive it, and what it will be used for. The majority of U.S. commercial exports do not require a license.

## NLR – ("No License Required")

Most exports from the United States do not require a license, and are therefore exported under the designation "NLR." Except in those relatively few transactions when a license requirement applies because the destination is subject to embargo or because of a proliferation end-use or end-user, no license is required when:

1. The item to be shipped is not on the CCL (i.e. it's EAR99); or
2. The item is on the CCL but there is no "X" in the box on the Country Chart under the appropriate reason for control column on the row for the country of destination. (See the country chart example above.)

In each of these situations, you would enter "NLR" on your export documents.

## License Exception

If a license is required for your transaction, a license exception may be available. License Exceptions, and the conditions on their use, are set forth in Part 740 of the EAR If your export is eligible for a license exception, you would use the designation of that license exception (e.g. LVS, GBS, TMP) on your export documents.

## License

If your item requires a license to be exported, you must apply to BIS for an export license. If your application is approved, you will receive a license number and expiration date to use on your export documents. A BIS-issued license is usually valid for two years. See "Applying for an Export License" for additional information.

## Where to Get Assistance

A good starting point for information on export licensing requirements and the regulations is to attend one of our export control seminars. A list of upcoming seminars is posted on this Web site.

USA_SHIH_00855240

For counseling assistance, you may call one of our export counselors at 202-482-4811 (Washington, DC) or 408-998-8806 (Northern California) or email us in Washington or California. You may also register to receive email notifications of upcoming seminars.

## Summary of Steps to Take to Process Your Export

- Ensure that your export is under U.S. Department of Commerce jurisdiction.
- Classify your item by reviewing the Commerce Control List.
- If your item is classified by an Export Control Classification Number (ECCN), identify the Reasons for Control on the Commerce Control List.
- Cross-reference the ECCN Controls against the Commerce Country Chart to see if a license is required. If yes, determine if a License Exception is available before applying for a license.
- Ensure that no proscribed end-users or end-uses are involved with your export transaction. If proscribed end-users or end-uses are involved, determine if you can proceed with the transaction or must apply for a license.
- Export your item using the correct ECCN and the appropriate symbol (e.g., NLR, license exception, or license number and expiration date) on your export documentation (e.g., Shipper's Export Declaration).

USA_SHIH_00855242

**EXHIBIT F**

amendment to the EAR, that a license is required for the export or reexport of items described in ECCN 6A003.b.3, 6A003.b.4.b, or 6A003.b.4.c to specified end-users, because BIS has determined that there is an unacceptable risk of diversion to the users or unauthorized incorporation into the 'military commodities' described in paragraph (a) of this section. Specific notice is to be given only by, or at the direction of, the Deputy Assistant Secretary for Export Administration. When such notice is provided orally, it will be followed by a written notice within two working days signed by the Deputy Assistant Secretary for Export Administration.

### (c) License review standard.

Applications for licenses required by this section will be reviewed by applying the policies that would be applied under the International Traffic in Arms Regulations (22 CFR Part 120 - 130).

### (d) Military end-user

In this section, the term "military end-user" means the national armed services (army, navy, marine, air force, or coast guard), as well as the national guard and national police, government intelligence or reconnaissance organizations, or any person or entity whose actions or functions are intended to support "military end-uses" as defined in § 744.17(d).

### (e) Exception

Shipments subject to the prohibitions in paragraphs (a) and (b) of this section that are consigned to and for the official use of the U.S. Government authorized pursuant to § 740.11(b)(2)(ii) of the EAR may be made under License Exception GOV. No other license exceptions apply to the prohibitions described in paragraphs (a) and (b) of this section.

## § 744.10 RESTRICTIONS ON CERTAIN ENTITIES IN RUSSIA

### (a)   General prohibition

Certain entities in Russia are included in Supplement No. 4 to this part 744 (Entity List). (See also §744.1(c) of the EAR.) A license is required, to the extent specified on the Entity List, to export, reexport or transfer (in-country) any item subject to the EAR to such entities.

### (b)   Exceptions

No License Exceptions apply to the prohibition described in paragraph (a) of this section.

### (c)   License review standard

Applications to export, reexport, or transfer (in-country) items subject to the EAR to these entities will be reviewed with a presumption of denial.

## § 744.11 LICENSE REQUIREMENTS THAT APPLY TO ENTITIES ACTING CONTRARY TO THE NATIONAL SECURITY OR FOREIGN POLICY INTERESTS OF THE UNITED STATES.

BIS may impose foreign policy export, reexport, and transfer (in-country) license requirements, limitations on availability of license exceptions, and set license application review policy based on the criteria in this section. Such requirements, limitations and policy are in addition to those set forth elsewhere in the EAR. License requirements, limitations on use of license exceptions and license application review policy will be imposed under this section by adding an entity to the Entity List (Supp. No. 4 to this part) with a reference to this section and by stating on the Entity List the license requirements and license application review policy that apply to that entity. BIS may remove an entity from the Entity List if it is no longer engaged in the

USAO_SHIH_01623822

activities described in paragraph (b) of this
section and is unlikely to engage in such
activities in the future. BIS may modify the
license exception limitations and license
application review policy that applies to a
particular entity to implement the policies of this
section. BIS will implement the provisions of
this section in accordance with the decisions of
the End-User Review Committee or, if
appropriate in a particular case, in accordance
with the decisions of the body to which the
End-User Review Committee decision is
escalated. The End-User Review Committee
will follow the procedures set forth in
Supplement No. 5 to this part.

### (a) *License requirement, availability of license exceptions, and license application review policy*

A license is required, to the extent specified on
the Entity List, to export, reexport, or transfer
(in-country) any item subject to the EAR to an
entity that is listed on the Entity List in an entry
that contains a reference to this section. License
exceptions may not be used unless authorized in
that entry. Applications for licenses required by
this section will be evaluated as stated in that
entry in addition to any other applicable review
policy stated elsewhere in the EAR.

### (b) *Criteria for revising the Entity List*

Entities for which there is reasonable cause to
believe, based on specific and articulable facts,
that the entity has been involved, is involved, or
poses a significant risk of being or becoming
involved in activities that are contrary to the
national security or foreign policy interests of the
United States and those acting on behalf of such
entities may be added to the Entity List pursuant
to this section. This section may not be used to
place on the Entity List any party to which
exports or reexports require a license pursuant to
§§ 744.12, 744.13, 744.14 or 744.18 of this part.
This section may not be used to place on the
Entity List any party if exports or reexports to
that party of items that are subject to the EAR are

prohibited by or require a license from another
U.S. government agency. This section may not
be used to place any U.S. person, as defined in
§772.1 of the EAR, on the Entity List.
Examples (1) through (5) of this paragraph
provide an illustrative list of activities that could
be contrary to the national security or foreign
policy interests of the United States.

(1)   Supporting persons engaged in acts of
terror.

(2)   Actions that could enhance the military
capability of, or the ability to support terrorism of
governments that have been designated by the
Secretary of State as having repeatedly provided
support for acts of international terrorism.

(3)   Transferring, developing, servicing,
repairing or producing conventional weapons in a
manner that is contrary to United States national
security or foreign policy interests or enabling
such transfer, service, repair, development, or
production by supplying parts, components,
technology, or financing for such activity.

(4)   Preventing accomplishment of an end use
check conducted by or on behalf of BIS or the
Directorate of Defense Trade Controls of the
Department of State by: precluding access to;
refusing to provide information about; or
providing false or misleading information about
parties to the transaction or the item to be
checked. The conduct in this example includes:
expressly refusing to permit a check, providing
false or misleading information, or engaging in
dilatory or evasive conduct that effectively
prevents the check from occurring or makes the
check inaccurate or useless. A nexus between
the conduct of the party to be listed and the
failure to produce a complete, accurate and useful
check is required, even though an express refusal
by the party to be listed is not required.

(5)   Engaging in conduct that poses a risk of
violating the EAR when such conduct raises
sufficient concern that the End-User Review
committee believes that prior review of exports,

USAO_SHIH_01623823

reexports, or transfers (in-country) involving the party and the possible imposition of license conditions or license denial enhances BIS's ability to prevent violations of the EAR.

## § 744.12 RESTRICTIONS ON EXPORTS AND REEXPORTS TO PERSONS DESIGNATED IN OR PURSUANT TO EXECUTIVE ORDER 13224 (SPECIALLY DESIGNATED GLOBAL TERRORIST) (SDGT)

BIS maintains restrictions on exports and reexports to persons designated in or pursuant to Executive Order 13224 of September 23, 2001 (Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism). These persons include individuals and entities listed in the Annex to Executive Order 13224, as well as persons subsequently designated by the Secretary of State or Secretary of the Treasury pursuant to criteria set forth in the order. Pursuant to Executive Order 13224, the Department of the Treasury's Office of Foreign Assets Control (OFAC) maintains 31 CFR part 594, the Global Terrorism Sanctions Regulations. OFAC announces the names of persons designated pursuant to Executive Order 13224 in the Federal Register and includes such persons in Appendix A to 31 CFR Chapter V, which lists persons subject to various sanctions programs administered by OFAC. The Department of State also announces the names of foreign persons designated pursuant to Executive Order 13224 in the Federal Register. All persons designated in or pursuant to Executive Order 13224 are identified in Appendix A to 31 CFR Chapter V by the bracketed initials [SDGT] and are also known as Specially Designated Global Terrorists (SDGTs).

### (a) License requirement(s)

(1) A license requirement applies to the export or reexport to an SDGT of any item subject to the EAR.

(2) To avoid duplication, U.S. persons are not required to seek separate authorization for an export or reexport to an SDGT of an item subject to both the EAR and OFAC's regulatory authority pursuant to Executive Order 13224. Therefore, if OFAC authorizes an export from the United States or an export or reexport by a U.S. person to an SDGT, no separate authorization from BIS is necessary.

(3) U.S. persons must seek authorization from BIS for the export or reexport to an SDGT of any item subject to the EAR that is not subject to OFAC's Global Terrorism Sanctions Regulations in 31 CFR Part 594.

(4) Non-U.S. persons must seek authorization from BIS for any export from abroad or reexport to an SDGT of any item subject to the EAR.

(5) Any export or reexport to an SDGT of any item subject to both the EAR and OFAC's regulatory authority pursuant to Executive Order 13224 and not authorized by OFAC is a violation of the EAR.

(6) Any export or reexport by a U.S. person to an SDGT of any item subject to the EAR that is not subject to regulation by OFAC and not authorized by BIS is a violation of the EAR. Any export from abroad or reexport by a non-U.S. person to an SDGT of any item subject to the EAR and not authorized by BIS is a violation of the EAR.

(7) These licensing requirements supplement any other requirements set forth elsewhere in the EAR.

### (b) Exceptions

No License Exceptions or other BIS authorization are available for any export or reexport to an SDGT of any item subject to the EAR.

### (c) Licensing Policy

USAO_SHIH_01623824