NICOLA T. HANNA
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
JUDITH A. HEINZ (Cal. Bar No. 176264)
Assistant United States Attorney
Senior Litigation Counsel, National Security Division
JAMES C. HUGHES (Cal. Bar No. 263878)
Assistant United States Attorney
Tax Division
MELANIE SARTORIS (Cal. Bar No. 217560)
WILLIAM M. ROLLINS (Cal. Bar No. 287007)
Assistant United States Attorneys
Terrorism and Export Crimes Section
KHALDOUN SHOBAKI (Cal. Bar No. 232864)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:   (213) 894-7280/5615/7407/0759
     Facsimile:   (213) 894-2927
     E-mail:   judith.heinz@usdoj.gov
               james.hughes2@usdoj.gov
               melanie.sartoris@usdoj.gov
               william.rollins@usdoj.gov
               khaldoun.shobaki@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 18-50(B)-JAK |
| Plaintiff, | GOVERNMENT'S STATEMENT RE COMMERCE CONTROL LIST AND ENTITY LIST IN RESPONSE TO COURT'S ORDER (DKT. 374); MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS |
| v. | |
| YI-CHI SHIH,<br>  aka "Yichi Shih,"<br>  aka "Yuqi Shi," et al, | Hearing Date: April 18, 2019<br>Hearing Time: 8:30 a.m.<br>Location:    Courtroom of the<br>             Hon. John A.<br>             Kronstadt |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Judith A. Heinz, James C. Hughes, Melanie Sartoris, William M. Rollins, and Khaldoun Shobaki, hereby files its statement, in response to the Court's order (Dkt. 374), describing what it intends to introduce at trial about the Commerce Control List/Commerce Country Chart and the Entity List.

This statement is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 11, 2019  Respectfully submitted,

NICOLA T. HANNA
United States Attorney

PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division

/s/ Judith A. Heinz

JUDITH A. HEINZ
JAMES C. HUGHES
MELANIE SARTORIS
WILLIAM M. ROLLINS
KHALDOUN SHOBAKI
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

The Second Superseding Indictment charges defendant Yi-Chi Shih ("defendant") and six named co-defendants with knowingly and willfully conspiring to violate the International Emergency Economic Powers Act ("IEEPA") in four ways:

1. conspiring to export items from the United States to the People's Republic of China ("PRC") without having first obtained the required licenses from the Department of Commerce ("DOC"),

2. conspiring to export items from the United States to Chengdu Gastone Technology Co., Ltd. ("CGTC") without having first obtained the required licenses from the DOC,

3. conspiring to export items from the United States to the PRC without filing Electronic Export Information ("EEI") through the Automated Export System ("AES"), and

4. conspiring to export items from the United States to CGTC without filing EEI through the AES. (Dkt. 223, at 2-29.)

With respect to ways 1 and 2 above, the government must prove the conspirators agreed:

- to export an item from the United States to the PRC without having first obtained the required license (way 1); **OR**

- to export an item from the United States to CGTC without having first obtained the required license (way 2).

The license requirement referenced in ways 1 and 2 stems from two different sources: (1) the Commerce Control List in coordination with the Commerce Country Chart (way 1), and (2) the Entity List (way 2).[1]

In response to the Court's order (Dkt. 374), the government describes below what evidence it intends to introduce at trial about the Commerce Control List/Commerce Country Chart and the Entity List and their purposes, including anticipated evidence about the context for why these lists are created. (See Dkt. 374, at 2.) The government does not include in this statement evidence about these lists that was seized from defendant's e-mail accounts, residence, and digital devices that it intends to introduce to prove defendant's knowledge and willfulness.

## II. The Purposes of the Export Control Provisions of the Export Administration Regulations

To provide context for the jury to understand the export control provisions, the government intends to introduce some testimony regarding their purpose, consistent with those purposes as stated in the Export Administration Regulations ("EAR"). The EAR states, "The export control provisions of the EAR are intended to serve the national security, foreign policy, non-proliferation of weapons of mass destruction, and other interests of the United States, which in many cases are reflected in international obligations or

---

[1] With respect to ways 3 and 4 above, the government must prove the conspirators agreed:
- to export an item from the United States to the PRC without filing EEI through the AES (way 3); **OR**
- to export an item from the United States to CGTC without filing EEI through the AES (way 4).

The EEI filing requirement referenced in ways 3 and 4 has two different sources: (1) the value of the item being exported, and/or (2) the existence of a licensing requirement.

2

arrangements." 15 C.F.R. § 730.6. The EAR states further, "Some controls are designed to restrict access to items subject to the EAR by countries or persons that might apply such items to uses inimical to U.S. interests." (Id.) The EAR continues, "These include controls designed to stem the proliferation of weapons of mass destruction and controls designed to limit the military and terrorism support capability of certain countries." (Id.)

### III. Commerce Control List/Commerce Country Chart Evidence

To prove the licensing requirement, the government intends to introduce testimony about one of the ways exports are controlled -- the Commerce Control List in coordination with the Commerce Country Chart. The U.S. Company B Monolithic Microwave Integrated Circuit Amplifiers ("MMICs") that defendant and his coconspirators obtained in December 2013 were controlled for export. Specifically, a license from the DOC was required before they could be exported lawfully from the United States to the PRC. The basis for the license requirement was the Commerce Control List and the Commerce Country Chart, both of which are contained in the EAR.

The Commerce Control List "includes items (i.e., commodities, software, and technology) subject to the export licensing authority of [the Bureau of Industry and Security]." 15 C.F.R. § 738.1(a)(1). The Commerce Control List (15 C.F.R. Pt. 774, Supp. 1) is organized by categories and Export Control Classification Numbers. Category 3 of the Commerce Control List contains licensing control information for electronics. Export Control Classification Number ("ECCN") 3A001.b.2 contains the licensing control information for MMICs.

3

(Exh. A.)² As Exhibit A shows, MMICs are controlled for export based on frequency range, fractional bandwidth, and peak saturated power output.

The licensing control information in the Commerce Control List is coordinated with the Commerce Country Chart, which "contains licensing requirements based on destination and Reason for Control." 15 C.F.R. § 738.1(a)(1); (see Exh. B).³ The Reasons for Control that applied to the U.S. Company B MMICs obtained by defendant in December 2013 were Anti-Terrorism, National Security, and Regional Stability. (See Dkt. 335, Exh. C.)⁴ An exporter must consult the Commerce Control List to determine any potential item-specific licensing requirement, and then cross-reference with the Commerce Country Chart to determine any country destination-specific licensing requirement. The Reasons for Control in the Commerce Country Chart further inform the exporter as to the applicability of any exceptions to the licensing requirement. In combination with the Commerce Control List ("CCL"), the Commerce Country Chart allows the public to determine whether a license is required for the export of items on the CCL to any country in the world. 15 C.F.R. § 738.1(b).

In December 2013, defendant and his coconspirators obtained from U.S. Company B four identical wafers that contained multiple MMICs,

---

² Attached hereto as government exhibit A is a true copy of the section of the Commerce Control List that pertains to MMICs.

³ Attached hereto as government exhibit B is a true copy of Commerce County Chart obtained from Westlaw.

⁴ For the Court's convenience, attached hereto as government exhibit C are true copies of the relevant licensing determinations made by Licensing Officer Carlos Monroy. These licensing determinations list both the ECCN number and the Reasons for Control. These licensing determinations were previously filed with the Court as Exhibit B, to Dkt. 335.

many of which were controlled for export based on their frequency range, fractional bandwidth, and peak saturated power output. To prove that a license from the DOC was required to export from the United States to the PRC these MMICs, the government will introduce at trial the testimony of a DOC licensing officer (Carlos Monroy).[5] The government expects that the DOC licensing officer will testify about the purpose, structure, and application of the EAR, including the Commerce Control List and the Commerce Country Chart (including the Reasons for Control), consistent with the above paragraphs. The government expects that the DOC licensing officer will also testify consistent with his attached licensing determinations (Exh. C) and the expert witness notices disclosed to the defense and filed previously with the Court. (See Dkt. 335, Exh. B, at 47-55; Dkt. 339-1, Exh. A, at 4; Dkt. 339-3, Exh. C, at 3; Dkt. 339-4, Exh. D, at 3.) Based on defendant's motions in limine, his proposed jury instructions, and his counsel's representations during court appearances, the government expects defendant will vigorously contest the application of the EAR to the items defendant and his coconspirators exported and conspired to export from the United States to the PRC. Therefore, a complete explanation of the EAR by a DOC licensing officer is essential for the jury to be able to understand the evidence, and intelligently apply the law to the facts.

---

[5] The government will also introduce the testimony of Christopher D. Nordquist, Ph.D., who will testify about the MMICs' frequency range, fractional bandwidth, and peak saturated power output.

5

## IV. Entity List Evidence

In March 2015, defendant and his coconspirators obtained from U.S. Company B an additional four wafers, containing multiple MMICs. All of the MMICs on these wafers were controlled for export from the United States to CGTC because CGTC and its associated entities -- QTC, CETC 29, and Tian Hung -- had been placed on the Entity List eight months earlier, on August 1, 2014.[6] To prove a DOC license had to be obtained prior to the export of these MMICs, the government intends to introduce testimony and exhibits about another way exports are controlled -- the Entity List.

To prove this license requirement, the government intends to introduce at trial (1) copies of the attached Federal Register publications,[7] and (2) testimony by a DOC licensing officer to establish the following:

1. The Entity List is a list on which foreign entities (including individuals and companies) are placed after a formal multi-agency review of information.[8] The criteria for adding an entity, or those acting on behalf of an entity, to the Entity List is reasonable cause to believe, based on specific and articulable facts,

---

[6] As alleged in the Second Superseding Indictment, CGTC built a semiconductor fabrication plant to manufacture MMICs -- the same technology that defendant conspired to export from the United States to the PRC illegally. QTC and CETC 29 financed CGTC's operations. Both before and after CGTC, QTC, and CETC 29 were placed on the Entity List, defendant was the President and a Technical Consultant at CGTC. Co-defendant Jieru Deng was a QTC General Manager and a Vice-President/General Manager at Tian Hang.

[7] For the Court's convenience, attached hereto as government exhibit D are true copies of the Federal Register publications. These Federal Register publications were previously filed with the Court as Exhibit A, to Dkt. 335.

[8] See 15 C.F.R. § 744 Supp. No. 4.

that the entity has been involved, is involved, or poses a significant risk of being or becoming involved, in activities that are contrary to the national security or foreign policy interests of the United States.[9]

2. On August 1, 2014, the United States government placed the following entities, among others, on the Entity List:

- Chengdu Gastone Technology Co., Ltd. ("CGTC"), in Chengdu, China;
- Qing'an International Trading Group, also known as Qing'an International Trading Group Company ("QTC"), in Beijing, China;
- China Electronics Technology Group Corporation 29 Research Institute, aka CETC 29th Research Institute, and China Southwest Electronic Equipment Research Institute (SWIEE) ("CETC 29"), in Chengdu, China; and
- Tian Hang Yang Pu Technology Investment Ltd. Co. ("Tian Hang") in Beijing, China.

These four entities were placed on the Entity List on the basis of their involvement in activities contrary to the national security and foreign policy interests of the United States -- specifically, the multi-agency committee determined it had reasonable cause to believe that all four companies had been involved in the illicit procurement of commodities and technologies for unauthorized military end use in China.[10] These four entities, CGTC, QTC, CETC 29, and Tian Hang, have been on the Entity List continuously from August 1, 2014 to the present.

---

[9] 15 C.F.R. § 744.11(b).
[10] See 79 FR 44684 (Aug. 1, 2014).

3. On March 21, 2016, the United States government modified the Entity List to add the alias "Chengdu Jiashi Technology Co." to the entity listing for CGTC.[11]

4. On August 1, 2018, the United States government modified the Entity List to add the additional alias "Chengdu HiWafer Semiconductor" to the entity listing for CGTC.[12]

5. For CGTC, QTC, CETC 29, and Tian Hang, placement on the Entity List imposed the requirement that a license be obtained from the United States Department of Commerce, Bureau of Industry and Security prior to the export, reexport, or transfer (in-country) of any item subject to the Export Administration Regulations, and denial of such a license was, and is, presumed.[13] The license requirements apply to any transaction in which items are to be exported, reexported, or transferred (in-country) to CGTC, QTC, CETC 29, or Tian Hang or in which any of these four entities act as purchaser, intermediate consignee, ultimate consignee, or end-user. In addition, no license exceptions have been available since August 1, 2014, for exports, reexports, or transfers (in-country) to any of these four entities.

The parties conferred about a stipulation covering the facts set forth in paragraphs 1-5 above but were unable to reach agreement. Given the depth of the dispute, and defendant's apparent intention to contest the consequences of placement on the Entity List, the government expects that a complete explanation of the Entity List by the DOC licensing officer, as well as the introduction of the Federal

---

[11] See 81 FR 14957 (Mar. 21, 2016).
[12] See 83 FR 37426 (Aug. 1, 2018).
[13] See 79 FR 44684 (Aug. 1, 2014).

Register publications, will be necessary for the jury to be able to understand, and make informed judgments about, the evidence.

### V. Additional Evidence Regarding the Commerce Control List and the Entity List Relevant to Defendant's Knowledge and Willfulness

The government has not included in this statement a description of the evidence referencing the Commerce Control List and the Entity List that was seized from defendant's e-mail accounts, residence, and digital devices. The government intends to introduce this evidence at trial to prove defendant's knowledge and willfulness -- his knowledge of export regulations and his knowledge that his conduct was unlawful. The government previously filed examples of this evidence with the Court. (See Dkt. 335, Exhs. C, D, E, and F.)

### VI. Conclusion

The government respectfully requests that this Court GRANT the government's motions in limine numbers one and two, and DENY defendant's motion in limine number 5.