SPERTUS, LANDES & UMHOFER, LLP
James W. Spertus (SBN 159825)
M. Anthony Brown (SBN 243848)
Christa L. Culver Wasserman (SBN 289128)
1990 South Bundy Drive, Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711
jspertus@spertuslaw.com
tbrown@spertuslaw.com
cwasserman@spertuslaw.com

Attorneys for Defendant
YI-CHI SHIH, PH.D.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YI-CHI SHIH, PH.D.,<br><br>Defendant. | Case No. CR 18-00050-JAK<br><br>**JOINT STATUS REPORT PURSUANT TO ORDER RE NINTH CIRCUIT ORDER** |

JOINT STATUS REPORT RE NINTH CIRCUIT ORDER

# JOINT STATUS REPORT PURSUANT TO ORDER REGARDING NINTH CIRCUIT ORDER

Pursuant to the Court's October 20, 2021 Order, Defendant Yi-Chi Shih, Ph.D., by and through his counsel of record, James W. Spertus, M. Anthony Brown, and Christa L. Culver Wasserman, and Plaintiff, United States of America, by and through its counsel of record, Assistant United States Attorneys Judith Heinz, James Hughes, Melanie Sartoris, Khaldoun Shobaki, and Robert Lester, hereby submit the following Joint Status Report regarding (1) whether, in light of the Ninth Circuit's October 7, 2021 order, "any modifications should be made to the present terms of release," and (2) "whether, given the pending appeal, one or both of the previously filed matters (Dkt. 916, 920), and/or the Government's Application for Issuance of a Writ of Continuing Garnishment (2:21-cv-07105-JAK, Dkt. 1), should be addressed at this time." (ECF 929, at 1.)

## I. DEFENSE POSITION

### A. Requested Bond Modifications

Dr. Shih respectfully requests that the Court modify the terms of his current bond (ECF 174, 597, 726) to remove the curfew (ECF 597), to permit travel for family functions and to national parks within the Ninth Circuit, and to remove the requirement that Dr. Shih obtain Court approval before transferring more than $20,000 (ECF 174). Both this Court and the Ninth Circuit have already found by clear and convincing evidence that Dr. Shih is not a flight risk. (ECF 904, at 5; ECF 924, at 1.) In making that finding, this Court noted Dr. Shih's "lengthy period of compliance with pre-sentencing terms and conditions"—which has spanned more than three years—as well as his continued "compliance notwithstanding the 235-month sentence recommended in the Presentence Report, which the Government adopted." (ECF 904, at 5.)

The curfew restriction serves no practical purpose at this stage of the proceedings and has become punitive. There are no restrictions prohibiting Dr. Shih from going to any particular place within the Central District, and he wears

an electronic ankle bracelet. Requiring him to return home at a particular time every day does not serve a legitimate purpose, and neither the government nor the Probation Office has ever articulated one. There is simply no risk of flight or community danger that is mitigated by the curfew requirement, especially post-sentencing now that the sentence the Court believes was proper has become known.

In addition, because the Court has not expressly authorized travel for family functions and to national parks, the government reflexively opposes all travel and the Pretrial Services Officer has therefore denied requests for travel, despite Dr. Shih's scrupulous compliance with his reporting requirements. The government has never articulated a legitimate reason for these conditions, and now that the sentence the Court believed was appropriate has been imposed and all the government's fantastical arguments about 9-figure loss numbers and a 25-year sentence no longer can be made, Dr. Shih respectfully requests that the terms of release be adjusted accordingly. There is simply no basis for domestic travel restrictions. The government is inflicting its own form of street justice at this stage of the proceedings, but bail should not be punitive.

Regarding the funds transfer restriction, the purpose for that restriction has also long since passed because sentence has been imposed. The fines and restitution total $662,698, and there is already a $1,600,000 fully secured bond that includes a $650,000 cash deposit and a $950,000 lien on Dr. Shih's residence in a case in which this Court and the Ninth Circuit have found that Dr. Shih is not a flight risk. There is a high cost on Dr. Shih from having to obtain approval for any funds transfer because, against Dr. Shih's wishes, financial institutions will close accounts upon receipt of a subpoena or other process from the government, and despite the excess security already obtained by the government for the $662,698 in fines and restitution, the government still seeks

liens on all of Dr. Shih's accounts as evidenced by the current pending application for writs of garnishment that the Court has yet to deny.

When accounts are closed after the government serves its subpoenas and other process, Dr. Shih must then find a new financial institution, and it is nearly impossible to keep this information from the government, as evidenced by the Probation Office's recent disclosure of Dr. Shih's last transfer request in its October 26, 2021 filing. (ECF 930.) These disclosures empower the government to perpetuate the cycle by serving new subpoenas and other compulsive process that then causes the new financial institutions to close the new accounts. This cycle does not end, despite the fact that there is ample security for the $662,698 in fines and restitution already in place. Thus, the government has it exactly backward when it argues that Dr. Shih is seeking permission to transfer funds to "evade garnishment." Dr. Shih has no desire to transfer any of his funds. Instead, Dr. Shih is forced to do so because the government seeks to garnish his accounts, which then causes the financial institutions to close those accounts against his wishes.[1]

It should be obvious to the Court that the government's arguments for transfer limitations are not legitimate, and bail conditions should not be punitive. The Court is enabling the government to inflict additional punishment on Dr. Shih for no legitimate purpose, and the Court should stop the government's behavior now. Forcing Dr. Shih to file requests for permission to transfer

---

[1] The E-Trade account referenced in the government's section of this Joint Status Report was opened in January 2021, months after Dr. Shih's May 29, 2020 Presentence Interview with Pretrial Services. The E-Trade account was opened to house funds previously held at TD Ameritrade (funds that were disclosed to Pretrial Services (*see* PSR ¶ 429)), after TD Ameritrade informed Dr. Shih that it would no longer serve as custodian of his funds. Pretrial Services Officer Shakira Davis was informed of the planned transfer on December 22, 2020 and stated that she had no objection. (ECF 730.) This Court subsequently approved the transfer. (*Id.*)

3
JOINT STATUS REPORT RE NINTH CIRCUIT ORDER

amounts in excess of $20,000 serves no purpose whatsoever now that the total amount of fines and restitution is known.

Dr. Shih is not seeking modification of other bond conditions, including the requirements that he wear an ankle monitor and that he call Pretrial Services weekly at a specified time.

### B. Dr. Shih's Pending *Ex Parte* Application, Government's Writ of Garnishment, & Government's Motion to Stay Bond Exoneration

Dr. Shih respectfully submits that the Court should issue a decision (1) granting Dr. Shih's *ex parte* application to stay enforcement of all fines and restitution not already stayed pending appeal (ECF 916); (2) denying the government's application for a writ of garnishment (2:21-cv-07105-JAK, ECF 1); and (3) ordering the government to remove a recently placed additional lien for $662,698 on Dr. Shih's residence.

As detailed in Dr. Shih's *ex parte* application, a stay of restitution pending appeal is warranted because imposition of restitution to the IRS for the Title 26 offenses pursuant to the Mandatory Restitution to Victims Act (MVRA) was unlawful. *See, e.g.*, *United States v. Meredith*, 685 F.3d 814, 827 (9th Cir. 2012) ("[T]he MVRA does not apply to Title 26 income tax offenses."). In addition, Dr. Shih's appeal will challenge all counts of conviction, including the tax counts that form the basis of the restitution and fines. Thus, if Dr. Shih prevails, the sentences on those counts, including the restitution and fines, will be vacated.

Unless the Court grants Dr. Shih's *ex parte* application and denies the government's application for a writ, the government will continue to rely on an unlawful restitution order and fines that may be overturned on appeal as the justification for collection efforts. The government, for example, refuses to remove a lien it recently placed on Dr. Shih's residence (Defense Exhibit A) for the full amount of the fines and restitution, and is simultaneously asking the Court for a writ of attachment so it can take that same amount out of Dr. Shih's

bank accounts. All these steps are being taken while there is a $1,600,000 fully secured bond on file for a person that the Court found by clear and convincing evidence is not a flight risk. The $650,000 cash bond alone would satisfy approximately 98% of the restitution and fine amount if the sentence is not vacated on appeal. The government is pursuing collection efforts to punish Dr. Shih, not to secure payment of the $662,698 financial part of his sentence. Now that the sentence is known, the government should stop these punitive tactics.

Dr. Shih therefore requests that the Court grant Dr. Shih's *ex parte* application to stay all fines and restitution, deny the government's application for a writ of garnishment, and order the government to remove the lien from Dr. Shih's properties that it filed in August 2021 (Defense Exhibit A).

Finally, although it appears that the government's motion to stay exoneration of the $650,000 pretrial cash bond (ECF 920) may be moot, Dr. Shih does not oppose that motion if the Court (1) grants the relief sought by Dr. Shih in his *ex parte* application and this Joint Status Report, and (2) does not require that additional money or property be deposited with the Court as a condition of bond.

## II. GOVERNMENT'S POSITION

### A. Relevant Procedural History

On July 22, 2021, the Court, as part of Defendant's sentence, ordered Defendant to pay in full immediately a special assessment of $1700, restitution to the Internal Revenue Service ("IRS") of $362,698, plus interest; and a total fine of $300,000, plus interest. (Dkt. 889.) As of October 22, 2021, Defendant's criminal debt balance was $663,698, which did not include accrued post-judgment interest.

On September 2, 2021, the Government filed an application for writs of garnishment to three financial entities believed to hold Defendant's funds, one of

1 which was TD Ameritrade, Inc., an E-trading entity.[2] (Dkt. 1, CV 21-7105-
2 JAK.) That application is still pending. On September 8, 2021, the Court issued
3 an order denying Defendant's motion for release on bond pending appeal, in
4 which it ordered: (1) that Defendant pay, within 45 days of entering custody, the
5 $362,698 in restitution and $105,000 in the fines as to Counts 12-18; (2) that
6 Defendant pay the $700 in special assessments as to Counts 12-18 immediately;
7 and (3) that payment of the remaining fines and special assessments be stayed
8 pending appeal. (Dkt. 904, at 13.) Five days later, Defendant paid the $700 in
9 special assessments for Counts 12-18.

10 On September 14, 2021, all three of Defendant's counsel of record in this
11 case filed notices of appearance in the civil case in which the application for
12 writs of garnishment was pending. (Dkts. 4-6, CV 21-7105-JAK.) The
13 following day, Defendant filed an *ex parte* application for a stay of enforcement
14 of the order for restitution and fine; shortly thereafter, the Government filed an
15 opposition and Defendant filed a reply. (Dkts. 916, 917, 918.) On September
16 20, 2021, the Government filed a motion for order staying exoneration of the
17 $650,000 in cash that Defendant had deposited as part of his $1,600,000 bond.
18 (Dkt. 920.) To date, Defendant has not filed a response to that motion other than
19 what he states herein.

20 On October 7, 2021, Defendant filed a notice of manual filing of *in
21 camera* and under seal documents. (Dkt. 923.) On the same day, October 7,
22 2021, the Ninth Circuit granted Defendant's motion for bail pending appeal.
23 (Dkt. 924.) On October 13, 2021, having received no response from Defendant
24 to its inquiries as to the general subject-matter of his *in camera* filing, the
25 Government filed an objection to the *in camera* filing. (Dkt. 925.) In fact,
26 Defendant's *in camera* filing was a request to the Court, concealed from the

---

[2] *See* https://www.tdameritrade.com/.

6
JOINT STATUS REPORT RE NINTH CIRCUIT ORDER

Government, for authorization to transfer the funds in "the E-Trade account" to another United States based account. (Dkt. 930, at 3.) In addition, Defendant's *in camera* filing, concealed from the Government, requested that the Court "remove the requirement that the Defendant not sell, transfer or give away any asset valued at $20,000 or more, per month (except for legal fees and expenses related to legal representation) without notifying and obtaining permission from the Court." (*Id.*)

On October 20, 2021, the Court (1) approved Defendant's *in camera* request to transfer the funds in the E-Trade account to another United States account, requiring Defendant to notify Pretrial Services of the transfer within 15 days of its execution; and (2) denied Defendant's second request for modification of the bond condition. (*Id.*) On the same day, the Court issued an order requiring the parties to meet and confer with each other and then with the Pretrial Services Officer, and to file a joint report stating the parties' positions on the two matters discussed below. (Dkt. 929.)

**B. Whether Modifications Should Be Made to the Present Terms of Release**

The Government agrees with Pretrial Services that all of the current terms and conditions of Defendant's release on bond should remain in place at this time. Specifically, the Government opposes the removal of the following conditions: (1) Pretrial Services' authority to direct inclusion of a curfew as part of the location monitoring condition; (2) the restriction of Defendant's travel to the Central District of California unless prior permission for travel to a specific location in the United States is granted by Pretrial Services; and (3) that Defendant not sell, transfer, or give away any asset valued at the aggregate amount of $20,000 or more per month without obtaining permission from the Court except for legal fees and expenses related to legal representation. (*See, e.g.*, Dkt. 718 (July 9, 2020 Order Re: Conditions of Bond).) This Court has

repeatedly found these terms and conditions to be necessary to mitigate Defendant's flight risk, and there are no changed circumstances that support removing or relaxing them now.

Defendant's allegations that the curfew and restrictions on Defendant's travel are punitive and without purpose are disrespectful of the Pretrial Services Officer's professional judgment about what is necessary for her office to supervise Defendant effectively. Defendant's claim that the Government somehow controls the Pretrial Services Officer's professional judgment is particularly offensive and patently false. Defendant's argument that it is no longer necessary for the Court to approve transfers of more than $20,000 in funds misunderstands the condition's purpose, which is to mitigate Defendant's flight risk. Such transfers, particularly if multiple transfers are made, can be a red flag of plans to liquidate assets in preparation to abscond. It is critical that the Court and Pretrial Services monitor such transfers. In short, that Defendant has not yet absconded is undoubtedly a result of the Court's imposition of the current terms and conditions of his release on bond and Pretrial Services' careful monitoring of Defendant's compliance with those conditions. These terms and conditions should not be changed.

**C. Whether, Given the Pending Appeal, the Previously-Filed Matters (Dkts. 916, 920 and Dkt. 1 of 21-CV-7105) Should Be Addressed at This Time**

The Court should address the previously-filed matters at its earliest convenience. On September 8, 2021, when the Court amended the payment schedule, the Court clearly intended that Defendant pay restitution in full and $105,000 in fines by the end of October 21, 2021. (*See* Dkts. 904, 913.) On October 7, 2021, the landscape shifted. First, concealing his action from the Government, Defendant filed an *in camera* request to transfer funds from an "E-Trade" account, when Defendant knew the Government was seeking to garnish

funds from three of his accounts, including a TD Ameritrade account, to satisfy his outstanding criminal debt, and sought modification of his bond conditions so he could conceal future transfers of funds from the Court and Pretrial Services, as well as the Government.  Significantly, Defendant failed to update information provided to the Probation Office in approximately May 2020, and as a result, the "E-Trade" account was not disclosed to the Probation Officer for purposes of preparation of the Presentence Report prepared on February 1, 2021, and subsequently revised in March and July 2021.  (*See* Dkt. 880/PSR ¶ 429 (list of assets which includes the then-closed TD Ameritrade account but not then-current E-Trade account).)[3]  Defendant's actions evidence his intent to hide assets subject to fulfillment of the criminal judgment.  Had Defendant communicated to the Government his need to transfer funds from the "E-Trade" account to another U.S.-based account, the Government would not have opposed that transaction, but Defendant's concealment of that account from both the Government and apparently the Probation Officer demonstrates why Court oversight, and notice to the Government, of such transfers is necessary.  Second, the Ninth Circuit granted Defendant's motion for bail pending appeal -- without purporting to address whether Defendant should be relieved of the obligation to commence paying restitution and part of the fines, as ordered by *this* Court, while his appeal is pending.  This was not surprising, as the motion that Defendant filed in the Ninth Circuit did not even *mention* the monetary penalties imposed by this Court, much less request the Ninth Circuit to stay that portion of the Court's September 8, 2021 Order.

First, this Court should deny Defendant's *ex parte* application for a stay of enforcement pending appeal because it is baseless.  The Court did not plainly err

---

[3] *See* https://us.etrade.com/home?sr_id=BR&mp_id=57103585905&ch_id=p&gclid=EAIaIQobChMI0sf7wpnr8wIVzsiUCR152QgtEAAYASAAEgLypPD_BwE&gclsrc=aw.ds

9
JOINT STATUS REPORT RE NINTH CIRCUIT ORDER

in ordering restitution to the IRS based on the Counts 15-18 convictions and 18 U.S.C. § 3663A (the Mandatory Victims Restitution Act ("MVRA")).  The MVRA requires restitution when (1) sentencing a defendant convicted of an offense against property under Title 18, including any offense committed by fraud or deceit; and (2) there is an identifiable victim who suffered pecuniary loss.  18 U.S.C. § 3663A(a)(1), (c)(1).  Defendant was convicted of violating 18 U.S.C. 1001(a)(1) based on his concealment of his Standard Chartered Bank account as charged in Counts 15-18 -- crimes of deceit.  Defendant's concealment of the Standard Chartered Bank account, into which his unreported income was deposited, directly and proximately caused loss of revenue to the United States, *see* 18 U.S.C. § 3663A(a)(2), just as much as Defendant's concealment of income on his federal income tax returns (Counts 12-14).  *See, e.g.*, *United States v. Farca*, 2012 WL 4891814, *1 (9th Cir. Oct. 20, 2021) (upholding restitution to U.S. Army for monetary loss resulting from a violation of 18 U.S.C. § 1001(a)(2))[4]; *see also United States v. Razzouk*, 984 F.3d 181, 186 (2nd Cir. 2020) (holding that courts may consider the facts and circumstances of the crime that was committed to determine if it is an "offense against property" within the meaning of the MVRA).  Section 1001 violations are "offense[s] against property," *see* 18 U.S.C. § 3663A(c)(1)(A)(ii), when, as here, the victim had the right to receive payment and did not receive that payment as a result of the offense.  *See United States v. Luis*, 765 F.3d 1081, 1065-66 (9th Cir. 2014) ("against property" means infringing on a victim's property interest"); *United States v. Stephens*, 374 F.3d 867, 871 (9th Cir. 2004) (failure to pay child support, a Title 18 offense, was an "offense against property" because it infringed on the other parent's right to receive payments).

---

[4] Although *Farca* was decided under the Victims and Witness Protection Act ("VWPA"), a court "may look to cases decided under the VWPA for guidance in interpreting the MVRA." *United States v. Brock-Davis*, 504 F.3d 991, 996 (9th Cir. 2007).

Defendant's claims that the Court ordered restitution based only on the Title 26 convictions have no basis in the record. Furthermore, Defendant concedes that plain error review applies, and he has failed to carry his burden to demonstrate clear or obvious error that prejudicially affected the outcome below and seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 734 (1993).

Second, the Court should require Defendant to deposit with the Court registry immediately the full amount of his current criminal debt plus sufficient additional funds to cover the interest that will accrue during pendency of the appeal. Defendant currently has ample ability to make such a deposit; he has at least $1.7 million in liquid assets. (Dkt. 880/PSR ¶ 433.) In light of Defendant's actions to evade garnishment of funds, such a deposit is necessary to secure the payment of restitution to the victim and the fines and remaining special assessments ordered by the Court. To the extent Defendant succeeds on appeal, the funds will be returned to him. Such an order is not punitive; it is embedded and contemplated in Federal Rule of Criminal Procedure 38(e)(2)—the authority Defendant invokes in his application for a stay. After Defendant makes the described deposit, the Government will withdraw the application for writs of garnishment.[5]

Third, the Court should deny Defendant's request for an order requiring the Government to remove the lien from Defendant's properties. The lien arose automatically from the criminal judgment entered in this matter which itself established "a lien in favor of the United States on *all property and rights to*

---

[5] The applicable federal statute contemplates that the Court will rule on an application itself before hearing from the Defendant, as it does not require the Government to serve the application for a writ of garnishment and related papers, until after the garnishee has filed and served an answer. *See* 28 U.S.C. § 3205(c)(2) & (3).

*property* of [the Defendant].  18 U.S.C. § 3613(c), (f) (emphasis added); *see also United States v. Kaczynski*, 551 F.3d 1120, 1135 (9th Cir. 2009) (explaining that a criminal judgment lien arises "automatically upon entry of judgment . . . and may be enforced against all property and property rights, regardless of the nature of the property.").  The lien stems from the inclusion in the criminal judgment of special assessments, a fine, and restitution.  *See* 18 U.S.C. § 3613(c).  The Exhibit attached to this status report is simply the notice of the lien.  *See* 18 U.S.C. § 3613(d).  Such notices of liens on real property protect the victim's rights to restitution.  Contrary to Defendant's allegations, the Government has not, post-judgment, notified any financial institution of the judgment, although the Government has the right to do so.  Defendant cannot establish any legal basis to remove the criminal judgment lien because, by operation of the statute, the lien rightfully attached to his property upon entry of the criminal judgment.

Fourth, the Court should reject Defendant's attempt to re-allocate his bond assets to the funds deposit needed to secure the full payment of his criminal debt plus interest.  The bond assets are required at the outset of the case, to secure Defendant's eventual surrender and/or future appearances.  If the Court were to grant Defendant's application for a stay, and Defendant then absconded, the Government would be able either to satisfy, in part, a potential bond forfeiture judgment or to request that the Court order that the cash bond be applied to his outstanding restitution, fine, and special assessment obligations – *but not both*.  In short, granting Defendant's application for a stay of enforcement of the judgment diminishes the financial incentives that have induced him to forego, at least to date, absconding.  The Court should not entertain such risk.

| | | |
|---|---|---|
| Dated: October 27, 2021 | By: | /S James W. Spertus<br>James. W. Spertus<br>M. Anthony Brown<br>Christa L. Culver Wasserman<br>Attorneys for Yi-Chi Shih, Ph.D. |

*The filer of the document attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*

| | | |
|---|---|---|
| | By: | /S Judith A. Heinz<br>Judith A. Heinz<br>James C. Hughes<br>Melanie Sartoris<br>Khaldoun Shobaki<br>Robert Lester<br><br>Attorneys for Plaintiff<br>United States of America |

13
JOINT STATUS REPORT RE NINTH CIRCUIT ORDER